UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Richard Lowery**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Texas A&M University System**, et al.,<br><br>Defendants. | Civil Action No.<br>4:22-cv-3091<br><br>Judge Charles Eskridge |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

Table of contents ..................................................................................................... i

Table of authorities ................................................................................................ ii

Statement of facts .................................................................................................. 1

Statement of the issue ........................................................................................... 1

Standard of review ................................................................................................ 1

    I.   The Court should certify the proposed class under Rule 23(b)(2) .............. 2

        A.   The proposed class is so numerous that joinder of all members is impractical ............................................................................................. 2

            1.   Percentage of white and Asian men awarded doctoral degrees .......... 3

            2.   Number of applicants per job opening ............................................... 4

            3.   Estimate of the number of class members ......................................... 4

        B.   There are questions of law or fact common to the members of the class ...................................................................................................... 5

        C.   Professor Lowery's claims are typical of the claims of the class .............. 6

        D.   Professor Lowery will fairly and adequately protect the interests of the class ................................................................................................ 7

        E.   The proposed class satisfies Rule 23(b)(2) ............................................ 7

Conclusion ............................................................................................................. 8

Certificate of word count ..................................................................................... 9

Certificate of conference ..................................................................................... 10

Certificate of service ........................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Carney v. Adams*, 141 S. Ct. 493 (2020)..................................................................................1

*In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) ............................ 6

*In re Nat'l Football League Players Concussion Injury Litigation*,
   821 F.3d 410, 426 (3d Cir. 2016) ................................................................. 2

*Jack v. American Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974).....................5

*James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) .............................. 6

*M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012) ...................................................6, 8

*Maldonado v. Ochsner Clinic Foundation*,
   493 F.3d 521 (5th Cir. 2007)........................................................................1

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999)........................................................................ 2

*Pederson v. Louisiana State University*,
   213 F.3d 858 (5th Cir. 2000) ........................................................................5

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................6, 7

## Rules

Fed. R. Civ. P. 23(b)(2) ........................................................................................7

## Other Authorities

Kaustuv Basu, *A Small Bump, the Academic Job Market in
   History*, Inside Higher Education ( January 3, 2012)................................. 4

Nina Notman & Chris Woolston, *How Many Applications It Can
   Take to Land a Single Academic Job Offer*, Nature ( July 24,
   2020) ............................................................................................................ 4

Diego A. Reinero, *The Path to Professorship by the Numbers and
   why Mentorship Matters*, Behavioral and Social Sciences
   (October 23, 2019)....................................................................................... 4

Robert B. Townsend, *Odds for Applicants Improving, According to
   Survey of Job Advertisers*, Perspectives on History ( January 1,
   2001) ............................................................................................................ 4

Plaintiff Richard Lowery respectfully moves to certify a class of all white and Asian men who currently stand "able and ready" to apply for faculty appointments at Texas A&M, as well as those who will stand "able and ready" for faculty appointments at Texas A&M at some point in the future.

## STATEMENT OF FACTS

Professor Lowery has sued the Texas A&M University system and the members of its board of regents, alleging that the university is violating federal law by using race and sex preferences in its faculty hiring and compensation. *See* Complaint, ECF No. 1. Professor Lowery has brought a class action on behalf of all white and Asian men who currently stand "able and ready" to apply for faculty appointments at Texas A&M, as well as those who will stand "able and ready" for faculty appointments at Texas A&M at some point in the future. *See Carney v. Adams*, 141 S. Ct. 493, 502 (2020) (holding that those who stand "able and ready to apply" for a job have standing to seek prospective relief against unlawful or discriminatory selection practices).

## STATEMENT OF THE ISSUE

Should the Court certify the proposed class under Rule 23(b)(2)?

## STANDARD OF REVIEW

There is no standard of review for this Court to apply because it is ruling on Professor Lowery's class-certification motion in the first instance rather than reviewing the decision of a lower court. If this Court's ruling is appealed, however, the Fifth Circuit will review this Court's class-certification decision for an abuse of discretion. *See Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 523 (5th Cir. 2007)

("This court reviews a district court's denial of class certification for abuse of discretion.").

## I. THE COURT SHOULD CERTIFY THE PROPOSED CLASS UNDER RULE 23(b)(2)

A party that moves for class certification must satisfy each requirement of Rule 23(a) and at least one subdivision in Rule 23(b). The proposed class meets each of these requirements.

### A. The Proposed Class Is So Numerous That Joinder Of All Members Is Impractical

A class of over 40 members is presumed to meet the numerosity requirement. *See In re Nat'l Football League Players Concussion Injury Litigation*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("[A]ny class consisting of more than forty members 'should raise a presumption that joinder is impracticable'" (quoting 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed. 1992)). There are at least 40 white or Asian men who stand "able and ready" to apply for faculty appointments at Texas A&M, or who will stand "able and ready" for such appointments in the future.

