**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD LOWERY, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| TEXAS A&M UNIVERSITY SYSTEM; TIM LEACH, in his official capacity as Chairman of the Board of Regents of the Texas A&M University System; BILL MAHOMES, in his official capacity as Vice Chairman of the Board of Regents of the Texas A&M University System; ROBERT L. ALBRITTON, JAMES R. BROOKS, JAY GRAHAM, MICHAEL A. HERNANDEZ III, ELAINE MENDOZA, MICHAEL J. PLANK, CLIFF THOMAS, and DEMETRIUS L. HARRELL JR., each in their official capacities as members of the Board of Regents of the Texas A&M University System; ANNIE S. MCGOWAN, in her official capacity as Vice President and Associate Provost for Diversity at Texas A&M University; and N.K. ANAND, in his official capacity as Vice President for Faculty Affairs at Texas A&M University, | § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:22-cv-3091 |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS

PAUL TRAHAN
RYAN MELTZER
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

M. CARTER CROW
LAYNE E. KRUSE
JESIKA SILVA BLANCO
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................ 1

ISSUES REQUIRING RESOLUTION............................................................. 4

LEGAL STANDARDS ..................................................................................... 4

ARGUMENT..................................................................................................... 5

    I.      The Court Lacks Subject-Matter Jurisdiction ............................ 5

          A.     Plaintiff Lacks Article III Standing.................................. 6

          B.     Plaintiff's Claims Are Not Ripe ...................................... 8

    II.     Sovereign Immunity Bars Counts 2 and 3 ................................. 9

    III.    All Counts Fail as a Matter of Law ......................................... 11

          A.     Count 1 Fails to State a Claim Under Title VI............... 11

          B.     Count 1 Fails to State a Claim Under Title IX............... 14

          C.     Count 2 Fails to State a Claim Under Section 1981 ...... 15

          D.     Count 3 Fails to State a Claim Under the Equal Protection Clause .................................................................................. 17

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agbefe v. Bd. of Educ. of City of Chicago*,
   538 F. Supp. 3d 833 (N.D. Ill. 2021) ..................................................... 12, 14

*Azteca Enters., Inc. v. Dallas Area Rapid Transit*,
   31 F. App'x 839, 2002 WL 261521 (5th Cir. Feb. 6, 2002) ........................ 13

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*,
   869 F.3d 381 (5th Cir. 2017) ..................................................................... 16

*Boles v. Navarro Coll.*,
   No. 3:19-cv-02367, 2020 WL 6273765 (N.D. Tex. Oct. 26, 2020) ........... 17

*Brown v. Bd. of Trs. of Sealy ISD*,
   871 F. Supp. 2d 581 (S.D. Tex. 2012) ........................................... 13, 15, 16

*Caldwell v. Lozano*,
   689 F. App'x 315 (5th Cir. 2017) ............................................................... 17

*Carney v. Adams*,
   141 S. Ct. 493 (2020) ............................................................................... 6, 7

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ....................................................................... 7

*Chhim v. Univ. of Tex. at Austin*,
   836 F.3d 467 (5th Cir. 2016) ..................................................................... 18

*Choice Inc. of Tex. v. Greenstein*,
   691 F.3d 710 (5th Cir. 2012) .................................................................... 8, 9

*Chu v. Miss. State Univ.*,
   592 F. App'x 260 (5th Cir. 2014) ............................................................... 17

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) ....................................................................... 4

*Donahue v. City of Boston*,
   371 F.3d 7 (1st Cir. 2004) ............................................................................ 7

*Earl v. Boeing Co.*,
   --- F.4th ----, 2022 WL 17088680 (5th Cir. Nov. 21, 2022) ...................................... 6, 7

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
   11 F.4th 200 (3d Cir. 2021) ...................................................................................... 6, 7

*Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard*
*Law Review Ass'n*,
   No. 18-12105-LTS, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) .............................. 12

*Felton v. Polles*,
   315 F.3d 470 (5th Cir. 2002) ......................................................................................... 15

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
   668 F.3d 281 (5th Cir. 2012) ........................................................................................... 4

*Forte v. Dallas Cnty. Cmty. Coll. Dist.*,
   No. 3:05-CV-1417-N, 2007 WL 9712189 (N.D. Tex. Mar. 6, 2007) ......................... 13

*Foster v. Jayden Hospitality, LLC*,
   No. 20-359-SDD, 2021 WL 4498558 (M.D. La. Sept. 14, 2021) .............................. 12

*Freedom From Religion Found., Inc. v. Mack*,
   4 F.4th 306 (5th Cir. 2021) ........................................................................................... 10

*Goins v. Hitchcock ISD*,
   191 F. Supp. 2d 860 (S.D. Tex. 2002) ......................................................................... 15

*Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for Univ. of La.*
*Sys.*,
   286 F. App'x 864 (5th Cir. 2008) (per curiam) ........................................................... 16

*Harris v. Cantu*,
   No. H-14-1312, 2014 WL 6682307 (S.D. Tex. Nov. 24, 2014) .................................. 11

*Haverkamp v. Linthicum*,
   6 F.4th 662 (5th Cir. 2021) ........................................................................................... 10

*Jackson v. Katy ISD*,
   951 F. Supp. 1293 (S.D. Tex. 1996) ............................................................................ 12

*Johnson v. Hurtt*,
   893 F. Supp. 2d 817 (S.D. Tex. 2012) ......................................................................... 13

*Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*,
   480 U.S. 616 (1987) ....................................................................................................... 11

*Konnethu v. Harris Cnty. Hosp. Dist.*,
  669 F. Supp. 2d 781 (S.D. Tex. 2009) .......................................................... 15

*Lakoski v. James*,
  66 F.3d 751 (5th Cir. 1995) ......................................................................... 14

*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) ..................................................................... 8, 9

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) ........................................................................ 10

*Mitchell v. Mills*,
  895 F.3d 365 (5th Cir. 2018) ........................................................................ 17

*Moncibaiz v. Pfizer Inc.*,
  532 F. Supp. 3d 452 (S.D. Tex. 2021) ............................................................ 5

*Muslow v. Bd. of Supervisors of La. State Univ.*,
  No. 19-11793, 2020 WL 1864876 (E.D. La. 2020) ....................................... 14

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
  40 F.3d 698 (5th Cir. 1994) .......................................................................... 11

*Oden v. Oktibbeha Cnty., Miss.*,
  246 F.3d 458 (5th Cir. 2001) ........................................................................ 15

*Peterson v. City of Fort Worth, Tex.*,
  588 F.3d 838 (5th Cir. 2009) ................................................................... 15, 17

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) .......................................................................... 9

*Salermo v. Hughes Watters & Askanase LLP*,
  516 F. Supp. 3d 696 (S.D. Tex. 2021) ............................................................ 4

*Shahrashoob v. Tex. A&M Univ.*,
  No. H-22-699, 2022 WL 3702264 (S.D. Tex. Aug. 26, 2022) ......................... 9

*Simmons v. UBS Fin. Servs., Inc.*,
  972 F.3d 664 (5th Cir. 2020) ........................................................................ 12

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) .......................................................................... 5

*Stotter v. Univ. of Tex. at San Antonio*,
  508 F.3d 812 (5th Cir. 2007) ............................................................ 16, 17

*Sullivan v. Texas A&M Univ. Sys.*,
  986 F.3d 593 (5th Cir. 2021) ..................................................................... 9

*Taylor v. Hartley*,
  488 F. Supp. 3d 517 (S.D. Tex. 2020) ..................................................... 14

*Taylor-Travis v. Jackson State Univ.*,
  984 F.3d 1107 (5th Cir. 2021) ................................................................. 14

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ................................................................... 11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................. 6

*Veljkovic v. Bd. of Educ. of City of Chicago*,
  No. 20-C-1551, 2020 WL 7626735 (N.D. Ill. Dec. 22, 2020) ................... 13

*Vincent v. Jefferson Cnty. Bd. of Educ.*,
  No. 2:21-CV-00514, 2022 WL 107187 (N.D. Ala. Jan. 11, 2022) ............. 14

*Weeks v. Tex. A&M Univ.*,
  No. 3:16-CV-191, 2018 WL 1033254 (S.D. Tex. Feb. 21, 2018) ......... 13, 15, 16

**Rules and Statutes**

42 U.S.C. § 1981 ....................................................................... 4, 9, 15, 16

42 U.S.C. § 1983 ................................................................... 5, 9, 15, 16, 17

42 U.S.C. § 2000d-3 ........................................................................ 11, 12

Texas Educ. Code § 85.21 ....................................................................... 2

Texas Educ. Code § 86.02 ....................................................................... 2

Texas Educ. Code § 86.11 ....................................................................... 2

Defendants move to dismiss plaintiff's complaint (Dkt. 1) pursuant to Rules 12(b)(1) and 12(b)(6).

