**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD LOWERY, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| TEXAS A&M UNIVERSITY; M. KATHERINE BANKS, in her official capacity as President of Texas A&M University; ALAN SAMS, in his official capacity as Interim Provost and Vice President for Academic Affairs for Texas A&M University; ANNIE S. MCGOWAN, in her official capacity as Vice President and Associate Provost for Diversity at Texas A&M University; and N.K. ANAND, in his official capacity as Vice President for Faculty Affairs at Texas A&M University, | § § § § § § § § § § § § § § | Civil Action No. 4:22-cv-3091 |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

PAUL D. TRAHAN
RYAN E. MELTZER
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

M. CARTER CROW
LAYNE E. KRUSE
JESIKA SILVA BLANCO
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

ISSUES REQUIRING RESOLUTION............................................................................ 7

LEGAL STANDARDS .................................................................................................... 7

ARGUMENT.................................................................................................................... 8

      I.     The Court Lacks Subject-Matter Jurisdiction ............................................ 9

            A.     Plaintiff Lacks Article III Standing.................................................. 9

            B.     Plaintiff's Claims Are Not Ripe ..................................................... 11

      II.    Sovereign Immunity Bars Counts 2–3 ..................................................... 12

      III.   All Counts Fail as a Matter of Law ......................................................... 14

            A.     Count 1 Fails to State a Claim Under Title VI................................. 14

            B.     Count 1 Fails to State a Claim Under Title IX................................. 15

            C.     Count 2 Fails to State a Claim Under Section 1981 ....................... 17

            D.     Count 3 Fails to State a Claim Under the Equal Protection
                  Clause ............................................................................................. 17

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agbefe v. Bd. of Educ. of Chicago,*
   538 F. Supp. 3d 833 (N.D. Ill. 2021) ................................................................ 15, 16

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
   37 F.4th 1038 (5th Cir. 2022) .................................................................................. 11

*Azteca Enters., Inc. v. DART,*
   31 F. App'x 839, 2002 WL 261521 (5th Cir. Feb. 6, 2002) ........................................ 15

*Barnes v. Barrett Ref., Inc.,*
   20 F.3d 466, 1994 WL 121972 (5th Cir. Mar. 22, 1994) ........................................... 17

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,*
   869 F.3d 381 (5th Cir. 2017) ................................................................................... 17

*Caldwell v. Lozano,*
   689 F. App'x 315 (5th Cir. 2017) ............................................................................. 18

*Carney v. Adams,*
   141 S. Ct. 493 (2020) ........................................................................................... 9, 10

*Carter v. Target Corp.,*
   541 F. App'x 413 (5th Cir. 2013) ............................................................................... 3

*Chhim v. Univ. of Tex. at Austin,*
   836 F.3d 467 (5th Cir. 2016) ................................................................................... 18

*Choice Inc. of Tex. v. Greenstein,*
   691 F.3d 710 (5th Cir. 2012) ................................................................................... 12

*Chu v. Miss. State Univ.,*
   592 F. App'x 260 (5th Cir. 2014) ............................................................................. 18

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................................. 2

*Donahue v. City of Boston,*
   371 F.3d 7 (1st Cir. 2004) ........................................................................................ 11

*Earl v. Boeing Co.*,
　53 F.4th 897 (5th Cir. 2022) ....................................................................... 9

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
　11 F.4th 200 (3d Cir. 2021) ................................................................... 9, 10

*Ernst v. Methodist Hosp. Sys.*,
　1 F.4th 333 (5th Cir. 2021) ...................................................................... 16

*FASORP v. Harvard Law Review Ass'n*,
　No. 18-12105-LTS, 2019 WL 3754023 (D. Mass. Aug. 8, 2019).............................. 15

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
　668 F.3d 281 (5th Cir. 2012) ...................................................................... 7

*Forte v. Dallas Cnty. Cmty. Coll. Dist.*,
　No. 3:05-CV-1417-N, 2007 WL 9712189 (N.D. Tex. Mar. 6, 2007) ........................ 15

*Foster v. Jayden Hospitality, LLC*,
　No. 20-359-SDD, 2021 WL 4498558 (M.D. La. Sept. 14, 2021) ........................ 14, 15

*Freedom From Religion Found., Inc. v. Mack*,
　4 F.4th 306 (5th Cir. 2021) ...................................................................... 13

*Gegenheimer v. Stevenson*,
　No. 1:16-CV-1270-RP, 2017 WL 2880867 (W.D. Tex. July 5, 2017)....................... 11

*Goins v. Hitchcock ISD*,
　191 F. Supp. 2d 860 (S.D. Tex. 2002) .......................................................... 16

*Harris v. Cantu*,
　No. H-14-1312, 2014 WL 6682307 (S.D. Tex. Nov. 24, 2014) ................................ 13

