UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Richard Lowery**, on behalf of himself and others similarly situated, | CIVIL ACTION NO. 4:22-cv-3091 |
| Plaintiff, | |
| v. | JUDGE CHARLES ESKRIDGE |
| **Texas A&M University System**, et al., | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of contents ..................................................................................i

Table of authorities ..............................................................................ii

   I.  The defendants' jurisdictional objections are without merit ................... 1

     A.  Mr. Lowery has alleged Article III standing ............................................. 1

     B.  Mr. Lowery's claims are ripe .................................................................7

     C.  Counts 2 and 3 fall squarely within the *Ex Parte Young* exception to sovereign immunity .................................................................8

   II.  Mr. Lowery has stated a claim on which relief may be granted................ 10

     A.  Mr. Lowery has alleged violations of Title VI ....................................... 10

     B.  Mr. Lowery has alleged violations of Title IX........................................ 14

     C.  Mr. Lowery has alleged violations of 42 U.S.C. § 1981.......................... 15

     D.  Mr. Lowery has alleged violations of the equal protection clause .......... 16

Conclusion ........................................................................................ 17

Certificate of word count .................................................................... 18

Certificate of service .......................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .................................................7

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) .................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 14

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) .................................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 14

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) .................................................... 11

*Cannon v. University of Chicago*, 441 U.S. 677 (1979) ............................................... 13

*Carney v. Adams*, 141 S. Ct. 493 (2020) .................................................................2, 5

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ............................................... 8

*Comcast Corp. v. National Assn. of African-American Owned Media*,
 140 S. Ct. 1009 (2020) .........................................................................................16

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................... 8

*General Building Contractors Assn., Inc. v. Pennsylvania*,
 458 U.S. 375 (1982) .............................................................................................16

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ............................................................... 1, 10

*Grutter v. Bollinger*, 539 U.S. 306 (2003) .......................................................... 10, 16

*International Brotherhood of Teamsters v. United States*,
 431 U.S. 324 (1977) ...............................................................................................5

*Johnson v. Hurtt*, 893 F. Supp. 2d 817 (S.D. Tex. 2012) .........................................14

*Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995) ..........................................................14

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) .............................................................. 11

*Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) ............................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) .............................................................................................13

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019).................. 1, 9

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) ............................. 2

*Milner v. Department of the Navy*, 562 U.S. 562  (2011) ......................................... 11

*National Ass'n of Government Employees v. City Public Service Board of
 San Antonio*, 40 F.3d 698 (5th Cir. 1994)..............................................................12

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
   833 F.2d 583 (5th Cir. 1987) ................................................................7

*Northeast Florida Chapter of Associated General Contractors of America*
   *v. City of Jacksonville*, 508 U.S. 656 (1993) ...........................................1

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ...............................................................7

*Puerto Rico v. Franklin Cal. Tax-Free Trust,* 136 S. Ct. 1938 (2016) ........................ 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard*
   *College*, 261 F. Supp. 3d 99 (D. Mass. 2017) ........................................ 13

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ......................................... 12

*Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*,
   535 U.S. 635 (2002) ...............................................................8, 9

*Waters v. Churchill*, 511 U.S. 661 (1994).................................................. 12

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ........................................ 8

## Statutes

42 U.S.C. § 1981 ...............................................................passim

42 U.S.C. § 1983 .................................................................. 8, 15

42 U.S.C. § 2000d-3 ............................................................... 11

## Other Authorities

Amy Coney Barrett, *Stare Decisis and Due Process*,
   74 U. Colo. L. Rev. 1011 (2002) ......................................... 13

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41 ...................... 13

A plaintiff needs only to *allege* standing and a claim on which relief may be granted at the motion-to-dismiss stage, and all factual allegations in the complaint must be presumed true. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). The allegations in the complaint easily surmount the defendants' jurisdictional and merits objections at this stage of the litigation.

