# **EXHIBIT 10**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br><br>    *Plaintiff,*<br><br>v.<br><br>LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin,<br><br>    *Defendants.* | Case No. 1:23-cv-129-LY |

DECLARATION OF RICHARD LOWERY

I, Richard Lowery, declare the following based on my personal knowledge:

1. I am employed as an Associate Professor in the Department of Finance at the University of Texas, Austin's McCombs School of Business. My primary duties include teaching students; pursuing research in various fields including banking, investment banking, and real estate; and publishing my original research. As a professor, it is also my traditional role to participate in and contribute to academic

1

and social discourse on campus, including discussions about our university's direction, mission, and operation.

2. A true and correct copy of my online profile printed from the UT-Austin website is attached as Exhibit A.

3. In addition to my job as a UT-Austin professor, I serve as a Senior Scholar at the McCombs' Salem Center for Policy. My Salem Center duties include overseeing the center's Policy Research Lab, helping coordinate the center's academic programs, and acting as a general advisor. I am also leading the launch of an undergraduate fellowship on "markets," a program that will focus on the history and role of free markets in business and society.

4. A true and correct copy of the Salem Center's splash page from its website is attached as Exhibit B.

5. My position at the Salem Center comes with a $20,000 stipend paid by UT-Austin, and is subject to annual renewal by the Senior Associate Dean for Academic Affairs, Ethan Burris, as well as Prof. Carlos Carvalho, the center's Executive Director.

6. Exhibit C is a true and correct copy of my Salem Center agreement for 2022-2023.

7. In addition to the stipend, I also get access to research opportunities due to my affiliation with the Salem Center, as well as some academic prestige. I also personally get a lot of satisfaction from this affiliation, including the opportunity to

collaborate with my friend Carlos Carvahlo and other academics who are interested in how markets work.

8. I have a history of speaking and writing about controversial public affairs topics, including affairs at UT-Austin. My published commentary has appeared in *The Hill*, the *Texas Tribune*, the *Houston Chronicle*, the *Ft. Worth Star-Telegram*, the *Washington Times*, and *The College Fix*.

9. I am a proponent of free market economics and merit-based hiring and admissions decisions. In recent years I have publicly criticized UT President Jay Hartzell and other UT officials, including their approaches to issues such as DEI (diversity, equity and inclusion), critical-race theory indoctrination, affirmative action, academic freedom, competence-based performance measure, and the future of capitalism. I have also made other public criticisms, which are discussed further below.

10. I have sometimes used social media to express my opinions and directed my speech at elected officials in Texas, including those who oversee funding for UT-Austin.

11. I disagree strongly with the ideology of DEI, which is prevalent amongst many academics at UT-Austin. Many UT administrators are also DEI adherents and I believe that the administration has deliberately staffed key positions with DEI adherents and implemented policies to filter out people who do not support the DEI ideology. It is my view that President Hartzell is a proponent of the DEI ideology as well.

3

12. On December 1, 2021, I published a column in the online periodical, *The College Fix,* challenging UT-Austin's recent $100,000 GoKar program for subsidizing the teaching of critical race theory to young children. *See* Richard Lowery, *At UT-Austin, teaching white 4-year-olds that they're racist is funded by taxpayer dollars,* The College Fix (Dec. 1, 2021) http://bit.ly/3RptYwV. In it, I called the GoKar program a "grave misuse of state funds for public purposes." I also criticized UT-Austin's use of DEI grants as the "diversion of state resources to political advocacy through bureaucratic means..." and the lack of oversight by elected leaders.

13. The article is publicly available at the link listed above. A true and correct copy of a print-out of that article is attached as Exhibit D.

14. In June 2022, I authored an opinion piece criticizing the use of race-based affirmative action in admissions at UT-Austin in the *Washington Times. See* Richard Lowery, *Perpetuating racism: Why universities insist on 'affirmative action,* The Washington Times (June 28, 2022), http://bit.ly/3kKNBDl. In that piece, I expressed my opinion that racist admission policies were operationalized through university DEI offices and the placement of critical-race theorists in positions of power, posing several questions to my readers, such as: "Why are [university presidents] more scared of racist faculty than of their state government, which should be monitoring them to make sure they are focused on excellence and equal treatment of students?" I ended by encouraging Texans to seek answers from their state representatives.

