UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Richard Lowery**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Texas A&M University System**, et al.,<br><br>Defendants. | Civil Action No. 4:22-cv-3091<br><br>Judge Charles Eskridge |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM ON JUSTICIABILITY**

The provisions of SB 17 that disband DEI offices at state universities do not moot Mr. Lowery's claims. The elimination of those offices does not mean that the use of race and sex preferences in faculty hiring will cease, and while those offices have undoubtedly contributed to the problem they are far from the only actors responsible for the current situation at Texas A&M. The first amended complaint makes this clear, as does the proposed second amended complaint that Mr. Lowery submitted earlier today. *See* First Amended Complaint, ECF No. 19, at ¶ 11 (claiming that DEI offices have merely "egged on" the discriminatory, illegal, and anti-meritocratic hiring practices that Mr. Lowery is suing to enjoin); *id.* at ¶¶ 12–31 (faulting many university officials outside the diversity office for embracing illegal race and sex preferences in faculty hiring). The same goes for the provisions in SB 17 that ban the use of diversity statements in hiring decisions. Mr. Lowery is not

suing to enjoin the use of diversity statements; he is suing only to stop Texas A&M from discriminating in faculty hiring based on the race or sex of the applicant.

The only provision of SB 17 that presents a mootness issue is the segment that will be codified at section 51.3525(b)(1)(D) of the Texas Education Code, which will require the "governing board" of Texas A&M to "ensure" that the university does not, except as required by federal law, "give preference on the basis of race, sex, color, ethnicity, or national origin to an applicant for employment." Tex. S.B. 17 § 1, 88th Leg., R.S. (2023) (to be codified at Tex. Educ. Code § 51.3525(b)(1)(D)). The defendants argue that the case has become moot on account of this provision, but they are mistaken for several reasons. First, section 51.3525(b)(1)(D) has not yet taken effect, and it will not take effect until January 1, 2024. *See* Tex. S.B. 17 § 4, 88th Leg., R.S. (2023). Second, the defendants have failed to produce evidence showing whether or how they will respond to the enactment of SB 17. All that they provide is a one-page memorandum that describes a "Systemwide Ethics and Compliance Program Review" in response to SB 17.[1] This does not indicate that the defendants will halt the use of race and sex preferences in faculty hiring, and it does nothing to rebut Mr. Lowery's accusation that the defendants intend to continue these discriminatory practices in the teeth of SB 17.

Statutory changes do not moot a claim unless they discontinue the challenged practice. *See Freedom From Religion Foundation, Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) ("[S]tatutory changes *that discontinue a challenged practice* are usually enough to render a case moot" (emphasis added) (citation and internal quotation marks omitted)); *see also Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir.

---

1. *See* Memorandum from Janet Gordon, ECF No. 33-1.

2000) (same); *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023) ("A statutory change that discontinues a challenged practice usually makes an appeal moot."). One needs only to look at Texas A&M's website to see that the enactment of SB 17 has not discontinued the practices that Mr. Lowery is suing over. The university's website *still* says that Texas A&M will "[i]n new hires, increase by 100% the diversity of our faculty to better reflect the diversity of our student body" and "increase by 50% the retention of women faculty on the tenure track to better reflect the diversity of our student body." *See* https://diversity.tamu.edu/Home/Strategic-Planning (last visited on July 12, 2023).[2] Nor have the defendants presented reasons or evidence to believe that the university has repudiated and eliminated the use of race or sex preferences in faculty hiring. They want this Court simply to *assume* that the enactment of SB 17 has already induced Texas A&M to terminate the use of race and sex preferences. But a court cannot make this assumption when: (1) The university is still boasting about diversity quotas on its website; (2) The university has been flouting and defying Title VI and Title IX for decades, which impose the same anti-discrimination rules that appear in section 51.3525(b)(1)(D); (3) The use of race and sex preferences is ardently supported by high-ranking members of the university's administration, *see* First Amended Complaint, ECF No. 19, at ¶¶ 12–31; Kolasinski Decl., ¶¶ 4–19 (attached as Exhibit 2); and (4) University administrators and officials retaliate against faculty who resist or challenge efforts to hire or promote unqualified or underqualified female or minority candidates, *see* Kolasinski Decl., ¶¶ 14–19 (attached as Exhibit 2).