At Texas A&M, 90% of the faculty hold doctoral or terminal degrees. *See* Texas A&M: Faculty & Staff, available at https://bit.ly/3fehNDU (last visited on October 7, 2022). To estimate the number of white and Asian men who stand "able and ready" to apply for faculty appointments at Texas A&M, we will first determine the percentage of white and Asian men who receive doctoral degrees, and then estimate the number of applicants universities typically receive for open faculty jobs.

### 1. Percentage of white and Asian men awarded doctoral degrees

In the 2019–20 academic year, there were 190,178 doctoral degrees granted by post-secondary institutions in the United States. *See* National Center for Education Statistics: Doctor's degrees conferred by postsecondary institutions, by race/ethnicity and sex of student: Selected years, 1976–77 through 2019–20, available at https://bit.ly/3r0gxqt (last visited on October 7, 2022). 166,228 of those doctoral degrees were awarded to U.S. citizens or permanent residents. *See id.* 70,728 of those degrees were awarded to men (42.5%) and the remaining 95,500 were awarded to women (57.5%). *See id.*

Among the 70,728 male U.S. citizens or permanent residents who received doctoral degrees in 2019–20, the racial breakdown was as follows: 64.9% white, 13.0% Asian, 9.5% black, 8.9% Hispanic, and 0.4% Native American or Native Alaskan. *See id.* Adding the white and Asian percentage numbers (77.9%), and then multiplying that sum by 42.5% (the percentage of doctoral degrees awarded to men), indicates that 33.1% of the most recently awarded doctoral degrees are held by white or Asian men. One can therefore estimate that 33.1% of faculty applicants to Texas A&M will be white or Asian men based on the doctoral-degree numbers from 2019–20. And this is a lowball estimate because the percentages of whites and men awarded doctoral degrees have declined steadily and substantially each year since 1976–77, when men were receiving 78.2% of doctoral degrees and when 91.9% of those male doctoral degrees were awarded to whites. Applicants for faculty positions at Texas A&M will include not only the recently minted Ph.Ds but others who received their doctorates when the demographics were more heavily tilted toward white men.

### 2. Number of applicants per job opening

The Court can reasonably estimate that the number of applicants for each university faculty job opening range from 40 to 200. This estimate is derived from four different sources. First, an article in *Nature* magazine puts the number of applicants for a single academic job at between 100 and 200.[1] Second, an article in *Behavioral and Social Sciences* notes that one doctoral granting university received 218 applicants per job.[2] Third, a study conducted by the American Historical Association found that the average number of applicants was 82 for each North American history job opening, 50 for a Latin American or Asian history job opening, 88 for a European history job opening, and 44 for an African history job opening.[3] Fourth, an article from *Inside Higher Education* puts the average number of applications for a North American history job at 95.[4]

### 3. Estimate of the number of class members

One can therefore estimate that each faculty opening at Texas A&M will yield between 40 and 200 applicants, and that 13 to 66 of the applicants for *each* open faculty position will be white or Asian men. The proposed class includes all white and Asian men who stand "able and ready" to apply for *any* faculty position at Texas

---

1. *See* Nina Notman & Chris Woolston, *How Many Applications It Can Take to Land a Single Academic Job Offer*, Nature (July 24, 2020), available at https://go.nature.com/3dsdNPC (last visited on October 7, 2022).
2. *See* Diego A. Reinero, *The Path to Professorship by the Numbers and why Mentorship Matters*, Behavioral and Social Sciences (October 23, 2019), available at https://go.nature.com/3BAhE5c (last visited on October 7, 2022).
3. *See* Robert B. Townsend, *Odds for Applicants Improving, According to Survey of Job Advertisers*, Perspectives on History (January 1, 2001), available at https://bit.ly/3Lun2vb (last visited on October 7, 2022).
4. *See* Kaustuv Basu, *A Small Bump, the Academic Job Market in History*, Inside Higher Education (January 3, 2012), available at https://bit.ly/3LzS0Cs (last visited on October 7, 2022).

A&M, both now and in the future. This number easily clears the numerosity threshold, as Texas A&M hires many new faculty each year and will continue to do so. *See, e.g.*, Texas A&M University Engineering, *New faculty join computer science and engineering department* (September 27, 2022), available at https://bit.ly/3ypUQV3 (last visited on October 7, 2022) (reporting that Texas A&M's computer science and engineering department alone hired 10 new faculty members for the fall 2022 semester). And the joinder of each of class member is impracticable given that the class includes unnamed and unknown future individuals. *See Pederson v. Louisiana State University*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("The inclusion of future members in the class definition a factor to consider in determining if joinder is impracticable. . . . In the case at hand, the fact that the class includes unknown, unnamed future members also weighs in favor of certification."); *see also Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974).