## INTRODUCTION

This is a hypothetical employment-discrimination case, where the actual employer has not been sued and the plaintiff has not applied for a job. Plaintiff, a professor at the University of Texas at Austin, claims that he wants to apply for a position at Texas A&M University at College Station ("TAMU"), but he believes that a potential faculty-recruitment initiative at that institution is discriminatory. Instead of suing TAMU, however, he has sued the entire Texas A&M University System (the "A&M System") and its Board of Regents. Worse, he has not identified a single victim of discrimination resulting from the initiative he challenges, nor has he pointed to any other discriminatory employment action. In fact, the very sources Plaintiff cites indicate that the initiative has not been implemented and is contingent on uncertain future events. Yet on the strength of his own speculation about those sources, which mention neither the plaintiff nor any actual employment decision, Plaintiff asks the Court to enjoin the A&M System, appoint a "court monitor" to oversee its hiring decisions, and act as its HR czar by requiring that all such decisions be "pre-cleared" by this Court. In short, Plaintiff seeks unprecedented relief for a hypothetical and premature grievance that has caused no alleged harm to anyone identified in the pleadings.

## FACTUAL BACKGROUND

The A&M System encompasses eleven universities, eight state agencies, and a health science center. As a state entity, the A&M System is governed by a Board of

Regents, whose general powers and duties are prescribed by statute. Texas Educ. Code § 85.21. TAMU is only one part of the A&M System. Like all members of that system, TAMU is a separate legal entity with its own administration. *See id.* §§ 86.02, 86.11.

Plaintiff Richard Lowery is a finance professor at the University of Texas at Austin. Compl. ¶ 3. Plaintiff alleges that the A&M System, "along with nearly every university in the United States, discriminates on account of race and sex when hiring its faculty, by giving discriminatory preferences to female or non-Asian minorities at the expense of white and Asian men." *Id.* ¶ 8. Beyond this conclusory assertion, Plaintiff's only proffered factual support is found in two exhibits attached to his complaint. *Id.* ¶¶ 11, 14–15; *see also* Compl. Exs. 1, 2 (Dkt. 1-1, 1-2).

The first is an internal memorandum from Defendant Annie McGowan, Vice President and Associate Provost for Diversity at TAMU, and Defendant N.K. Anand, Vice President for Faculty Affairs at TAMU, to "Deans" at TAMU with the subject line "New ACES Plus Fellowship." Compl. Ex. 1. The memorandum announces the creation of a fellowship program at TAMU designed to attract "promising faculty." *Id.* Citing TAMU's designation as a "Hispanic Serving Institution" by the U.S. Department of Education, the memorandum states that TAMU "is charged with expanding the capacity of low-income, first-generation Hispanic students, and other underserved students and their communities." *Id.* "Increasing opportunities for underserved students to interact and engage with faculty" that share their experiences is "essential to achieving this goal," the memorandum continues, and "[t]he presence of faculty of color is also integral" to TAMU's educational mission. *Id.*

To those ends, the ACES Plus Fellowship would provide 50% matching base salary and benefits for qualifying new hires selected by TAMU officials through an application process. *Id.* Specifically, "[f]or the FY 23 and FY 24, the VP for Faculty Affairs will allocate a sum of $2 million for the ACES Plus Program," to be used for "new mid-career and senior tenure-track hires from underrepresented minority groups, that contribute to moving the structural composition of our faculty towards parity with that of the State of Texas." *Id.* Interested parties are invited to submit proposals, with the support of administrators, and decisions on funding "will be made by the Vice President for Faculty Affairs with input from the Office for Diversity." *Id.* Nothing in the memorandum, however, indicates that anyone has been hired under this program, nor that any applicant of any race or gender will be excluded from consideration once implemented.

The second exhibit is an email exchange between "Shane A. Johnson," whom Plaintiff identifies as "the head of the recruiting committee for the department of finance for [the] 2022–23 academic year," and an unidentified TAMU faculty member. Compl. ¶¶ 14–15. The latter writes: "I heard from someone that one of our lines is reserved for an 'underrepresented minority.' Is that correct?" Compl. Ex. 2. Professor Johnson responds, "The underrepresented line would ***potentially*** be a third position, so yes reserved, but not one of our 'regular' positions." *Id.* (emphasis added). Again, there is no indication that anyone has actually been hired under this initiative.

Plaintiff alleges, without elaboration, that he "stands 'able and ready' to apply for a faculty appointment" at TAMU. Compl. ¶ 17. Based entirely on the two exhibits, the complaint jumps to the conclusion that the "racial preferences and set-asides established

by Texas A&M prevent Professor Lowery from competing with other applicants for these faculty positions on an equal basis." *Id.* ¶ 18.

Ignoring the traditional path for alleging employment discrimination via Title VII of the Civil Rights Act of 1964 ("Title VII"), Plaintiff asserts three claims: violations of Title VI of the Civil Rights Act of 1964 ("Title VI") and Title IX of the Education Amendments of 1972 ("Title IX") (Count 1), 42 U.S.C. § 1981 (Count 2), and the Equal Protection Clause (Count 3). *Id.* ¶¶ 21–35. He ignores the actual prospective employer (TAMU) and instead sues the A&M System, its Regents in their official capacities, and Drs. McGowan and Anand in their official capacities. *Id.* ¶¶ 4–7.