*Haverkamp v. Linthicum*,
　6 F.4th 662 (5th Cir. 2021) ...................................................................... 13

*Jackson v. Katy ISD*,
　951 F. Supp. 1293 (S.D. Tex. 1996) ............................................................ 15

*Johnson v. Hurtt*,
　893 F. Supp. 2d 817 (S.D. Tex. 2012) .......................................................... 15

*Johnson v. Transp. Agency, Santa Clara Cnty.*,
　480 U.S. 616 (1987) ............................................................................... 14

*Jones v. Hosemann*,
    812 F. App'x 235 (5th Cir. 2020) ................................................................. 17

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................. 3, 5

*Lakoski v. James*,
    66 F.3d 751 (5th Cir. 1995) ................................................................. 16

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ................................................................. 11, 12

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*,
    76 F. Supp. 2d 919 (N.D. Ill. 1999) ................................................................. 4

*Mitchell v. Mills*,
    895 F.3d 365 (5th Cir. 2018) ................................................................. 17

*Moncibaiz v. Pfizer Inc.*,
    532 F. Supp. 3d 452 (S.D. Tex. 2021) ................................................................. 8

*Muslow v. Bd. of Supervisors of LSU*,
    No. 19-11793, 2020 WL 1864876 (E.D. La. 2020) ................................................................. 16

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*,
    40 F.3d 698 (5th Cir. 1994) ................................................................. 14

*Norris v. Hurst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ................................................................. 5

*Oden v. Oktibbeha Cnty.*,
    246 F.3d 458 (5th Cir. 2001) ................................................................. 17

*Perry v. VHS San Antonio Partners, L.L.C.*,
    990 F.3d 918 (5th Cir. 2021) ................................................................. 17

*In re S. Recycling, L.L.C.*,
    982 F.3d 374 (5th Cir. 2020) ................................................................. 8

*Shahrashoob v. Tex. A&M Univ.*,
    No. H-22-699, 2022 WL 3702264 (S.D. Tex. Aug. 26, 2022) ................................................................. 12

*Simmons v. UBS Fin. Servs., Inc.*,
    972 F.3d 664 (5th Cir. 2020) ................................................................. 15

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) .......................................................... 8

*Sullivan v. Tex. A&M Univ. Sys.*,
    986 F.3d 593 (5th Cir. 2021) ....................................................... 12

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) .......................................................... 8

*Taylor v. Hartley*,
    488 F. Supp. 3d 517 (S.D. Tex. 2020) ....................................... 16

*Taylor-Travis v. Jackson State Univ.*,
    984 F.3d 1107 (5th Cir. 2021) .................................................... 16

*Tex. All. for Retired Americans v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ...................................................... 13

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................. 9

*Veljkovic v. Bd. of Educ. of Chicago*,
    No. 20-C-1551, 2020 WL 7626735 (N.D. Ill. Dec. 22, 2020)..................................... 15

*Vincent v. Jefferson Cnty. Bd. of Educ.*,
    No. 2:21-CV-00514, 2022 WL 107187 (N.D. Ala. Jan. 11, 2022) ............................ 16

**Rules and Statutes**

42 U.S.C. § 2000d-3 ............................................................................. 14

Fed. R. Civ. P. 12(b)(1) .............................................................. 1, 3, 6, 7

Fed. R. Civ. P. 12(b)(6) ................................................... 1, 3, 4, 8, 14, 16

Defendants move to dismiss Plaintiff's First Amended Complaint (Dkt. 19) under Rules 12(b)(1) and 12(b)(6).

## <u>INTRODUCTION</u>

None of Plaintiff's new allegations remove this case from the hypothetical realm. Plaintiff, a tenured professor at the University of Texas at Austin ("UT"), still claims he wants to apply for a position at Texas A&M University ("TAMU") but he believes that institution "has been systematically discriminating" against white and Asian men. In support, Plaintiff cites the same two documents attached to his original complaint: a July 2022 memorandum announcing a prospective fellowship for qualifying new faculty at TAMU and an August 2022 email exchange between two TAMU professors about a "potential[]" new faculty position. The only new facts relate to actions that Plaintiff alleges TAMU's president took during her ***previous*** tenure at TAMU's college of engineering, an ***advisory*** resolution by TAMU's Faculty Senate supporting diversity, and another fellowship at TAMU for ***early career PhDs***. These charges add nothing of legal significance.

The same is true of Plaintiff's new "facts related to standing," which only confirm that Plaintiff has never applied to TAMU and cannot identify any victim of discrimination. In fact, Plaintiff now affirms he ***will not apply*** to TAMU given its alleged policies, yet he admits he ***already has applied*** to another state university (the University of Florida) whose website lists "inclusion" among its "core values" and touts its Chief Diversity Officer and its efforts to recruit faculty of color. Nevertheless, Plaintiff restates his demand that this Court enjoin TAMU and act as its HR czar by "pre-clear[ing]" all hiring decisions.