## I.   THE DEFENDANTS' JURISDICTIONAL OBJECTIONS ARE WITHOUT MERIT

### A.   Mr. Lowery Has Alleged Article III Standing

The defendants argue that Mr. Lowery lacks standing because he will not apply for a faculty position at Texas A&M until the university repudiates its use of race and sex preferences in faculty hiring. *See* Mot. to Dismiss, ECF No. 22, at 10; First Amended Complaint, ECF No. 19, ¶ 41. But that does nothing to defeat Mr. Lowery's standing. The Supreme Court has made clear that a potential applicant does not need to apply or show that he is certain to apply before he can challenge a defendant's racially discriminatory selection practices. It is enough if Mr. Lowery stands "able and ready" to apply for a faculty position at Texas A&M—even if he is currently unwilling to apply on account of the defendants' racially discriminatory policies. *See Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need *only* demonstrate that it is *able and ready to bid on contracts* and that a discriminatory policy prevents it from doing so on an equal basis." (emphasis added)); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) ("After being denied admission, Hamacher demonstrated that he was 'able

and ready' to apply as a transfer student should the University cease to use race in undergraduate admissions. He *therefore has standing* to seek prospective relief'" (emphasis added)); *Carney v. Adams*, 141 S. Ct. 493, 499–503 (2020). Nothing is more is needed. If a plaintiff stands "able and ready" to apply and a discriminatory selection practice prevents him from being considered on an equal basis with others, then he has standing to sue over those selection policies.

Mr. Lowery alleges that he is "able and ready" to apply to Texas A&M,[1] and that the university's "pervasive and ongoing use of race and sex preferences" prevents him from competing with other applicants on an equal basis.[2] And Mr. Lowery supports those allegations with factual details explaining his interest in seeking an appointment at Texas A&M,[3] and as well as evidence of race and sex preferences at the university[4]—even though details and evidence of that sort are not necessary to survive a motion to dismiss. That is more than enough to defeat a "facial" challenge to subject-matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) ("A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.").

The defendants try to get around this by suggesting that Mr. Lowery's interest in applying to Texas A&M isn't genuine, and they appear to launch a "factual" attack

---

1.  *See* First Amended Complaint, ECF No. 19, ¶ 34 ("Professor Lowery stands 'able and ready' to apply for a faculty appointment at Texas A&M University").

2.  *See* First Amended Complaint, ECF No. 19, ¶ 45 ("The pervasive and ongoing use of race and sex preferences and set-asides at Texas A&M University prevents Professor Lowery from competing with other applicants for these faculty positions on an equal basis.").

3.  *See* First Amended Complaint, ECF No. 19, ¶¶ 34–44.

4.  *See* First Amended Complaint, ECF No. 19, ¶¶ 9–30.

under Rule 12(b)(1)[5] by citing evidence that the University of Florida deploys "DEI initiatives" like Texas A&M and touting a radio interview and recent lawsuit to suggest that Mr. Lowery wants to remain at University of Texas at Austin. *See* Mot. to Dismiss, ECF No. 22, at 6–7 & n.4; *id.* at 10.

None of this comes close to defeating Mr. Lowery's claim that he stands "able and ready" to apply to Texas A&M, and Mr. Lowery has attached a sworn declaration reaffirming his interest in Texas A&M and swearing to the truth of the complaint's allegations. *See* Lowery Decl. ¶¶ 3–15 (attached as Exhibit 1). The defendants try to undermine Mr. Lowery by pointing to the fact that he formally applied to the University of Florida despite its use of "DEI initiatives,"[6] but the position for which Mr. Lowery applied was at the Hamilton Center for Classical and Civic Education, which is a separate college set up to be free of DEI and other policies that subordinate meritocracy to diversity. *See id.* at ¶ 17. Mr. Lowery also expects that Florida will soon get rid of DEI at its public universities given Governor DeSantis's stated desires to reform higher education. *See id.* So the fact that Mr. Lowery applied for a position at the University of Florida notwithstanding its current profession of commitment to diversity is unremarkable, and it does not in any way indicate that Mr. Lowery is uninterested or not "able and ready" to apply for a faculty position at Texas A&M. In addition, Mr. Lowery has spent a considerable amount of time trying to get a college set up at Texas A&M from which he could hold a joint appointment

---

5. The defendants never explicitly say that they are making a "factual" rather than "facial" attack under Rule 12(b)(1), but their motion must be construed as a "factual" attack because they deny the truth of the complaint's allegations and rely on evidence outside the pleadings.

6. Mot. to Dismiss, ECF No. 22, at 6–7; *id.* at 10.

with the business school, and Mr. Lowery will seek such an appointment if and when the university scraps its discriminatory hiring practices. *See id.* at ¶ 18.