4

15. The article is publicly available at the link listed above. A true and correct copy of a print-out of that article is attached as Exhibit E.

16. The topic of intellectual orthodoxy at public universities, including the one that employs me, also interests me. That is one of the reasons I value my work with the Salem Center.

17. To further intellectual diversity at UT-Austin, in 2021, I worked with Carlos to elicit Jay Hartzell's backing to ask for state legislative support to create "The Liberty Institute" at UT-Austin.

18. As envisioned by Carlos and me, the Liberty Institute would have developed curriculum and hired faculty to advance classical liberal themes as a new, independent academic unit. It would also have generated new degree programs in philosophy, politics, and economics to further understanding of liberty and free market economics.

19. I believed the Liberty Institute was necessary to further intellectual balance at UT-Austin. The university's administration and faculty overwhelmingly oppose classical liberal theories, and as designed, the institute would have counterbalanced the prevailing progressive, DEI ideology on campus. It would have also prevented the application of DEI-based hiring filters that screen out qualified candidates who dissent from DEI ideology.

20. The Texas Legislature's 2022-2023 state budget allocated $6 million for the Liberty Institute in addition to private donor support. We also successfully lined up some potential support from private donors.

5

21. The university's administration ended up hijacking our plans for the Liberty Institute. They renamed the center "Civitas" and took away its independence, forcing all funding for regular faculty hiring to flow to existing academics and programs. I have publicly criticized this development.

22. On June 8, 2022, I was quoted in the *Texas Tribune,* criticizing President Hartzell and another member of the UT Administration: "The President of UT, in coordination with one of his chief deputies, Richard Flores, chose to completely default on the plan agreed to for bringing needed intellectual diversity to campus and push back against the persistent attacks on free inquiry and academic freedom at UT-Austin." Kate McGee, *Professors behind conservative-backed "Liberty Institute" say UT has strayed from plan,* THE TEXAS TRIBUNE (June 8, 2022), http://bit.ly/409vZ3W.

23. The article is publicly available at the link above. A true and correct print-out of the article is attached as Exhibit F.

24. On July 1, 2022, I again expressed my opinions about the hijacking of the Liberty Institute, criticizing the role of UT President Hartzell and his deputy, Richard Flores, who is an advocate of critical race theory and DEI-ideology. *See* Richard Lowery, *How UT-Austin Administrators Destroyed an Intellectual Diversity Initiative,* MARTIN CENTER FOR ACADEMIC RENEWAL (July 1, 2022), http://bit.ly/3kMhO4S. I included my opinion article with a call for outside intervention to help establish viewpoint diversity: "[W]ith the current

6

administration at UT-Austin, nothing will be possible without far more direct state intervention."

25. The article is publicly available at the link above. A true and correct print-out of the article is attached as Exhibit G.

26. Later in July 2022, I appeared on The Center for the Study of Partisanship and Ideology's (CSPI) podcast to join its President, Richard Hanania, to talk about the Liberty Institute controversy. CSPI Podcast, *Lessons from the Frontlines of the University Wars | Richard Lowery & Richard Hanania*, https://youtu.be/F9JB3a3viGU. Hanania is also a visiting scholar at the Salem Center.

27. During the podcast, I criticized UT's administrators, including President Hartzell. I repeatedly shared my opinion that part of Hartzell's job is lying to Republican office holders in Texas in order to minimize viewpoint-diversity problems at UT. I also repeatedly criticized what I call "fake conservatives" on campus, who I believe have assisted establishment leftists in derailing viewpoint-diversity efforts at UT. I was also generally critical of UT-Austin's use of DEI-ideology to filter out merit-based candidates in favor of ideologically reliable DEI hires for academic and administrative posts.

28. The podcast is publicly available on YouTube at the link above and from other online locations too, such as Apple Podcasts. A true and correct copy of the podcast video was made and labeled as Exhibit H.