---

2. A copy of this webpage is attached as Exhibit 1 to this brief.

The cases that the defendants cite do not help their argument because the statutory changes in each of those cases *also* discontinued the challenged practice. *See Freedom From Religion Foundation*, 58 F.4th at 832 ("[S]tatutory changes that discontinue a challenged practice are usually enough to render a case moot"); Defs.' Supplemental Br., ECF No. 33 (acknowledging that "[s]tatutory changes *that discontinue a challenged practice* generally" moot a claim (emphasis added)). In *Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023), the plaintiffs were challenging the constitutionality of bail-bond procedures when the legislature enacted a statute that obviated the plaintiffs' constitutional objections. *See id.* at 635. There was no dispute in *Daves* that judges and magistrates would implement and obey the new law, and there was also no dispute that the new law had "discontinued" the challenged practice. *See id.* The same situation arose in *Does 1–7 v. Round Rock Independent School District*, 540 F. Supp. 2d 735 (W.D. Tex. 2007), where a new statute ensured that there was "no reasonable likelihood" that the plaintiffs would be subject to the allegedly unconstitutional action in the future. *See id.* at 744 ("[T]he school district can only establish mootness if it can show that there is no reasonable likelihood students will be subjected to the challenged invocation voting practice in the future."). The defendants have not shown that Texas A&M has discontinued the use of race and sex preferences in its faculty hiring; indeed, they have not even *asserted* it in their supplemental memorandum or in any other document filed with this Court. *See* Defs.' Supplemental Br., ECF No. 33.

*Daves* and *Does* are inapplicable for another reason: The defendants in this case have been violating the anti-discrimination rules that appear in Title VI and Title IX, which outlawed race and sex preferences in faculty hiring long before the enactment

of SB 17. The anti-discrimination rules in section 51.3525(b)(1)(D) are redundant of Title VI and Title IX, and they do not impose any legal obligations that did not already exist as a matter of federal law. So while section 51.3525(b)(1)(D) is formally a "new" statute, in substance it does not change or alter the defendants' legal obligations. It merely adds a state-law prohibition on conduct that federal law has banned for decades. The defendants have not explained why anyone should believe that they will obey section 51.3525(b)(1)(D) when they flout and defy the same anti-discrimination rules that appear in Title VI and Title IX. The Kolasinski declaration describes a university whose high-ranking officials are utterly indifferent to legal constraints that might hinder their diversity crusade,³ and the defendants must explain why the existence of a state law will induce compliance when the existence of federal statutes has failed to do so.

The defendants also suggest that the case is unripe because further factual development is needed to determine whether and to what extent the defendants will comply with SB 17. *See* Defs.' Supplemental Br., ECF No. 33, at 5. But the solution to that concern is not to dismiss but to allow discovery into Texas A&M's compliance efforts. Race and sex preferences in faculty hiring are implemented covertly and litigants will not uncover the university's true intentions without the tools of discovery. Nearly every case benefits from "further factual development"; that's why discovery exists.

## CONCLUSION

The motion to dismiss should be denied, and the Court should authorize discovery on the disputed jurisdictional issues.

---

3. *See* Kolasinski Decl., ¶¶ 4–19 (attached as Exhibit 2).

<table>
<tr><td></td><td>Respectfully submitted.</td></tr>
<tr><td></td><td>/s/ Jonathan F. Mitchell</td></tr>
<tr><td>Gene P. Hamilton<br>Virginia Bar No. 80434<br>Vice-President and General Counsel<br>America First Legal Foundation<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721 (phone)<br>gene.hamilton@aflegal.org</td><td>Jonathan F. Mitchell<br>*Attorney in Charge*<br>Texas Bar No. 24075463<br>S.D. Tex. Bar No. 1133287<br>Mitchell Law PLLC<br>111 Congress Avenue, Suite 400<br>Austin, Texas 78701<br>(512) 686-3940 (phone)<br>(512) 686-3941 (fax)<br>jonathan@mitchell.law</td></tr>
<tr><td>Dated: July 12, 2023</td><td>*Counsel for Plaintiff and<br>the Proposed Class*</td></tr>
</table>

# CERTIFICATE OF SERVICE

I certify that on July 12, 2023, I served this document through CM/ECF upon:

M. Carter Crow
Layne E. Kruse
Paul Trahan
Ryan Meltzer
Jesika Silva Blanco
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
carter.crow@nortonrosefulbright.com
layne.kruse@nortonrosefulbright.com
paul.trahan@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com
jesika.blanco@nortonrosefulbright.com

*Counsel for Defendants*

                                                /s/ Jonathan F. Mitchell
                                                Jonathan F. Mitchell
                                                *Counsel for Plaintiff and the Proposed Class*