### B. There Are Questions of Law or Fact Common to The Members of The Class

Professor Lowery is litigating at least three questions of law common to all members of the class. The first is whether Texas A&M is violating Title VI and Title IX by discriminating in favor of female and "underrepresented" minority faculty candidates and against white and Asian men. *See* Complaint, ECF No. 1, at ¶¶ 21–24. The second is whether Texas A&M is violating 42 U.S.C. § 1981 by discriminating in favor of "underrepresented" minorities in its faculty hiring, and against whites and Asians. *See id.* at ¶¶ 25–29. The third is whether Texas A&M is violating the Equal Protection Clause by discriminating in favor of female and "underrepresented" minority faculty candidates and against white and Asian men. *See id.* at ¶¶ 30–35.

These questions affect all class members because each of them is facing or will face discrimination on account of Texas A&M's faculty-hiring policies. Each class member is "suffer[ing] the same injury" from these discriminatory faculty-hiring practices, and that is all that needed to satisfy Rule 23(a)(2)'s commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *East Texas Motor Freight Systems, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)); *see also Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) (same). And a ruling on these issues "will resolve an issue that is central to the validity of each one of the claims in one stroke,"[5] as the requested declaratory and injunctive relief will prohibit race and sex discrimination in the university's faculty hiring and compel the university to hire in a color-blind and sex-neutral fashion.

### C. Professor Lowery's Claims Are Typical of The Claims of The Class

Professor Lowery's claims are more than typical: they are precisely the same as those of the class. Professor Lowery is requesting a declaratory judgment and injunction that will restrain the university from discriminating against white or Asian men in its faculty hiring, and he is asserting that same claim on behalf of each of the absent class members. *See James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *id*. ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics

---

5. *Wal-Mart*, 564 U.S. at 350; *see also M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).

of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." (citations and quotation marks omitted)); *see also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157–58 n.13 (1982)).

### D. Professor Lowery Will Fairly and Adequately Protect the Interests of The Class

Professor Lowery will fairly and adequately represent the interests of their fellow class members, and there are no conflicts of interest between Professor Lowery and the other members of this class. No member of the proposed class can be harmed or made worse off by a ruling that prohibits race or sex discrimination against white or Asian men that stand able and ready to apply for faculty appointments at Texas A&M.

### E. The Proposed Class Satisfies Rule 23(b)(2)

The final criterion for class certification under Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361–62 ("[T]he relief sought must perforce affect the entire class at once . . . ."). That is precisely what Professor Lowery is requesting: a single declaratory judgment that the Constitution and federal civil-rights statutes prohibit Texas A&M from engaging in race and sex discrimination in its faculty hiring by discriminating in favor of women and "underrepresented" racial minorities and against

white and Asian men. *See* Complaint, ECF No. 1, at ¶ 36. No one is seeking individualized relief for any class member or for any subset of the class. *Compare with M.D.*, 675 F.3d at 845 (disapproving class certification under Rule 23(b)(2) when individualized relief was sought). In addition, the defendants are "act[ing] . . . on grounds that apply generally to the class," because its racially discriminatory faculty-hiring policies affect each of the proposed class members.

## CONCLUSION

The motion for class certification should be granted.

Respectfully submitted.

| | |
|---|---|
| | /s/ Jonathan F. Mitchell |
| Gene P. Hamilton | Jonathan F. Mitchell |
| Virginia Bar No. 80434 | Texas Bar No. 24075463 |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 300 Independence Avenue SE | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 (phone) |
| (202) 964-3721 (phone) | (512) 686-3941 (fax) |
| gene.hamilton@aflegal.org | jonathan@mitchell.law |
| | |
| | *Counsel for Plaintiff and* |
| Dated: October 7, 2022 | *the Proposed Class* |

## CERTIFICATE OF WORD COUNT

I certify that this motion contains 2,192 words.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF CONFERENCE

Opposing counsel has not yet appeared in the case, so we are not yet able to confer with the defendants on this motion. The motion will be hand-served on the defendants along with the complaint and summons, and we will confer with opposing counsel and file an updated the certificate of conference as soon as the defendants' counsel appears in the case.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

    I certify that this motion will be hand-served on the defendants along with the complaint and summons.

                                                              /s/ Jonathan F. Mitchell
                                                              Jonathan F. Mitchell
                                                              *Counsel for Plaintiff and the Proposed Class*