## ISSUES REQUIRING RESOLUTION

This motion presents three issues: first, whether this Court has subject-matter jurisdiction; second, whether sovereign immunity bars Counts 2 and 3; and third, whether Plaintiff has stated a viable claim in Counts 1, 2, and 3.

## LEGAL STANDARDS

Rule 12(b)(1) requires dismissal if the Court "'lacks the statutory or constitutional power to adjudicate' the claim[s]." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Plaintiff bears the burden of establishing subject-matter jurisdiction. *Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 702 (S.D. Tex. 2021). On a Rule 12(b)(1) motion, the Court accepts the complaint's factual allegations as true but disregards "legal conclusion[s] couched as . . . factual allegation[s]." *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

Rule 12(b)(6) similarly requires dismissal if a complaint does not "contain enough facts to state a claim to relief that is plausible on its face." *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 456 (S.D. Tex. 2021). Courts "will not 'strain to find inferences favorable to the plaintiff[]'" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

## ARGUMENT

The complaint should be dismissed under Rules 12(b)(1) and 12(b)(6). First, Plaintiff cannot establish this Court's subject-matter jurisdiction, as he lacks Article III standing to challenge an incipient initiative that has caused him no harm, and, for similar reasons, his claims are unripe. Second, this Court lacks jurisdiction over Counts 2 and 3 because the A&M System and its officials enjoy sovereign immunity and Plaintiff cannot show any exception applies to these claims. Third, all claims fail as a matter of law. Title VI authorizes suits in limited circumstances not present here, and Plaintiff neither ties the A&M System to any alleged violation nor states a viable official-capacity claim. The same is true of Title IX, which Plaintiff pleads no facts to implicate in any event. As to Counts 2 and 3, both claims can be asserted only through Section 1983, which is not actionable against the A&M System or via *respondeat superior*, and, regardless, Plaintiff cannot plead the elements of either cause of action.

## I.    The Court Lacks Subject-Matter Jurisdiction

As a threshold matter, and fatal to all claims, Plaintiff cannot sustain this Court's subject-matter jurisdiction.

### A.    Plaintiff Lacks Article III Standing

To establish standing, Plaintiff must demonstrate "(1) an 'injury in fact' that is (2) 'fairly traceable' to the 'conduct complained of' and that is (3) likely redressable by a favorable court decision." *Earl v. Boeing Co.*, --- F.4th ----, 2022 WL 17088680, at *3 (5th Cir. Nov. 21, 2022). Standing must exist at all times, *Carney v. Adams*, 141 S. Ct. 493, 499 (2020), and be satisfied "for each claim that [plaintiffs] press and for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In an effort to short-circuit these requirements, Plaintiff avers in conclusory fashion that he "stands 'able and ready' to apply for a faculty appointment" at TAMU, quoting the Supreme Court's "competitive harm" precedents. Compl. ¶ 17. This standard, however, demands more than the incantation of magic words. "[A]n injury in fact requires an intent that is concrete." *Carney*, 141 S. Ct. at 502. "A plaintiff who claims that he was deterred from applying for a benefit by wrongful practices bears the 'burden of proving that he would have applied . . . had it not been for those practices.'" *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 (3d Cir. 2021). Accordingly, "[a] plaintiff who alleges that he has been denied a benefit or opportunity for which he did not actually apply must generally plead enough facts to show that 'he is "able and ready" to apply.'" *Id.* "[I]n most cases, a plaintiff will need to plead that he or she took some actual steps that demonstrate a real interest in seeking the alleged benefit"; and "in all cases," the pleadings must contain facts "show[ing] a 'direct stake in the outcome of a litigation,' rather than a 'mere interest in the problem.'" *Id.* at 207.

- 6 -

Plaintiff's complaint lacks any such details. There are no pleaded facts suggesting that Plaintiff has taken **any** steps towards applying for a position at TAMU—or even any steps demonstrating a real interest in submitting an application. *See* Compl. ¶¶ 16–20. Nor, for that matter, does the complaint allege that Plaintiff actually would qualify for any position affected by the program at issue. *See id.* ¶¶ 11–15. Plaintiff's bare say-so cannot demonstrate standing through competitive harm. *See, e.g.*, *Ellison*, 11 F.4th at 209 (plaintiff was not "able and ready" to seek admission to practice medicine where his complaint "fail[ed] to allege that [he] took any concrete steps to substantiate his interest"); *Donahue v. City of Boston*, 371 F.3d 7, 14 (1st Cir. 2004) (plaintiff was not "able and ready" to apply to police department where statutory age limit rendered him ineligible); *Carroll v. Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003) (plaintiff was not "able and ready" to request loan where he submitted only "a symbolic, incomplete application").