Courts are not legislatures. They can decide only concrete cases brought by injured parties. Article III "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The Court should reject Plaintiff's effort to subvert these foundational principles.

## FACTUAL BACKGROUND

TAMU is a public institution of higher education located in College Station. First Am. Compl. ("FAC") ¶ 4.

Plaintiff Richard Lowery is a tenured professor of finance at UT. FAC ¶¶ 3, 44. He alleges that TAMU, "along with nearly every university in the United States, discriminates on account of race and sex when hiring its faculty, by giving discriminatory preferences to female or non-Asian minorities." *Id.* ¶ 9. He attributes this to "so-called diversity, equity, and inclusion offices" and charges the very "existence of these offices" with "encouraging wholesale violations of civil-rights laws throughout our nation's university system." *Id.* ¶ 11. Regarding TAMU, Plaintiff relies on two exhibits for support. *See id.* ¶¶ 15–22; FAC Exs. 1, 2 (Dkt. 19-1, 19-2).

The first exhibit is a memorandum dated July 8, 2022 from Defendant Annie McGowan, VP and Associate Provost for Diversity, and Defendant N.K. Anand, VP for Faculty Affairs, to "Deans" at TAMU, titled "New ACES Plus Fellowship." FAC Ex. 1. The memorandum announces a fellowship program designed to attract "promising faculty." *Id.* Citing TAMU's designation as a "Hispanic Serving Institution," the memorandum states that TAMU "is charged with expanding the capacity of low-income, first-generation Hispanic students, and other underserved students and their communities,"

and "[i]ncreasing opportunities for underserved students to interact and engage with faculty" that share their experiences is "essential to achieving this goal." *Id.*

ACES Plus would provide 50% matching salary and benefits to participating departments to fund qualifying new hires. *Id.* Specifically, "[f]or the FY 23 and FY 24, the VP for Faculty Affairs will allocate a sum of $2 million" for the program, to be used for "new mid-career and senior tenure-track hires from underrepresented minority groups, that contribute to moving the structural composition of our faculty towards parity with that of the State of Texas." *Id.* Interested parties must submit proposals, with administrators' support, and funding decisions "will be made" by the VP for Faculty Affairs "with input from the Office for Diversity." *Id.* Nothing in the memorandum, however, indicates that anyone has been hired, nor that applicants of any race or gender will be excluded from consideration.

In fact, before Plaintiff amended his pleadings, Drs. McGowan and Anand issued an ***updated*** version of this memorandum confirming as much. The new memorandum, dated December 14, 2022, "clarifies information regarding the ACES Plus Program contained in our memo dated July 8, 2022." Declaration of M. Carter Crow ("Crow Decl.") Ex. 1.[1] It explains that the program's objective "is to recruit outstanding faculty members

---

[1] The Court may consider the updated memorandum on this motion. It bears directly on Plaintiff's Article III standing, given that Plaintiff's asserted injury stems from the alleged ongoing use of "racial set-asides" in ACES Plus, *see* FAC ¶¶ 16, 31, 45–46, and so is properly before the Court under Rule 12(b)(1), *see infra* pp. 7–8. Likewise, it may be considered under Rule 12(b)(6) because its predecessor is "referred to in the complaint[]" and is "central to the plaintiff['s] claims." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The original memorandum has been superseded, and Plaintiff cannot deny the Court the operative version by refusing to acknowledge its existence. *See Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (per curiam) (considering

with records for research, teaching and/or scholarship in areas that promote campus diversity as an element of academic excellence." *Id.* It also confirms that "[*a*]*ll hiring decisions for this program will be made on an equal employment opportunity basis, without regard to the applicant's race, gender or other protected classification, in full compliance with the Texas A&M policy on equal employment opportunity*," and that "[*q*]*ualified applicants are not limited to underrepresented minority groups*." *Id.* (emphasis added). Moreover, it states that "we have not hired anyone" or "extended any offers for employment." *Id.* Despite receiving this memorandum, Crow Decl. ¶ 1, Plaintiff never mentions it.

The second exhibit is an email exchange between "Shane A. Johnson," whom Plaintiff identifies as "the head of the recruiting committee for the department of finance for 2022–23," and an unidentified TAMU faculty member. FAC ¶¶ 20–21. The latter writes: "I heard from someone that one of our lines is reserved for an 'underrepresented minority.' Is that correct?" FAC Ex. 2. Professor Johnson responds, "The underrepresented line would *potentially* be a third position, so yes reserved, but not one of our 'regular' positions." *Id.* (emphasis added). Again, there is no indication of any actual employment action.