The defendants are equally wrong to claim that Mr. Lowery's lawsuit against the University of Texas at Austin indicates that he intends to stay there. Mr. Lowery is suing UT-Austin because he believes that they are looking for a pretense to fire him, and his desire to avoid such an outcome does not in any way diminish his interest in a faculty appointment from Texas A&M. *See* Lowery Decl. ¶ 19.

Finally, the defendants tout a statement about the Liberty Institute that Mr. Lowery made on a podcast and claim that this reveals an intent to remain at UT-Austin. *See* Mot. to Dismiss, ECF No. 22, at 6 n.4 (quoting Mr. Lowery as having said that I "don't want to just walk away from having taken $6 million from taxpayers and having it squandered on insanity."). But the defendants are quoting Mr. Lowery out of context. The UT administration will not allow Mr. Lowery to have anything to do with the Liberty Institute (now Civitas). *See* Lowery Decl. ¶ 20. So when Mr. Lowery says that he is "not walking away," he is not proclaiming an intent to remain on the UT faculty; he is simply trying to raise awareness that the Liberty Institute will fall sort of expectations and that $6 million of taxpayer money will be wasted. *See id.* Mr. Lowery does not "want to . . . walk away" from the fact that the taxpayers' money has been squandered; he did not say that he does not "want to walk away" from his current appointment at UT-Austin.

The defendants complain that Mr. Lowery's stance would allow "any plaintiff" to sue "any potential employer without ever applying for a job and simply allege that he would have applied but for the employer's discriminatory practices." Mot. to Dismiss, ECF No. 22, at 10. That is untrue. A plaintiff must allege (and eventually

prove) that he stands "able and ready to apply" for that job; it is not enough to "simply allege that he would have applied but for the employer's discriminatory practices." *See Carney*, 141 S. Ct. at 499–500. Mr. Lowery's declaration explains in detail how he stands "able and ready" to apply for a faculty position at Texas A&M. *See* Lowery Decl. ¶¶ 3–21. And Mr. Lowery has produced far more in this regard than the plaintiff in *Carney*, who produced nothing more than a "few words of general intent" to apply for a judgeship. *See Carney*, 141 S. Ct. at 501. Mr. Lowery's declaration explains his dissatisfaction with his current job, the many reasons why he wants to apply for a job at Texas A&M, and his reasons for not submitting a formal application to Texas A&M at this time. *See* Lowery Decl. ¶¶ 4–15. And although the defendants observe that the plaintiffs in *Gratz* and *City of Jacksonville* submitted formal applications to the defendants in those cases before suing them over their discriminatory selection practices,[7] they do not cite any authority or statement from any court declaring that a plaintiff *must* apply before suing in these situations. Indeed, the Supreme Court has explicitly held that it is *not* necessary to formally apply before suing an employer over a racially discriminatory hiring policy. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 365–66 (1977).

The defendants also claim that Mr. Lowery lacks standing because the alleged race and sex preferences "relate to initiatives that have not been implemented or for which Plaintiff is ineligible." Mot. to Dismiss, ECF No. 22, at 11. That is also untrue. The complaint provides not just allegations but evidence that Texas A&M's business school and its finance department are using racial preferences in faculty hiring—and this is very department at Texas A&M from which Mr. Lowery wishes to

---

7.   *See* Mot. to Dismiss, ECF No. 22, at 10–11.

obtain an appointment. *See* First Amended Complaint, ECF No. 19, at ¶¶ 20–21 & Ex. 2. The defendants say that Mr. Lowery is "ineligible" for this position at the business school,[8] but they do not explain how he could be ineligible when he has all the needed credentials for an appointment in the finance department. *See id.* at ¶ 44 (explaining how "Professor Lowery would be an exceptionally strong candidate"). The defendants also claim that the position that the business school "reserved" for an underrepresented racial minority "remains under consideration,"[9] but how does that defeat Mr. Lowery's standing? If the position "remains under consideration," that should buttress Mr. Lowery's standing because the finance department is deploying unlawful racial preferences and set-asides at this very moment. In all events, regardless of whether the "reserved" position remains under consideration, it is clear that the business school and the finance department are discriminating in favor of underrepresented-minority faculty candidates. That inflicts Article III injury on whites (and Asians) who stand "able and ready" to apply for those positions.