7

29. Up until recently, I have also used my account @RichardLoweryTX, to publicly express my views of the Twitter social media platform. @RichardLoweryTX is my own personal account and is not affiliated with UT-Austin. My profile page indicates the following, ""[a]ll opinions are mine and almost certainly diametrically opposed to those of my employer."

30. As I explain below, due to Defendants' threats, I eventually locked my Twitter account and stopped tweeting altogether, but before that, my Tweets, Replies, and Re-Tweets would have been publicly visible to any Twitter user, including UT administrators and employees.

31. In addition, by tagging some of my Tweets with the Twitter handles of elected officials in Texas government, my posts would have specifically been visible to those elected officials, or whoever on their staff was administering their Twitter account. I have also sometimes tagged other Twitter personalities and social-media influencers, in the hope of drawing greater attention and engagement with my opinions.

32. I have reviewed the information posted at TWITTER, *New user FAQ*, https://help.twitter.com/en/resources/new-user-faq, and to the best of my knowledge, the information posted there accurately describes the Twitter functionalities of tweeting, re-tweeting, and replying. Those descriptions also track with my personal experiences with those functionalities as a Twitter user.

33. On August 18, 2022, I tweeted about an article regarding new DEI-ideology based job performance reviews in the University of California system,

8

tagging Texas Governor Greg Abbott's Twitter account, and also Lieutenant Governor Dan Patrick's Twitter account. I asked why those elected officials had put Texas on the same path, a reference to the UT administration's expanding use of DEI filtering criteria at UT-Austin.

34. A true and correct copy of a screenshot of my Tweet is attached as Exhibit I.

35. The McCombs School hosts a Global Sustainability Leadership Institute (GSLI), which promotes Environment Sustainability and Governance (ESG) based viewpoints that are consistent with the predominant DEI-ideology at UT-Austin and are often at odds with free-market principles and my own views.

36. A true and correct copy of the GSLI's splash page from its website is attached as Exhibit J. It describes some of the institute's goals and ideology.

37. I believe that GSLI is designed to train activists to use corporations to promote DEI-based ideology. I also believe that ESG serves a similar purpose: to hijack corporations to propagate ideological goals. I also believe that GSLI promotes a worldview and academic approach that is at least partially antithetical to my own free-market philosophy and academic approach, and is also hostile to the academic values, approaches, and studies emphasized by the Salem Center.

38. I have publicly criticized GSLI and its events using my Twitter account. I know that Twitter is widely used on campus, and is an effective channel for carrying on a campus discussion.

9

39. On April 11, 2022, I tweeted a photo of a GSLI flyer touting the institute's "Global Sustainability Minor." I commented that the minor promotes "left-wing activism" and criticized the perceived hypocrisy of its supporters, stating, "These people are shameless and awful."

40. A true and correct copy of a screenshot of that Tweet is attached as Exhibit K.

41. On August 22, 2022, I tweeted a photo of a display promoting a GSLI event called, "Impact Chat: ESG under Attack." I criticized the featuring of two ESG proponents, and compared their panel's lack of balance with the Salem Center's efforts to include dissenting views at its events.

42. A true and correct copy of a screenshot of that Tweet is attached as Exhibit L.

43. My repeated public criticisms of President Hartzell, the UT administration, their DEI initiatives on campus, and GSLI have gotten the Defendants' attention, who reacted by pressuring my friend and colleague, Carlos Carvalho, and causing him to transmit threats to me. Carlos heads the Salem Center, and was my collaborator in seeking to set up the Liberty Institute.

44. Carlos told me about a series of conversations he had with Sheridan Titman, Lillian Mills, and Ethan Burris around August and October 2022, where they made a number of demands that Carlos get me to tone down my public commentary and also threatened not to renew my affiliation with the Salem Center,

which needs to be renewed annually. Carlos told me that Dean Mills even threatened to remove him from his post as Executive Director of the Salem Center.

45. I was not present for those conversations, but I have read Carlos's declaration and the conversations he describes there are the same ones he told me about.

46. On August 22, 2022, Titman also threatened me directly via email, after I criticized a GSLI event on Twitter. He forwarded an email to me addressed to "Lil" whom I knew to be Dean Lillian Mills, but with the email header omitted. The forwarded email complained about my GSLI-related Tweet earlier that day.