In fact, when stripped of conclusory allegations and read together with its exhibits, the complaint leaves a critical question unanswered: How, exactly, does **Plaintiff** stand to be injured? As a professor unaffiliated with the A&M System, Plaintiff has not been harmed—and will not imminently be harmed—by TAMU's alleged "decision to set aside funds" or its "proclaimed goal" of achieving a certain structural composition of its faculty. Compl. ¶¶ 12–13; *see Carney*, 141 S. Ct. at 498 ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"); *Earl*, 2022 WL 17088680, at \*3 ("[S]tanding requires a claim of injury that is 'concrete, particularized, and actual or

imminent.' That means a claimed injury must be real—'it must actually exist.' And it must not be 'too speculative for Article III purposes.'" (citations omitted)).

### B.     Plaintiff's Claims Are Not Ripe

The "basic rationale" of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). To determine ripeness, the Court "evaluate[s] (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "[A] case is not ripe if further factual development is required." *Choice*, 691 F.3d at 715. Even when a case presents "purely legal questions," however, the plaintiff still "must show some hardship in order to establish ripeness." *Id.* "In this sense, the doctrines of ripeness and standing 'often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury.'" *Lopez*, 617 F.3d at 342.

Plaintiff's claims fail on both fronts. Although he launches a broadside attack on "discriminatory preferences" in hiring, the only facts that Plaintiff alleges relate to practices at ***TAMU***. *See* Compl. ¶¶ 8, 11–15. And, most importantly, the actions he challenges are embryonic and contingent: the ACES Plus Fellowship will be funded "[f]or the FY 23 and FY 24," and hinges on the identification of candidates, support for proposals by "all participating" department or program heads and college deans, and favorable decisions on funding, Compl. Ex. 1; and the "faculty-hiring line," in Professor Johnson's own words, "would potentially be a third position," Compl. ¶ 14, Ex. 2. Correspondingly, these are

"event[s] that 'may not occur as anticipated, or indeed may not occur at all,'" meaning that "the claim[s] [are] merely abstract or hypothetical, and thus too speculative to be fit for judicial review at this time." *Lopez*, 617 F.3d at 342.

For the same reasons, as well as those that foreclose standing, Plaintiff cannot show that any "hardship will result from withholding court consideration." *Choice*, 691 F.3d at 715–16 (rejecting claim of hardship where plaintiff "has not identified a single concrete example of how it has been forced to modify its behavior as a result of" challenged statute); *Lopez*, 617 F.3d at 342 (rejecting challenge to redistricting policy as unripe because alleged hardship could be avoided before election).

## II.   <u>Sovereign Immunity Bars Counts 2 and 3</u>

The A&M System, like TAMU, "is an agency of the State of Texas, so a suit against the former is a suit against the latter." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021). This presents "a problem for [Plaintiff] because the Constitution affords States sovereign immunity against suit," *id.*, and that immunity extends to state agencies as well as their employees and officers in their official capacity, *e.g.*, *Shahrashoob v. Tex. A&M Univ.*, No. H-22-699, 2022 WL 3702264, at *3 (S.D. Tex. Aug. 26, 2022). Congress has not abrogated sovereign immunity for suits under Section 1981 or Section 1983—the statutes Plaintiff uses to assert the causes of action in Counts 2 and 3—and so those claims are barred in full. *See id.*; *accord Raj v. La. State Univ.*, 714 F.3d 322, 328 & n.2 (5th Cir. 2013).

The only potential exception to official immunity, the *Ex parte Young* doctrine, cannot salvage Plaintiff's claims against the individual defendants. "[A]n official-capacity

- 9 -

equitable claim is cognizable under *Ex parte Young* only if, *inter alia*, (1) the defendant is a state officer, (2) the complaint seeks injunctive relief for an ongoing violation of federal law, and (3) the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with an injunction against that officer." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 311–12 (5th Cir. 2021).

Plaintiff fails on the second and third prongs. Regarding the former, the complaint does not plead a plausible violation of federal law resulting from the ACES Plus Fellowship or the allegedly "reserved" faculty line, *see infra* Sections III(A)–(D), and any such violation is not "ongoing," as the lack of ripeness makes clear, *see supra* Section I(B). Regarding the latter, the Fifth Circuit requires, at minimum, that the state actor "both possess 'the authority to enforce the challenged law' and have a 'sufficient connection to the enforcement of the challenged act.'" *Haverkamp v. Linthicum*, 6 F.4th 662, 669–70 (5th Cir. 2021) (per curiam) (cleaned up). Yet the actions referenced in the complaint are specific to TAMU—not the A&M System—and Plaintiff pleads no facts suggesting that the Regents have any role in their development and implementation. As a result, the Regents do not bear the necessary relationship to the allegedly "unlawful conduct" to justify stripping them of immunity. *See id.* at 670–72 (rejecting *Ex Parte Young* absent plausible enforcement allegations); *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020) (same). Counts 2 and 3 against the Regents thus should be dismissed.