---

plaintiff's EEOC charges under Rule 12(b)(6) because "[t]heir contents are essential to determining" the issues and "[plaintiff's] failure to include them does not allow her complaint to bypass [defendant's] motion to dismiss unexamined"); *cf. Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 922–23 (N.D. Ill. 1999) (considering full chain of correspondence under Rule 12(b)(6) despite plaintiff's reference to select messages and noting the "wasteful[ness]" of "uphold[ing] a claim on the false premise created by less than complete documentation").

Endeavoring to paint these initiatives as part of a discriminatory hiring system, Plaintiff scatters in allegations concerning other events at TAMU. He refers first to hiring directives supposedly issued by TAMU's current president, Defendant M. Katherine Banks, in her former capacity as dean of the college of engineering, and charges—without elaboration—that she "is continuing to promote and impose these discriminatory practices as university president." FAC ¶¶ 12–14. Plaintiff next avers that "[t]he use of discriminatory race and sex preferences" in hiring "has been enthusiastically embraced" by TAMU's Faculty Senate," quoting an October 2022 meeting at which that body approved a resolution "support[ing] the goals of programs, such as ACES and ACES Plus, that aim to diversify the ranks of faculty to better represent our state and our student body." *Id.* ¶¶ 23–29. While Plaintiff implies that the Faculty Senate's actions are imputable to TAMU, university policy dictates that it serves in a purely "advisory capacity" to the President. Crow Decl. Ex. 2.[2] Lastly, Plaintiff contends that TAMU "would reserve hiring spots for underrepresented-minority candidates" under "the original ACES program." FAC ¶ 30. The ACES Fellows Program, however, is directed to "early career faculty" at select TAMU colleges—***not*** including the Mays Business School—and, like ACES Plus, is subject to TAMU's Equal Employment Opportunity policy. Crow Decl. Ex. 3.[3]

---

[2] This is a matter of public record, accessible online, that is properly before the Court. *Norris v. Hurst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

[3] This website is likewise properly before the Court, given Plaintiff's reference to the program and its centrality to his claims and asserted injury. *See Katrina*, 495 F.3d at 205; *infra* pp. 7–8.

Plaintiff re-alleges that he "stands 'able and ready' to apply for a faculty appointment" at TAMU. FAC ¶ 34. Then, for the first time, he pleads facts intended to substantiate that assertion. *Id.* ¶¶ 35–44. After denouncing his current employer, Plaintiff alleges that he "is especially interested in applying for a faculty appointment at [TAMU]," citing its location, his "good relationships" with its faculty, and his view that—notwithstanding every other allegation—TAMU is "one of the few universities in the United States where some departments might consider hiring an outspoken conservative at [his] career stage." *Id.* ¶¶ 35–40. Plaintiff adds that he "is actively assisting efforts at [TAMU] to establish something akin to the Liberty Institute" at UT[4] and that he "gave an informal lunch talk" to TAMU's finance department in April 2022 "in the hopes of generating interest" in "a possible future appointment." *Id.* ¶¶ 42–43. Although this makes him "an exceptionally strong candidate," together with his "already-tenured" status, Plaintiff declares that he "will not" apply to TAMU "until he can compete on an even playing field." *Id.* ¶¶ 41, 44. In fact, Plaintiff claims, he "would have already applied" to TAMU "were the university not using these discriminatory hiring practices." *Id.* ¶ 41.

Meanwhile, Plaintiff boasts that he "has already applied for a faculty appointment at the University of Florida" ("UF"). *Id.* ¶ 38. Like TAMU, UF maintains a webpage describing its diversity, equity, and inclusion ("DEI") programs. Crow Decl. Ex. 5. That

---

[4] On the cited podcast, Plaintiff says the Liberty Institute was hijacked and he "***do*[*esn*]*'t want to just walk away*** from having taken $6 million from taxpayers and having it squandered on insanity." FAC ¶ 35 n.1, at 1:03:54. Further, Plaintiff just sued UT to enjoin it from hindering his ***ongoing employment*** in response to his critiques. *See* Crow Decl. Ex. 4. Plaintiff's own statements, like the below public records, present jurisdictional facts reviewable under Rule 12(b)(1). *See infra* pp. 7–8.

page proclaims that "inclusion is one of our six central values" and links to other DEI-related resources, including the site of UF's Chief Diversity Officer ("CDO"). *Id.* The CDO is "a member of the president's cabinet" charged with "chart[ing] [UF's] inclusive excellence strategy." Crow Decl. Ex. 6. UF also has an official "Anti-Racism" site that lists "Representation" as a "Central Initiative" and tasks UF leadership with "intensify[ing] our efforts in recruiting, supporting and retaining our students, faculty and employees of color." Crow Decl. Ex. 7. Despite linking the mere "existence of [DEI] offices" and racial "preferences" to discrimination, FAC ¶¶ 10–11, Plaintiff submitted an application to UF and has claimed no injury.