Finally, the complaint specifically and repeatedly alleges that the use of race and sex preferences pervades *all* components of Texas A&M University's faculty hiring, and that the cited evidence merely provides examples of a university-wide problem. *See* First Amended Complaint, ECF No. 19, at ¶ 22 ("The memo of July 8, 2022, from the office for diversity, and the Johnson e-mail of August 26, 2022, are merely two of the most recent examples of the pervasive race and sex preferences that infect every aspect of faculty hiring at Texas A&M University."); *id.* at ¶ 30 ("The use of race and sex preferences—as well as outright set-asides—is pervasive throughout

---

8.  *See* Mot. to Dismiss, ECF No. 22, at 11.
9.  Mot. to Dismiss, ECF No. 22, at 11.

the university's faculty hiring, and the problem extends far beyond the ACES Plus program and the other discrete episodes mentioned in this complaint."); *id.* at ¶¶ 31–32; *id.* at ¶¶ 45–46. The defendants do not deny these allegations, and they do not present evidence to refute them. So even if the defendants could somehow show that Mr. Lowery is "ineligible" for the reserved position at Texas A&M's business school, Mr. Lowery has still done more than enough to allege Article III standing at this stage of the proceedings.

### B.    Mr. Lowery's Claims Are Ripe

To determine whether a claim is ripe, a court must consider "the fitness of the issues for judicial decision" and "hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). Each of these factors cuts decisively in favor of ripeness.

The issues are fit for judicial decision because they present pure questions of law: Whether a public university's use of race and sex preferences in faculty hiring comports with Title VI, Title IX, 42 U.S.C. § 1981, and the Equal Protection Clause. *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) ("A case is generally ripe if any remaining questions are purely legal ones"); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012) ("Opulent Life's facial challenges are easily ripe. First, they are fit for judicial decision because they raise pure questions of law."). And withholding judicial consideration will impose hardship on Mr. Lowery, who wishes to apply for a faculty appointment at Texas A&M but will not do so until the university eliminates its use of race and sex preferences. *See* First Amended Complaint, ECF No. 19, at ¶ 41.

### C.    Counts 2 And 3 Fall Squarely Within The Ex Parte Young Exception To Sovereign Immunity

Neither 42 U.S.C. § 1981 nor 42 U.S.C. § 1983 abrogates a state's sovereign immunity, and Mr. Lowery concedes that he cannot sue the university under either of these statutes. *See* First Amended Complaint, ECF No. 19, at ¶¶ 58, 65. Mr. Lowery can, however, sue the individual defendants under the *Ex parte Young* exception to sovereign immunity. To sue under *Ex parte Young*, a litigant needs only to allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted). The plaintiff must also sue a defendant who has "some connection with" the enforcement of the disputed statute or policy. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021); *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

Mr. Lowery's complaint easily surmounts these hurdles. He alleges repeated and ongoing violations of Title VI, Title X, 42 U.S.C. § 1981, and the Equal Protection Clause. *See* First Amended Complaint, ECF No. 19, at ¶¶ 9–32; *id.* at 48–65. The relief that Mr. Lowery requests is prospective in nature, and he is not seeking money damages or retrospective relief. *See id.* at ¶ 66. And all of the individual defendants are connected in some way to the university's hiring practices. McGowan and Amand signed the memo describing the ACES Plus program and its racial set-asides, and Amand discussed the ACES Plus program with President Banks, who personally approved the program and its racially discriminatory set-asides. *See id.* at ¶¶ 15–16. The university provost was cc'd on the ACES Plus memo,[10] and both the

---

10. *See* First Amended Complaint, ECF No. 19, at ¶ 17.

president and provost approve all faculty-hiring decisions for those who receive tenure on arrival. *See id.* at ¶ 31. All four of the individual defendants have "some connection with" the university's hiring practices and the alleged violations of federal law.