47. Along with the forwarded email, Titman wrote: "You don't seem to be making friends. It is probably in your interest to come up with a class for the Spring that is likely to be popular . . . In any event, the appropriate response is to jointly sponsor a panel discussion on ESG."

48. I responded via email: ""I consider this a threat. I can certainly criticize events."

49. I interpreted Titman's reference to needing to have a popular class to imply that I might face a loss of pay or other disciplinary consequences if I continued criticizing GSLI and its events. I interpreted his comment about needing a popular class as indicating that having a popular class might protect me from such consequences. Alternatively, if Titman didn't believe my class was sufficiently popular I might face some sort of adverse employment action. It was unusual for

11

Titman to make such a comment to me and that is one reason why it stood out to me.

50. As a result of Titman's threat, I made a public information request to UT-Austin for certain emails about the GSLI Tweets. Some of the emails produced to me by UT-Austin in response to that request provided further information about events leading up to Titman's email to me.

51. UT-Austin produced the emails to me on October 10, 2022.

52. By reading those emails, I learned that the GSLI's Director, Meetha Kothare, had complained to Dean Mills, Professor Laura Starks, and Sheridan Titman about my Tweets. Her emails indicated that their tone was "offensive" and that they speculated that they might invite trouble or even violence. I also learned that she had sought police protection for GSLI events and that another GSLI employee, Madison Gove, had requested that UT's police department review my Twitter postings.

53. Attached as Exhibit M is a true and correct copy of Meeta Kothare's email to Dean Mills and Jeffrey Hales titled "Lowery's tweets have started again." I obtained this email from UT-Austin's response to my public information request.

54. Attached as Exhibit N is a true and correct copy of Meeta Kothare's email to Laura Starks about my Tweets. I obtained this email from UT-Austin's response to my public information request.

55. Attached as Exhibit O is a true and correct copy of Laura Starks's email to Sheridan Titman about my Tweets. I obtained this email from UT-Austin's response to my public information request.

56. Attached as Exhibit P is a true and correct copy of Sheridan Titman's email to me, forwarding part of Kothare's email about my Tweets to Dean Mills and Jeffrey Hales, and threatening me, and my response back to Titman. I received and sent those emails on my UT email account.

57. Attached as Exhibit Q is a true and correct copy of Madison Gove's email to UT Officer Bishop, requesting he investigate my Twitter posts, which is copied to Kothare and others. I obtained this email from UT-Austin's response to my public information request.

58. Because of the threats made by Dean Mills, Associate Dean Burris, and Sheridan Titman that were conveyed to me by Carlos, and also because of the threat conveyed directly to me by Sheridan Titman, in late August 2022, I switched my @RichardLoweryTX from a public Twitter account to a protected account (also known as a private account). In this protected mode, my Tweets are not searchable and can only be viewed by my followers who have my permission to read and interact with my Tweets. Switching to protected mode reduces the reach of my speech on the Twitter platform. It also reduces engagement with my Tweets and prevents them from going viral.

59. I have reviewed the description of public and protected Tweets located online at TWITTER, *About public and protected Tweets,*

13

https://help.twitter.com/bg/safety-and-security/public-and-protected-tweets, and the information provided there comports with my own experience as a Twitter user.

60. The UT administration was sending me a message: stop criticizing us and developments at UT-Austin or there would be consequences. I got the message and that is why I switched my account to protected mode. As of August 24, 2022, I also stopped using Twitter altogether. It isn't worth the risk to my career.

61. I also think that the UT administration have focused on my role at the Salem Center because they know it matters to me and because my affiliation with the center is not subject to tenure protections and must be renewed annually. That makes the Salem Center a pressure point, making it easier for them to punish me for speech they don't like.

62. If the Defendants were to cancel my role at the Salem Center, I would lose my $20,000 annual stipend, my supervisory role at the Policy Research Lab, and the opportunities to publish academic research that the Policy Research Lab job would surely generate in the future. The loss of research opportunities through the Policy Research Lab would hurt my academic career.