As to Drs. McGowan and Anand, the pleadings merely recite their titles and suggest that they signed the memorandum announcing the ACES Plus Fellowship at TAMU. There

is no allegation that either has actual authority to carry out this program, much less a "demonstrated willingness" to do so, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), not least because there are no facts suggesting it has been implemented. And they bear no connection to the emails in Exhibit 2. Accordingly, Counts 2 and 3 against these defendants should be dismissed as well. *See Harris v. Cantu*, No. H-14-1312, 2014 WL 6682307, at *4–5 (S.D. Tex. Nov. 24, 2014) (dismissing claims for injunctive relief against university president and governor absent tie to contested decisions).

## III.   All Counts Fail as a Matter of Law

Independent of the want of subject-matter jurisdiction, the complaint also should be dismissed for failure to state a claim.

### A.   Count 1 Fails to State a Claim Under Title VI

At the outset, Title VI does not apply to Plaintiff's claim as pleaded in Count 1. The manifest thrust of this claim is employment discrimination based on race by a recipient of federal funds. *See* Compl. ¶¶ 21–23. Title VI, however, authorizes such claims only in narrow circumstances, namely, "where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. This provision reflects Congress's "concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII." *Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 627 n.6 (1987). Correspondingly, "[a] cause of action under Title VI requires (1) that the defendant have received federal financial assistance **the primary objective of which is to provide employment** (2) that was applied by the defendant to discriminatory programs or activities." *Nat'l Ass'n of Gov't Emps. v. City*

*Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 706 n.9 (5th Cir. 1994) (emphasis added); *see also Foster v. Jayden Hospitality, LLC,* No. 20-359-SDD, 2021 WL 4498558, at *4 (M.D. La. Sept. 14, 2021) (Section 2000d-3 applies to private-plaintiff actions).

The complaint alleges only that TAMU "is a 'program or activity' that 'receives Federal financial assistance' within the meaning of Title VI." Compl. ¶ 22. This barebones charge cannot support a private right of action under Title VI—let alone one against the A&M System. There is no indication that the "primary objective" of any federal funds received by TAMU is "to provide employment," nor that those funds were applied to the subject TAMU initiative, nor that the A&M System bears the necessary connection to either element of a Title VI claim. These are fatal pleading deficiencies. *See Foster*, 2021 WL 4498558, at *4; *accord, e.g.*, *Agbefe v. Bd. of Educ. of City of Chicago*, 538 F. Supp. 3d 833, 838–39 (N.D. Ill. 2021); *Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard Law Review Ass'n*, No. 18-12105-LTS, 2019 WL 3754023, at *9 (D. Mass. Aug. 8, 2019).

Even if Plaintiff could invoke Title VI, he could not state a viable claim for several reasons. ***First***, Plaintiff is not within the statute's zone of interests. To satisfy the "zone-of-interests" test for statutory standing, "the plaintiff must establish that the injury he complains of (***his*** aggrievement, or the adverse effect ***upon him***) falls within the 'zone of interests' sought to be protected" by the statute in question. *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 670 (5th Cir. 2020). In the Title VI context, "[a] plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim." *Jackson v. Katy ISD*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996).

Plaintiff is none of these. *See Azteca Enters., Inc. v. Dallas Area Rapid Transit*, 31 F. App'x 839, 2002 WL 261521, at *2 (5th Cir. Feb. 6, 2002) (unpublished) (bidder for municipal contract was not within Title VI zone of interests for commuter-transportation project); *Veljkovic v. Bd. of Educ. of City of Chicago*, No. 20-C-1551, 2020 WL 7626735, at *4 (N.D. Ill. Dec. 22, 2020) (teacher was not "intended beneficiary" of board's Title VI-funded educational programming).

**Second**, official-capacity claims under Title VI are properly dismissed when the government entity itself is subject to suit. *See Forte v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:05-CV-1417-N, 2007 WL 9712189, at *5 (N.D. Tex. Mar. 6, 2007) ("[W]hen a governmental entity can be sued directly for damages and injunctive or declaratory relief, official-capacity suits are unnecessary."); *see also Johnson v. Hurtt*, 893 F. Supp. 2d 817, 827–28 (S.D. Tex. 2012) (dismissing redundant official-capacity claims).