Ignoring the requirements of Title VII, Plaintiff asserts three claims: Violations of Title VI and Title IX (Count 1), Section 1981 (Count 2), and the Equal Protection Clause (Count 3). *Id.* ¶¶ 48–65.

## ISSUES REQUIRING RESOLUTION

This motion presents three issues: first, whether this Court has subject-matter jurisdiction; second, whether sovereign immunity bars Counts 2–3; and third, whether Plaintiff has stated a claim in Counts 1–3.

## LEGAL STANDARDS

Rule 12(b)(1) requires dismissal if the Court "'lacks the statutory or constitutional power to adjudicate' the claim[s]." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the

court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). When defendants "factually" attack standing by offering evidentiary materials, the plaintiff "'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden.[']" *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

Rule 12(b)(6) similarly requires dismissal if a complaint does not "contain enough facts to state a claim to relief that is plausible on its face." *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 456 (S.D. Tex. 2021). Courts "will not 'strain to find inferences favorable to the plaintiff[]'" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

## ARGUMENT

The amended complaint should be dismissed under Rules 12(b)(1) and 12(b)(6). First, Plaintiff cannot establish subject-matter jurisdiction, as he lacks standing to press employment-discrimination claims based on incipient initiatives at an institution to which he refuses to apply, and, relatedly, his claims are unripe. Second, Defendants enjoy sovereign immunity against Counts 2–3. Third, all claims fail as a matter of law. Title VI authorizes suits in circumstances not present here, and Plaintiff lacks both statutory standing and grounds for relief. So too for Title IX, which Plaintiff still pleads no facts to implicate. Regarding Counts 2–3, both claims can be asserted only through Section 1983 and Plaintiff cannot plead the requisite elements.

## I.     The Court Lacks Subject-Matter Jurisdiction

As a threshold matter, Plaintiff cannot sustain the Court's subject-matter jurisdiction.

### A.     Plaintiff Lacks Article III Standing

To establish standing, Plaintiff must demonstrate "(1) an 'injury in fact' that is (2) 'fairly traceable' to the 'conduct complained of' and that is (3) likely redressable by a favorable court decision." *Earl v. Boeing Co.*, 53 F.4th 897, 901 (5th Cir. 2022). Standing must exist at all times, *Carney v. Adams*, 141 S. Ct. 493, 499 (2020), and be satisfied "for each claim that [plaintiffs] press and for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

"As the Supreme Court has repeatedly instructed, standing requires a claim of injury that is 'concrete, particularized, and actual or imminent.' That means a claimed injury must be real—'it must actually exist.' And it must not be too speculative for Article III purposes.'" *Earl*, 53 F.4th at 901–02 (citations omitted). The lone injury alleged by Plaintiff is a lost opportunity to "compet[e] with other applicants" for professorships at TAMU "on an equal basis." FAC ¶ 45. But because he has never applied to TAMU, Plaintiff alleges only that he "stands 'able and ready' to apply." *Id.* ¶ 34. For this to rise above the "some day intentions" that fail to demonstrate "'actual or imminent' injury," *Carney*, 141 S. Ct. at 502, Plaintiff must show that "he took some actual steps that demonstrate a real interest in seeking the alleged benefit," and that he has "a 'direct stake in the outcome of a litigation,' rather than a 'mere interest in the problem,'" *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 (3d Cir. 2021). After all, "a grievance that

amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Carney*, 141 S. Ct. at 498.

Plaintiff falls squarely in the abstract-grievance camp. Most importantly, Plaintiff disavows any present intention to apply to TAMU. FAC ¶ 41. His explanation—that he was deterred by TAMU's "discriminatory hiring practices" and otherwise "would have already applied"—withers under scrutiny. Plaintiff admits that he ***did*** apply to another state university (UF) with the kind of DEI initiatives he decries at TAMU and blames for "wholesale violations of civil-rights laws" nationwide. *Id.* ¶¶ 9, 11, 38; Crow Decl. Exs. 5– 7. He also has signaled, through media appearances and litigation, that he wants to stay at UT. *See supra* note 4. These facts indicate that Plaintiff has no more than "a hypothetical 'some day interest' in possibly" applying to TAMU and his purported injury is "neither concrete nor imminent." *Ellison*, 11 F.4th at 208–09.

Further, Plaintiff's position assumes his conclusion (*i.e.*, that his allegations evince ongoing discrimination) and, if accepted, would create a gaping loophole in Article III for employment-discrimination claims. Any plaintiff could sue any potential employer without ever applying for a job and simply allege that he would have applied but for the employer's discriminatory practices. This is precisely the danger the Court foresaw in *Carney*: That accepting a "few words of general intent—without more and against all contrary evidence—[as] sufficient" to show injury "would significantly weaken the longstanding legal doctrine" barring advisory opinions to plaintiffs who "believe[] that the government is not following the law." 141 S. Ct. at 501. Indeed, as the Court observed, each case Plaintiff cites here included evidence that the party claiming discrimination had previously

applied to the challenged program and intended to do so again. *Compare id.* at 502–03, *with* FAC ¶ 45.