The defendants claim that the violations are not "ongoing," but the complaint specifically alleges otherwise. *See* First Amended Complaint, ECF No. 19, at ¶ 31 (describing "these pervasive and ongoing violations of federal law."); *id.* at ¶ 32 (describing "the pervasive and ongoing discriminatory preferences given to female and non-Asian faculty candidates at Texas A&M University."); *id.* at ¶ 45 ("The pervasive and ongoing use of race and sex preferences and set-asides at Texas A&M University prevents Professor Lowery from competing with other applicants for these faculty positions on an equal basis."). Those allegations *must* be accepted as true at this stage of the proceedings. *See Manhattan Community Access Corp.*, 139 S. Ct. at 1927; *Verizon Maryland*, 535 U.S. at 645 (a complaint needs only to "*allege[]* an ongoing violation of federal law" and seek prospective relief to survive a motion to dismiss on sovereign-immunity grounds).

The defendants cite no authority to support the idea that a university's president and provost are improper defendants in an *Ex parte Young* lawsuit that challenges the use of race and sex preferences in faculty hiring—especially when the complaint specifically accuses the president of approving the racially discriminatory policies and advocating for race and sex preferences throughout her tenue at the university. *See* First Amended Complaint, ECF No. 19, at ¶ 12–14. University presidents are named as defendants all the time in lawsuits challenging public-university affirmative policies, even without allegations of their specific involvement in the discriminatory

acts. The "Bollinger" in *Gratz v. Bollinger*, 539 U.S. 244 (2003), and *Grutter v. Bollinger*, 539 U.S. 306 (2003), was Lee Bollinger, who served as President of the University of Michigan during the time of the litigation.[11] No one in those cases even suggested that Bollinger was an improper defendant under *Ex parte Young*. A president of public university will inherently have "some connection" to the hiring practices of that institution—and that is even more so for the subordinate administrators who approve and oversee those practices.

## II.   Mr. Lowery Has Stated A Claim On Which Relief May Be Granted

The complaint repeatedly accuses the defendants of race and sex discrimination in faculty hiring—and it describes the discriminatory practices in detail. *See* First Amended Complaint, ECF No. 19, at ¶¶ 9–30. These allegations, which must be accepted as true, state claims on which relief may be granted under Title VI, Title IX, 42 U.S.C. § 1981, and the Equal Protection Clause.

### A.   Mr. Lowery Has Alleged Violations Of Title VI

The defendants insist that Title VI allows for employment-discrimination claims only in situations where "a primary objective of the Federal financial assistance is to provide employment." Mot. to Dismiss, ECF No. 22, at 14 (quoting 42 U.S.C. § 2000d-3). This argument is untenable, and the defendants are quoting the statutory language out of context. 42 U.S.C. § 2000d-3 says:

> Nothing contained in this subchapter *shall be construed to authorize action under this subchapter by any department or agency* with respect to

---

11. *See* https://www.law.columbia.edu/faculty/lee-bollinger ("From November 1996 to 2002, Bollinger was president of the University of Michigan.").

any employment practice of any employer, employment agency, or la-
bor organization except where a primary objective of the Federal fi-
nancial assistance is to provide employment.

42 U.S.C. § 2000d-3 (emphasis added). This statute does not in any way curtail Mr.
Lowery's claims against Texas A&M because Mr. Lowery is not a "department or
agency"; he is a *private citizen* that is suing to enforce Title VI.

Section 2000d-3 should be enforced according to what it says: Only a "depart-
ment or agency" is forbidden to take action against employment practices under the
guise of enforcing Title VI. *See Milner v. Department of the Navy*, 562 U.S. 562, 575–
76 (2011) ("[W]e have no warrant to ignore clear statutory language on the ground
that other courts have done so."). The Supreme Court's recent decisions have
moved strongly toward textualist interpretations of statutes. *See, e.g.*, *Puerto Rico v.
Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016) ("[O]ur constitutional
structure does not permit this Court to rewrite the statute that Congress has en-
acted." (citations and internal quotation marks omitted)); *Magwood v. Patterson*, 561
U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Con-
gress' intent."); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("We are not
at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead,
we must give effect to the text Congress enacted . . . ."); *Barnhart v. Sigmon Coal Co.*,
534 U.S. 438, 461–62 (2002) ("[C]ourts must presume that a legislature says in a
statute what it means and means in a statute what it says there.") (citation omitted).
And if the text produces a normatively undesirable result then Congress and not the
courts should fix that problem. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004)
("If Congress enacted into law something different from what it intended, then it
should amend the statute to conform it to its intent."); *see also Bostock v. Clayton
County*, 140 S. Ct. 1731, 1737 (2020) ("When the express terms of a statute give us

one answer and extratextual considerations suggest another, it's no contest. *Only the written word is the law*, and all persons are entitled to its benefit." (emphasis added)).