63. I also find it disturbing that the GSLI would allow one of its employees to ask the UT police department to investigate me owing to my Twitter posts. That is something that happens in authoritarian countries.

64. Due to the Defendants' threats, I have also self-censored my speech in other ways.

14

65. I have ceased publishing opinion columns on political and university affairs and I have also avoided criticizing public universities, especially UT-Austin.

66. For example, Stanford University's Graduate School of Business' Classical Liberalism Initiative invited me to speak during its two-day "Academic Freedom Conference" taking place on November 4-5, 2022. I also served on the event's organizing committee. I had planned to use this appearance to criticize UT-Austin's handling of the Liberty Institute and the school's hostility to free speech. Because of Defendants' threats, I instead spoke about free speech issues at private universities.

67. I also had to request that the video of an October 2022 symposium I participated in and helped organize in Washington, D.C., on academic freedom not be made public. The event was called "Reversing Ideological Capture of Universities" and was held at Hillsdale College's Kirby Center.

68. In addition to teaching my classes, conducting research, and publishing that research, I believe that it is part of my job as an academic at UT-Austin to comment on developments at UT-Austin, including UT's policies, actions taken by UT's administrators, spending priorities, academic freedom, and tolerance for viewpoint diversity, even when those topics do not relate directly to my classroom teaching or published research.

69. For example, I have observed that other UT-Austin faculty are able to freely comment in favor of DEI-initiatives without getting threatened by UT administrators. A great example of this is the UT's Provost's Office, offering grants to "to support and enable members of our campus community to carry out projects

15

that promote DEI." The office does not offer grants to criticize DEI or question its premises.

70. A description of the Provost's grant program to promote DEI ideology can be found at UNIVERSITY OF TEXAS, *New Grants Empower Campus Community to Lead Diversity, Equity and Inclusion Projects* (last visited February 5, 2023), http://bit.ly/3XeXwi4.

71. A true and correct print-out of the online description of the UT Provost's grant program to promote DEI ideology is attached as Exhibit R.

72. I would like to again participate in campus discussions about our university's direction, including by publicly commenting on developments at UT-Austin, including its administration, DEI policies, GSLI, spending priorities, the hijacking of the Liberty Institute, and UT's general hostility to viewpoint diversity, but I am continuing to self-censor because I am concerned that the Defendants will carry out their threats.

73. I would also like to again engage with elected officials in Texas government and social-media influencers on Twitter, to promote my commentary and petition for a redress of grievances over how UT-Austin is run and how taxpayer money is used for ideological indoctrination, but I am self-censoring due to Defendants' threats.

74. I intend to continue to self-censor until I can obtain legal protection for my intended speech.

16

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this date, February __6__, 2023.

_____
Richard Lowery

DocuSign Envelope ID: 28A26971-01CF-4919-9642-CB5AA37314A8

**The University of Texas at Austin**
**McCombs School of Business** | **FINANCE DEPARTMENT**

# Exhibit C

2110 Speedway, B6600 • CBA 6.222 • Austin, TX 78712-1270 • 512-471-4368 • www.mccombs.utexas.edu

## MEMORANDUM

DATE: September 19, 2022

TO: Ethan Burris
Senior Associate Dean for Academic Affairs

VIA: Sheridan Titman
Chair, Department of Finance

FROM: Carlos Carvalho
Executive Director for the Salem Center for Policy

RE: Administrative Program Director for the Salem Center for Policy

This memo confirms that Dr. Lowery will support the Salem Center of Policy (SCP) as the Administrative Program Director in 2022-23. This is a renewable annual arrangement at 0% time with an annual stipend of $20,000 subject to the availability of funds and the needs of the Salem Center for Policy.

Dr. Lowery will work as a general advisor for the SCP and helps in the coordination of our academic programs. One of his primary jobs will be to oversee the Policy Research Lab, essentially supervising our postdoctoral fellows. He will also oversee our soon to be launched undergraduate fellowship on "Markets", a program that will provide students with co-curricular programming on the history and role of Free Markets in business and society.

Approved By:

Ethan Burris    2022-09-21 | 16:35:22 PDT

Professor and Chair of Management