**Third**, Plaintiff fails to tie the A&M System, and thus the Regents, to the acts underlying his Title VI claim. The initiative at issue is the exclusive province of TAMU— a legally separate entity—and the complaint contains no facts suggesting any responsibility on the part of the A&M System. *See, e.g.*, *Weeks v. Tex. A&M Univ.*, No. 3:16-CV-191, 2018 WL 1033254, at *5–6 (S.D. Tex. Feb. 21, 2018) (dismissing Title VII claims against the A&M System because plaintiff's "employer" was a member institution). And absent a viable claim against the A&M System, there can be no viable official-capacity claim against the Regents. *See Brown v. Bd. of Trs. of Sealy ISD*, 871 F. Supp. 2d 581, 602 (S.D. Tex. 2012) (an official's liability is "coextensive with" that of their agency).

### B.     Count 1 Fails to State a Claim Under Title IX

Plaintiff's Title IX claim fares no better. Above all else, the complaint is devoid of facts supporting Plaintiff's charge of sex discrimination. The only acts identified in the complaint, the announcement of the ACES Plus Fellowship and the "reserv[ation]" of a faculty line (both at TAMU), are silent as to the sex or gender of any applicants. *See* Compl. ¶¶ 11–15, Exs. 1, 2. Without any factual grounding, this claim cannot survive Rule 12(b)(6) scrutiny. *See, e.g.*, *Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing discrimination claim supported only by "conclusory" allegations).

In any event, to the extent that Plaintiff attempts to allege sex discrimination in public-university employment, that claim is preempted by Title VII. The Fifth Circuit held in *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Id.* at 753. Although the Court reserved judgment on whether Title VII excludes suits seeking only declaratory or injunctive relief under Title IX, *id.*, it has reaffirmed *Lakoski*'s core holding, *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118 (5th Cir. 2021), and district courts around the country have treated Title VII as supplying the exclusive remedy for sex-discrimination claims in public employment regardless of the nature of the relief sought, *e.g.*, *Vincent v. Jefferson Cnty. Bd. of Educ.*, No. 2:21-CV-00514, 2022 WL 107187, at *4 (N.D. Ala. Jan. 11, 2022); *Agbefe*, 538 F. Supp. 3d at 840–41; *Muslow v. Bd. of Supervisors of La. State Univ.*, No. 19-11793, 2020 WL 1864876, at *15–16 (E.D. La. 2020).

Finally, similar to Title VI, official-capacity claims for violations of Title IX are redundant of claims against the involved institutions. *See, e.g.*, *Goins v. Hitchcock ISD*, 191 F. Supp. 2d 860, 868 (S.D. Tex. 2002) (dismissing Title IX official-capacity claims in light of claims against entity). This is not to suggest that Plaintiff has stated a claim against the A&M System; to the contrary, the Title IX claims suffer from the same pleading deficiencies that permeate the Title VI claims, and this again disposes of the claims against the Regents. *See Weeks*, 2018 WL 1033254, at *5–6; *Brown*, 871 F. Supp. 2d at 602.

### C.    Count 2 Fails to State a Claim Under Section 1981

Plaintiff's Section 1981 claim meets the same fate. To begin with, Fifth Circuit law forecloses a standalone claim against public institutions and officials for violations of Section 1981. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462–64 (5th Cir. 2001). Any such claims may be brought only through Section 1983. *Id.* This is "not a mere pleading formality," as the bases of liability under the two statutes differ; for example, *respondeat superior* is available through Section 1981 but not Section 1983. *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

As a result, the complaint cannot sustain a Section 1981 claim against the A&M System or the Regents, whose only asserted grounds for liability are discrete actions at TAMU that they are not alleged to have directed or approved. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847–48 (5th Cir. 2009) (government entity cannot be liable under Section 1983 on *respondeat superior* theory, but only for acts "directly attributable" to its "official policy" or "custom"); *Konnethu v. Harris Cnty. Hosp. Dist.*, 669 F. Supp.

2d 781, 790 (S.D. Tex. 2009) (dismissing Section 1981 claim absent allegations that violation was based on official policy or decision of final policymaker). Likewise, to the extent that Plaintiff has a claim under Section 1981 that is enforceable through Section 1983, that claim cannot be asserted against the A&M System because binding law holds that state universities are not "persons" within the meaning of Section 1983. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).