Moreover, the only arguable facts concerning employment discrimination at TAMU relate to initiatives that have not been implemented or for which Plaintiff is ineligible. Disregarding Plaintiff's allegations regarding Dr. Banks's actions in her previous position, which (even accepted) do not show present discrimination at TAMU as a whole, and those regarding the Faculty Senate, which has no legal authority over TAMU, all that remains is ACES Plus, the "reserved" hiring line, and ACES Fellows. The first is in embryonic form—no offers have been extended. *See* Crow Decl. Ex. 1. The second, as alleged, is an **additional** position that remains under consideration. *See* FAC Ex. 2. And the third is for "early career PhDs" in **other** disciplines. *See* Crow Decl. Ex. 3. These facts foreclose Article III standing. *See Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (plaintiff seeking prospective relief must show "certainly impending" threat of future harm); *Donahue v. City of Boston*, 371 F.3d 7, 14 (1st Cir. 2004) (plaintiff must be eligible for position to stand "able and ready" to apply); *Gegenheimer v. Stevenson*, No. 1:16-CV-1270-RP, 2017 WL 2880867, at \*3 (W.D. Tex. July 5, 2017) (plaintiff not "personally injured" by discrimination cannot "use the federal courts as a 'vehicle [to] vindicat[e] [his] value interests'").

### B.    Plaintiff's Claims Are Not Ripe

To determine ripeness, the Court "evaluate[s] (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "[A] case is

not ripe if further factual development is required." *Choice Inc. of Tex. v. Greenstein*, 691

F.3d 710, 715 (5th Cir. 2012). Even when a case presents "purely legal questions," however,

the plaintiff still "must show some hardship in order to establish ripeness." *Id.* "In this sense,

the doctrines of ripeness and standing 'often overlap in practice[.]'" *Lopez*, 617 F.3d at 342.

Plaintiff's claims fail both prongs. Although he broadly attacks "discriminatory

preferences" in hiring, the facts in Plaintiff's pleadings depict programs that are both in

nascent stages and contingent on various future actions. *See supra* Section I(A). These are

"event[s] that 'may not occur as anticipated, or indeed may not occur at all,'" meaning that

"the claim[s] [are] merely abstract or hypothetical, and thus too speculative to be fit for

judicial review." *Lopez*, 617 F.3d at 342. For like reasons, as well as those defeating

standing, Plaintiff cannot show that any "hardship will result from withholding court

consideration." *Choice*, 691 F.3d at 715; *see Lopez*, 617 F.3d at 342 (challenge to

redistricting policy was unripe because hardship could be avoided before election).

## II.    Sovereign Immunity Bars Counts 2–3

TAMU "is an agency of the State of Texas, so a suit against the former is a suit

against the latter," *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021), and

the State's immunity extends to TAMU and its officials, *Shahrashoob v. Tex. A&M Univ.*,

No. H-22-699, 2022 WL 3702264, at *3 (S.D. Tex. Aug. 26, 2022). As Congress has not

abrogated sovereign immunity under Sections 1981 and 1983, Counts 2–3 are barred.

*Shahrashoob*, 2022 WL 3702264, at *3.

The only potential exception to official immunity, the *Ex parte Young* doctrine, is

unavailing. "[A]n official-capacity equitable claim is cognizable under *Ex parte Young*

only if, *inter alia*, (1) the defendant is a state officer, (2) the complaint seeks injunctive relief for an ongoing violation of federal law, and (3) the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with an injunction against that officer." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 311–12 (5th Cir. 2021).

Plaintiff fails on the second and third elements. Regarding the former, Plaintiff does not plead a plausible federal-law violation, *see infra* Sections III(A)–(D), and any such violation is not "ongoing," *see supra* Section I(B). Regarding the latter, Fifth Circuit law requires that the state actor "both possess 'the authority to enforce the challenged law' and have a 'sufficient connection to the enforcement of the challenged act.'" *Haverkamp v. Linthicum*, 6 F.4th 662, 669–70 (5th Cir. 2021) (per curiam) (cleaned up). "'Enforcement' means 'compulsion or constraint.'" *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). The official "must have more than 'the general duty to see that the laws of the state are implemented.'" *Id.* Plaintiff cannot make this showing. Stripped of conclusory allegations and references to *past* events, the pleadings rely on each defendant's relationship to ACES Plus—excepting Dr. Sams, who is alleged only to "approve faculty appointments that give tenure on arrival," and Dr. McGowan, who is also tied to TAMU's Diversity Plan. *See* FAC ¶¶ 16, 31–32. Not only are the pleadings silent on the other initiatives—the "reserved" line and ACES Fellows—but a university administrator's involvement in reviewing fellowship applications or approving hires, standing alone, does not constitute the specific enforcement authority required to strip them of immunity for Plaintiff's claims. *See Scott*, 28 F.4th at 672–74; *Haverkamp*, 6 F.4th at 670–72; *cf. Harris*