No decision of the Fifth Circuit has considered whether 42 U.S.C. § 2000d–3 prevents anyone other than a "department or agency" from challenging employment practices committed by a Title VI recipient in situations where the "primary objective" of the federal funding was not to provide employment. The defendants cite a footnote in *National Ass'n of Government Employees v. City Public Service Board of San Antonio*, 40 F.3d 698, 706 n.9 (5th Cir. 1994), but the footnote and opinion contain no analysis and merely state, in conclusory fashion, that "[a] cause of action under Title VI requires (1) that the defendant have received federal financial assistance the primary objective of which is to provide employment (2) that was applied by the defendant to discriminatory programs or activities." *Id.* This statement is demonstrably untrue, because it would bar *all* lawsuits under Title VI unless the "primary objective" of the federal funding was to provide employment—even when the lawsuit challenges racial preferences in student admissions rather than faculty hiring. This Court should not follow such an ill-considered and patently false statement, especially when the parties in *National Ass'n of Government Employees* did not litigate the scope of  42 U.S.C. § 2000d–3 before the Fifth Circuit. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990) ("[A]ssumptions—even on jurisdictional issues—are not binding in future cases that directly raise the questions."). *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion) ("These cases cannot be read as foreclosing an argument that they never dealt with."); *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence

not analyzed."). The litigants in *National Ass'n of Government Employees* were content to concede that section 2000d-3's restrictions extend beyond "departments or agencies" to private entities who sue to enforce Title VI, and that cannot foreclose Mr. Lowery from arguing otherwise in this litigation. *See* Amy Coney Barrett, *Stare Decisis and Due Process*, 74 U. Colo. L. Rev. 1011 (2002).

The defendants claim that Mr. Lowery lacks "statutory standing" under Title VI, although they never explain what this means. The cause of action to enforce Title VI was created by the courts; it is not a creature of statute. *See Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979) ("Congress . . . understood Title VI as authorizing an implied private cause of action for victims of illegal discrimination."). It is impossible to understand what "statutory standing" means (or what the defendants mean by invoking "statutory standing") when there is no statute defining the cause of action or the scope of permissible plaintiffs. *See* David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41. The "zone of interests" test that the defendants invoke has been repudiated as a component of so-called prudential standing, and it now exists only to determine whether the statutorily created cause of action authorizes the plaintiff to sue. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–31 (2014). But why wouldn't Mr. Lowery's anti-discrimination claims fall within the "zone of interests sought to be protected" by Title VI—any more than a student's anti-discrimination claims over a university's admissions policies? *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 261 F. Supp. 3d 99 (D. Mass. 2017) (allowing organization of students and prospective applicants to sue under Title VI over Harvard's use of racial preferences in student admissions). Title VI seeks to protect *all* individuals from racial discrimination by

entities that receive federal funds, and Mr. Lowery is as much in that "zone of interests" as any other alleged victim of racial discrimination.[12]

### B.    Mr. Lowery Has Alleged Violations Of Title IX

Mr. Lowery has repeatedly accused Texas A&M of discriminating against men and in favor of women in its faculty hiring, and those allegations must be assumed true when deciding a motion to dismiss. *See, e.g.*, First Amended Complaint, ECF No. 19, at ¶¶ 9–14, 22–23, 29–30; *id.* at ¶ 13 ("Banks would regularly give departments new faculty openings that could be filled by only 'underrepresented minorities' or women."). Detailed factual allegations are not needed to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").

*Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995), is no obstacle to Mr. Lowery's Title IX claims, because that case only forecloses Title IX litigants from suing for money damages when Title VII provides a remedy. *See id.* at 753 ("We limit our holding to individuals seeking money damages under Title IX directly or derivatively through § 1983 for employment practices for which Title VII provides a remedy, expressing no opinion whether Title VII excludes suits seeking only declaratory or injunctive relief."). And *Lakoski* is doubly inapplicable because Title VII does not

---

12. We do not object to dismissing the Title VI or Title IX claims against the individual defendants as duplicative if the Court allows the claims to proceed against Texas A&M as an institution. *See, e.g.*, *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 827–28 (S.D. Tex. 2012).