In any event, a more fundamental problem afflicts Count 2: It fails on the pleadings. "To establish a § 1981 claim for contractual discrimination," Plaintiff must allege, at least, that "the discrimination concerned one or more of the activities enumerated in the statute— here, making a contract." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). "Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship[] under which the plaintiff has rights," and that includes "plead[ing] facts that plausibly demonstrate that [the defendants'] alleged discrimination concerned a prospective contract." *Id.* at 388. Here, however, there is no alleged "contractual relationship" under which Plaintiff has rights, and the pleaded facts do not plausibly show a prospective contract impaired by discrimination. *See, e.g., Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for Univ. of La. Sys.*, 286 F. App'x 864, 869–70 (5th Cir. 2008) (per curiam) (affirming dismissal of Section 1981 claims absent alleged contracts). And, with respect to the A&M System and the Regents in particular, as noted above, Plaintiff never connects those defendants with the challenged actions at TAMU. *See Weeks*, 2018 WL 1033254, at *5–6; *Brown*, 871 F. Supp. 2d at 602.

### D.    Count 3 Fails to State a Claim Under the Equal Protection Clause

Plaintiff's final claim, predicated on a violation of the Equal Protection Clause, is equally infirm. At the outset, the lone statute through which Plaintiff presses this claim— Section 1983—precludes liability on the A&M System. *See Stotter*, 508 F.3d at 821. And that statute cannot extend liability to the Regents insofar as the challenged actions occurred at a single member institution—TAMU—and there is no allegation, let alone a plausible one, that those actions were the product of an official "policy" or "custom" of the A&M System. *See Peterson*, 588 F.3d at 850–52; *Boles v. Navarro Coll.*, No. 3:19-cv-02367, 2020 WL 6273765, at *5 (N.D. Tex. Oct. 26, 2020) (dismissing employment-discrimination claim against president based on deficient allegations of official policy and "vague assertions" of disparate treatment). Count 3, therefore, should be dismissed as to the A&M System and the Regents.

As to the remaining defendants, the pleaded facts fall short of stating a plausible Equal Protection claim. "[T]o establish a violation of the Equal Protection Clause in the employment context, a plaintiff must prove a racially discriminatory purpose or motive" within the Title VII framework. *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018). To meet this burden, the plaintiff must demonstrate, among other things, that he "was qualified for the position at issue," "suffered some adverse employment action," and "was treated less favorably than other similarly situated employees" outside his group. *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017) (per curiam). As detailed in the preceding sections, the complaint pleads none of these facts. This is equally dispositive of Count 3. *See, e.g.*, *Chu v. Miss. State Univ.*, 592 F. App'x 260, 266–67 (5th Cir. 2014) (affirming

- 17 -

dismissal of equal-protection claim where plaintiff pleaded "no factual allegations to support [his] claim" that university discriminated against him and not against white faculty); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (plaintiff must "plead sufficient facts on all of the ultimate elements of a [discrimination] claim to make his case plausible").

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the complaint.

Dated: December 2, 2022

Respectfully submitted,

/s/ *M. Carter Crow*
─────────────────────────────
    M. Carter Crow
    State Bar No.  05156500
    carter.crow@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
Layne E. Kruse
State Bar No.  11742550
layne.kruse@nortonrosefulbright.com
Paul Trahan
State Bar No.  24003075
paul.trahan@nortonrosefulbright.com
Ryan Meltzer *(application for admission forthcoming)*
State Bar No.  24092821
ryan.meltzer@nortonrosefulbright.com
Jesika Silva Blanco
State Bar No.  24098428
jesika.blanco@nortonrosefulbright.com

Attorney-in-Charge for Defendants Texas A&M University System, Tim Leach, Bill Mahomes, Robert L. Albritton, James R. Brooks, Jay Graham, Michael A. Hernandez III, Elaine Mendoza, Michael J. Plank, Cliff Thomas, Demetrius L. Harrell Jr., Annie S. McGowan, and N.K. Anand

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Rule 18(c) of this Court's Procedures, I hereby certify that, according to Microsoft Word, Defendants' Motion to Dismiss contains 4,997 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ M. Carter Crow*
M. Carter Crow

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Rule 17(b) of this Court's Procedures, I hereby certify that, on November 22, 2022, I sent a letter to Plaintiff's counsel identifying the pleading deficiencies that Defendants intended to raise by this motion and offering to confer with Plaintiff's counsel on same. The letter is attached as <u>Exhibit 1</u>. On November 23, 2022, Plaintiff's counsel responded by email that he saw no need to confer further and believed that this correspondence satisfied the parties' pre-filing conference obligations under Rule 17(b). On November 30, 2022, Plaintiff's counsel further indicated by email that Plaintiff does not intend to amend his complaint until after Defendants file this motion.

<u>*/s/ M. Carter Crow*</u>
M. Carter Crow

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.3, I hereby certify that Defendants' Motion to Dismiss has been served on all parties today, December 2, 2022, via CM/ECF.

*/s/ M. Carter Crow*
M. Carter Crow