*v. Cantu*, No. H-14-1312, 2014 WL 6682307, at *4–5 (S.D. Tex. Nov. 24, 2014) (dismissing equitable claims against university president).

## III.    All Counts Fail as a Matter of Law

Independent of its jurisdictional defects, the amended complaint should be dismissed under Rule 12(b)(6). Even armed with Defendants' first motion, Plaintiff has forgone any substantive re-pleading.

### A.    Count 1 Fails to State a Claim Under Title VI

At the outset, Title VI does not apply here. The manifest thrust of Plaintiff's claim is race-and-sex-based employment discrimination by a federal-funding recipient. *See* FAC ¶¶ 48–52. Title VI, however, authorizes such claims only in narrow circumstances, namely, "where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3; *see Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627 n.6 (1987) (noting Congress's concern that Title VI otherwise might subsume Title VII). Accordingly, "[a] cause of action under Title VI requires (1) that the defendant have received federal financial assistance **the primary objective of which is to provide employment** (2) that was applied by the defendant to discriminatory programs or activities." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 706 n.9 (5th Cir. 1994) (emphasis added); *accord Foster v. Jayden Hospitality, LLC,* No. 20-359-SDD, 2021 WL 4498558, at *4 (M.D. La. Sept. 14, 2021).

Plaintiff still alleges only that TAMU "is a 'program or activity' that 'receives Federal financial assistance' within the meaning of Title VI." FAC ¶ 49. This barebones charge does not suffice. There is no indication that the "primary objective" of any federal

funding at TAMU is "to provide employment," much less that those funds were applied to the subject initiatives. *See Foster*, 2021 WL 4498558, at *4; *accord Agbefe v. Bd. of Educ. of Chicago*, 538 F. Supp. 3d 833, 838–39 (N.D. Ill. 2021); *FASORP v. Harvard Law Review Ass'n*, No. 18-12105-LTS, 2019 WL 3754023, at *9 (D. Mass. Aug. 8, 2019).

Even if Title VI applied, Plaintiff's claim would fail. First, Plaintiff lacks statutory standing. To meet this standard, "the plaintiff must establish that the injury he complains of (**his** aggrievement, or the adverse effect **upon him**) falls within the 'zone of interests' sought to be protected" by the statute. *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 670 (5th Cir. 2020). For Title VI, "[a] plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program." *Jackson v. Katy ISD*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996). Plaintiff is none of these. *See Azteca Enters., Inc. v. DART*, 31 F. App'x 839, 2002 WL 261521, at *2 (5th Cir. Feb. 6, 2002) (bidder lacked statutory standing regarding commuter-transportation project); *Veljkovic v. Bd. of Educ. of Chicago*, No. 20-C-1551, 2020 WL 7626735, at *4 (N.D. Ill. Dec. 22, 2020) (teacher failed zone-of-interests test regarding educational programming).

Second, Title VI official-capacity claims are properly dismissed when the entity itself is sued. *See Forte v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:05-CV-1417-N, 2007 WL 9712189, at *5 (N.D. Tex. Mar. 6, 2007); *see also Johnson v. Hurtt*, 893 F. Supp. 2d 817, 827–28 (S.D. Tex. 2012) (dismissing official-capacity claims).

### B.    Count 1 Fails to State a Claim Under Title IX

Plaintiff's Title IX claim fares no better. Above all, Plaintiff still pleads no facts evidencing sex discrimination. The only challenged programs—ACES Plus, the "reserved"

line, and ACES Fellows—are silent on applicants' sex. *See* FAC ¶¶ 15–22, 30, Exs. 1–2. Absent factual grounding, this claim cannot withstand Rule 12(b)(6). *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing discrimination claim supported only by "conclusory" allegations).

Regardless, Title VII preempts Plaintiff's Title IX claim. In this Circuit, "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995). Although *Lakoski* reserved judgment on whether Title VII excludes suits seeking only equitable relief under Title IX, *id.*, the Fifth Circuit has reaffirmed that case's core holding, *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118 (5th Cir. 2021), and district courts have treated Title VII as supplying the exclusive avenue for public-employment sex-discrimination claims regardless of remedy, *e.g.*, *Vincent v. Jefferson Cnty. Bd. of Educ.*, No. 2:21-CV-00514, 2022 WL 107187, at *4 (N.D. Ala. Jan. 11, 2022); *Agbefe*, 538 F. Supp. 3d at 840–41; *Muslow v. Bd. of Supervisors of LSU*, No. 19-11793, 2020 WL 1864876, at *15–16 (E.D. La. 2020). And Plaintiff, an aspirational applicant to TAMU, has no recourse to Title VII. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337–39 (5th Cir. 2021) (Title VII requires exhaustion and adverse action).