"provide a remedy" to Mr. Lowery, as he has not yet applied to Texas A&M and cannot pursue a Title VII remedy until he does so. *See* Mot. to Dismiss, ECF No. 22, at 16 (admitting that Mr. Lowery, as "an aspirational applicant to TAMU, has no recourse to Title VII.").

### C.   Mr. Lowery Has Alleged Violations Of 42 U.S.C. § 1981

Under the law of the Fifth Circuit, claims alleging violations of 42 U.S.C. § 1981 must be litigated under the cause of action established in in 42 U.S.C. § 1983. *See Oden v. Oktibbeha County*, 246 F.3d 458, 462–64 (5th Cir. 2001). But Mr. Lowery specifically invoked section 1983 as the cause of action for his section 1981 claim. See First Amended Complaint, ECF No. 19, at ¶ 57 ("Professor Lowery seeks this relief under 42 U.S.C. § 1983 . . . and any other law that might supply a cause of action for the requested relief. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60 (1975)."). So these claims should proceed as long as Mr. Lowery has alleged that the defendants are violating 42 U.S.C. § 1981 in their faculty-hiring policies.

The defendants deny that Mr. Lowery has alleged a prospective "contractual relationship,"[13] but that is untenable. The complaint specifically alleges that Mr. Lowery wants to work at Texas A&M and stands "able and ready" to apply for a faculty appointment. *See* First Amended Complaint, ECF No. 19, at ¶¶ 33–44; Lowery Decl. ¶¶ 3–21. A contract is needed to be employed as a professor at Texas A&M, so Mr. Lowery has adequately alleged a "prospective contract." An existing contract is not necessary to sue under 42 U.S.C. § 1981, and courts consider section 1981 claims all the time from litigants who are seeking to enter a contractual relationship

---

13. *See* Mot. to Dismiss, ECF No. 22, at 17.

but have not yet done so. *See, e.g.*, *Comcast Corp. v. National Assn. of African-American Owned Media*, 140 S. Ct. 1009, 1013 (2020); *General Building Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 389–90 (1982); 42 U.S.C. § 1981(b) ("For purposes of this section, the term 'make and enforce contracts' includes the *making*, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (emphasis added)).

### D.   Mr. Lowery Has Alleged Violations Of The Equal Protection Clause

The defendants' objections to Mr. Lowery's equal-protection claim are meritless. Mr. Lowery has alleged a racially discriminatory purpose or motive throughout his complaint, which accuses the defendants of consciously and intentionally attempting to change the racial makeup of the Texas A&M faculty to make it more closely resemble the demographics of the state of Texas as a whole. *See* First Amended Complaint, ECF No. 19, at ¶¶ 9–32. Those allegations, if true, assuredly qualify as purposeful racial discrimination. The Title VII framework that the defendants cite is irrelevant because Mr. Lowery is suing to enjoin a racially discriminatory hiring practice; he is not seeking relief for a particular discriminatory action directed at him. Mr. Lowery needs only to allege that the defendants are intentionally discriminating on account of race and sex in faculty hiring.

## CONCLUSION

The motion to dismiss should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

GENE P. HAMILTON                          JONATHAN F. MITCHELL
Virginia Bar No. 80434                    *Attorney in Charge*
Vice-President and General Counsel        Texas Bar No. 24075463
America First Legal Foundation            S.D. Tex. Bar No. 1133287
300 Independence Avenue SE                Mitchell Law PLLC
Washington, DC 20003                      111 Congress Avenue, Suite 400
(202) 964-3721 (phone)                    Austin, Texas 78701
gene.hamilton@aflegal.org                 (512) 686-3940 (phone)
                                          (512) 686-3941 (fax)
                                          jonathan@mitchell.law

                                          *Counsel for Plaintiff and*
Dated: March 17, 2023                     *the Proposed Class*

## CERTIFICATE OF WORD COUNT

I certify that this motion contains 4,981 words.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on March 17, 2023, I served this document through CM/ECF upon:

M. Carter Crow
Layne E. Kruse
Paul Trahan
Ryan Meltzer
Jesika Silva Blanco
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
carter.crow@nortonrosefulbright.com
layne.kruse@nortonrosefulbright.com
paul.trahan@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com
jesika.blanco@nortonrosefulbright.com

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff and the Proposed Class*