Finally, like Title VI, Title IX official-capacity claims are redundant of claims against institutions. *See Goins v. Hitchcock ISD*, 191 F. Supp. 2d 860, 868 (S.D. Tex. 2002) (dismissing official-capacity claims).

### C.    Count 2 Fails to State a Claim Under Section 1981

Plaintiff's Section 1981 claim meets the same fate. To begin with, Fifth Circuit law forecloses a standalone claim against public officials for violations of Section 1981. *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462–64 (5th Cir. 2001). Any such claims are actionable only through Section 1983, *id.*, with all attendant pleading burdens, *Jones v. Hosemann*, 812 F. App'x 235, 238–39 (5th Cir. 2020) (per curiam).

Moreover, Count 2 fails no matter how framed. "Any claim" under Section 1981 "must initially identify an impaired 'contractual relationship['] under which the plaintiff has rights," and that includes "plead[ing] facts that plausibly demonstrate that [defendants'] alleged discrimination concerned a prospective contract." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Here, however, there is no "contractual relationship" between Plaintiff and TAMU, and the pleadings do not plausibly show a prospective contract impaired by discrimination. *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931–32 (5th Cir. 2021) (affirming Section 1981 dismissal where plaintiff failed to identify contractual rights he sought to "make and enforce" against defendant); *Barnes v. Barrett Ref., Inc.*, 20 F.3d 466, 1994 WL 121972, at *3 (5th Cir. Mar. 22, 1994) (per curiam) (affirming Section 1981 summary judgment where plaintiff "never even applied" for job).

### D.    Count 3 Fails to State a Claim Under the Equal Protection Clause

Plaintiff's final claim is equally infirm. "[T]o establish a violation of the Equal Protection Clause in the employment context, a plaintiff must prove a racially discriminatory purpose or motive" within the Title VII framework. *Mitchell v. Mills*, 895

- 17 -

F.3d 365, 370 (5th Cir. 2018). The plaintiff must demonstrate, *inter alia*, that he "was qualified for the position," "suffered some adverse employment action," and "was treated less favorably than other similarly situated employees." *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017) (per curiam). Plaintiff still pleads no such facts, and this is equally dispositive of Count 3. *See Chu v. Miss. State Univ.*, 592 F. App'x 260, 266–67 (5th Cir. 2014) (affirming dismissal where plaintiff pleaded "no factual allegations to support" discrimination); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (plaintiff must "plead sufficient facts on all of the ultimate elements of a [discrimination] claim to make his case plausible").

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the complaint.

Dated: February 10, 2023        Respectfully submitted,

*/s/ M. Carter Crow*

    M. Carter Crow
    State Bar No.  05156500
    carter.crow@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:     (713) 651-5246

OF COUNSEL

NORTON ROSE FULBRIGHT US LLP

Layne E. Kruse
State Bar No.  11742550
layne.kruse@nortonrosefulbright.com
Paul Trahan
State Bar No.  24003075
paul.trahan@nortonrosefulbright.com
Ryan Meltzer
State Bar No.  24092821
ryan.meltzer@nortonrosefulbright.com
Jesika Silva Blanco
State Bar No.  24098428
jesika.blanco@nortonrosefulbright.com

Attorney-in-Charge for Defendants Texas A&M University, M. Katherine Banks, Alan Sams, Annie S. McGowan, and N.K. Anand

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Rule 18(c) of this Court's Procedures, I hereby certify that, according to Microsoft Word, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint contains 5,000 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ M. Carter Crow*
M. Carter Crow

## **CERTIFICATE OF CONFERENCE**

Pursuant to Rule 17(b) of this Court's Procedures, I hereby certify that, on January 31, 2023, I sent a letter to Plaintiff's counsel identifying the pleading deficiencies that Defendants intended to raise by this motion and offering to confer with Plaintiff's counsel on same. The letter is attached as Exhibit 8 to the declaration filed with this motion. On February 7, 2023, Plaintiff's counsel responded by email that Plaintiff will stand on his current pleadings. The email is attached as Exhibit 9 to the declaration filed with this motion.

*/s/ M. Carter Crow*
M. Carter Crow

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.3, I hereby certify that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint has been served on all parties today, February 10, 2023, via CM/ECF.

*/s/ M. Carter Crow*
M. Carter Crow