DocuSign Envelope ID: C17C3DBF-264A-48E7-8B4B-1AE30E09AD4E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**Richard Lowery**, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

**Texas A&M University**, et al.,

    Defendants.

Case No. 4:22-cv-3091

## DECLARATION OF ADAM KOLASINSKI

1.  My name is Adam Kolasinski. I am over the age of 18 and fully competent in all respects to make this declaration.

2.  I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3.  I am a tenured Professor of Finance at the Mays Business School at Texas A&M University, holder of the James W. Ashton Republic Bank endowed professorship in Finance, and I serve as a member of the Texas A&M faculty senate.

4.  In my experience, most Mays Business School faculty who serve on hiring committees want to consider only scholarly merit in hiring decisions. Upper-level university administrators, however, at times apply pressure to interview and hire unqualified or underqualified female or minority candidates. Some Mays administrators, in turn, are often happy to acquiesce because they wish to be seen as "cooperative" in the eyes of upper-level administration. Faculty are reluctant to resist because they fear retaliation.

5.  There is no reason to believe that the enactment of Senate Bill 17 or the Supreme Court's recent decision in *Students for Fair Admissions* will change any of

this. Race and sex discrimination in faculty hiring have been outlawed for more than 50 years by Title VI and Title IX, yet university officials ignore and flout these laws in their zeal to impose diversity mandates on every aspect of the university.

6.  Last October, I served on the search committee charged with finding a new dean for the Mays Business School. The committee had just completed a long meeting to decide on the list of candidates for the first round of interviews, which would take place over Zoom. A few hours later, the chair of the search committee, Patrick Suermann, then-interim Dean of the School of Architecture, sent an e-mail to all members declaring that he was adding another candidate to the list of interviewees at the request of someone in the upper administration. He never disclosed who this high-level administrator was. He also uploaded the CV of this candidate to the recruiting portal we were using, so all members of the search committee could review his qualifications. There was nothing in the recruiting portal to indicate the candidate's race, though his sex was obvious from his name.

7.  Almost immediately, other members of the committee began sending emails to the group noting this candidate's lack of qualifications. These emails were quite strident. The very first email about the candidate begins with the phrase, "You've got to be kidding." This is before anyone on the committee knew the candidate's race.

8.  I sent an email to the entire committee noting that the chair was violating procedure by unilaterally adding a candidate to the interviewee list without a committee deliberation and vote. Other members of the committee chimed in, saying that we should follow the same process for all candidates, as that is what we were taught to do in the search-committee training that we were all required to take. The chair responded that he would take an online vote of committee members. I said that this was not good enough, and that we needed to meet and deliberate on the candidate before we voted on him, because that is what we had done with all the other candidates. After several more exchanges of e-mails, the chair became angry and

decreed that he was adding him to the list of interviewees, and that was final. *See* E-mail from Patrick Suermann on page 10 of Exhibit A.

9.   At this point someone in the committee had googled the person and discovered he was black. I then sent an email to the committee threatening to report the chair to the civil-rights office if he did not allow the committee to deliberate and vote on the candidate before interviewing him, although I did not mention the candidate's race in this email. I then received an email from the staff of the Faculty Affairs office (who officially runs the search) that the committee would meet and vote to discuss the candidate before we interviewed him, though in their email they chided "some members" of the committee for not acting in a spirit of collaboration. *See* pages 11–12 of Exhibit A.

10.   When the committee met, the vote was unanimous that the candidate was unqualified and that we should not interview him. His race was not mentioned at this meeting, although by this point it was known to at least some of the committee members.

11.   I was later informed by the then-interim dean of Mays Business School, Ricky Griffin, who was also on the search committee, that he was angry at me for my insistence that we not allow the committee chair to add the unqualified candidate to the list of interviewees without a deliberation and vote. He even admitted to me that he suspected we were being asked to interview the candidate because he was black, and he agreed that this would be wrong. He later confirmed this in an email to me. *See* page 4 of Exhibit B. However, he insisted I was wrong to object because I did not have proof that race was the motivation for our being pressured to interview him. He said that by objecting, I was not being "cooperative," and that (according to him) we should always assume that upper-level administration has the best of intentions unless we have proof to the contrary.

DocuSign Envelope ID: C17C3DBF-264A-48E7-8B4B-1AE30E09AD4E

12.   I have emails that document everything that I have described above, and I have attached them as Exhibits A and B to this declaration.

13.   On October 21, 2023, the chair of the dean's search committee also tried to pressure us into granting an interview to a female candidate merely because she was a woman. The female candidate was a former associate professor of finance at the Mays Business School who left for another college after being denied a promotion to full professor. She applied for the position of dean with a CV no more impressive than when she left. Not only would this candidate not qualify for promotion to full professor under our current standards, she would likely not even qualify for tenure. And yet the chair wanted to interview her for the dean's position merely because she is a woman. I protested, and the committee ended up deciding not to grant the interview.

14.   During a public forum with another candidate for the Mays deanship, David Blackwell, the then–interim dean of Mays, Ricky Griffin, publicly humiliated me in front of the entire faculty of the Mays School of Business. Without evidence, he accused me of conducting a "witch hunt" against Blackwell, as well as other unspecified unprofessional conduct as a member of the dean-search committee. Video of this incident is available upon request. Griffin later, in a private meeting, disclosed to me that his actions were partly motivated by my strident opposition to Suermann's attempt to unilaterally grant an interview to the unqualified black candidate discussed above.

15.   In February of this year, I filed a grievance with the university against Griffin for his improper public humiliation of me in front of my colleagues. My only request for a remedy was a public apology. The university ruled against me, despite video evidence of Griffin's improper behavior, on the grounds that I had not presented sufficient evidence that his public humiliation of me had damaged my reputation.

16.   I am convinced that many faculty who oppose illegal race and sex preferences in hiring for the purposes of achieving "diversity" are reluctant to resist pressure from administrators to apply such preferences because they fear the sort of retaliation to which Griffin subjected me. As my denied grievance demonstrates, the university does not hold administrators accountable for such retaliatory behavior.

17.   All of these actions violate Title VI and Title IX, which prohibit universities that receive federal funds from discriminating on account of race and sex. But none of those laws stopped the university's administrators or the chair of the dean's search committee from boosting and promoting unqualified or underqualified female and minority candidates in an effort to appease the diversity constituency.

18.   Nor has the enactment of Senate Bill 17 or the Supreme Court's ruling in *Students for Fair Admissions* done anything to change the situation. The university has not (to my knowledge) taken any steps to comply with SB 17 or *Students for Fair Admissions* in its faculty hiring, and the office of diversity's website still says that the university will "[i]n new hires, increase by 100% the diversity of our faculty to better reflect the diversity of our student body" and "increase by 50% the retention of women faculty on the tenure track to better reflect the diversity of our student body." *See* https://diversity.tamu.edu/Home/Strategic-Planning (last visited on July 12, 2023).

19.   I am convinced that the university administration will continue to pressure faculty appointment and search committees to discriminate in favor of unqualified or underqualified female or minority candidates until they are enjoined by a court from doing so. They will continue retaliating against faculty who object, and the university will fail to hold retaliators accountable, just as it failed to hold Griffin accountable. Having a court-appointed monitor at the university not beholden to the administration to whom faculty could report incidents of illegal discrimination would be highly beneficial, as it would provide a means of resisting pressure from administrators

without fear of retaliation. It would also provide a means for seeking recourse against the kind of retaliation for which the university refuses to hold former interim Dean Griffin accountable.

This concludes my sworn statement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: _7/12/2023_

DocuSigned by:

_Adam Kolasinski_

2E5E814D2F25434...

ADAM KOLASINSKI

# Exhibit A



Adam Kolasinski <akolasinski@tamu.edu>

## External Airport "Finalist" Added

40 messages

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                    Fri, Oct 21, 2022 at 10:53 AM
To: Mays Dean Search <maysdeansearch@tamu.edu>,



Dear Mays Search Committee,

We have had an additional, competitive candidate from a partner SEC Business School added to the existing three (and now 4) possible airport interview candidates. ███████████████████████████████████, comes to us after a TAMU university official met him at the SEC Leadership conference earlier this week. I reviewed his credentials and KF received his confirmation of interest earlier this week. Therefore, I am inserting him into the mix after reviewing his profile and materials on the updated talent portal: https://maysdeansearch. kornferry.com/EngagementCandidates

I look forward to hearing your thoughts about this additional candidate and honoring the A&M leaders who thought he would be a strong candidate for us.

*As a reminder, we only have two current finalists: Dr. Sorescu and Dr. Sharp. These other 4 airport interview candidates are all still classified and we will know if they become on-campus finalists after our ZOOM interviews with them.*

All the best,

-Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**

Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - -

### We've moved! Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field

- - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**

**www.arch.tamu.edu**

**PLAN>DESIGN>DELIVER>**

Build a better world.



Fri, Oct 21, 2022 at 12:43 PM

To: ███████████████████ Mays Dean Search <maysdeansearch@tamu.edu>,

You have got to be kidding.  Two years as Dept Head, one year as Associate Dean, and the only thing he knows about good research is that he cannot do it.

[Quoted text hidden]



Fri, Oct 21, 2022 at 12:57 PM

To: ██████████████████████, Mays Dean Search <maysdeansearch@tamu.edu>,

I would rank him significantly below the current slate of internal candidates and the airport interviewees. I am not sure why the university official suggested we consider him.



[Quoted text hidden]

**Bouwman, Christa** <cbouwman@mays.tamu.edu>                          Sat, Oct 22, 2022 at 8:16 AM



To: ███████████████ Mays Dean Search <maysdeansearch@tamu.edu>,

Dear Pat,

Thanks for bringing this individual to our attention.

My perspective:

I strongly believe we should follow our standard process. Any decision on who will get an airport interview should be a FULL search committee decision. So if this individual needs to be discussed, we should convene a quick, 15-minute meeting early this week in which we can discuss the merits of his case.

Best wishes,



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MAYS BUSINESS SCHOOL  |  ONE** School • Vision • Spirit

---

**From:** Suermann, Patrick C <psuermann@arch.tamu.edu>
**Sent:** Friday, October 21, 2022 11:53:00 AM
**To:** Mays Dean Search <maysdeansearch@tamu.edu>;

**Subject:** External Airport "Finalist" Added

Dear Mays Search Committee,

[Quoted text hidden]

---



**Adam Kolasinski** <akolasinski@tamu.edu>                                    Sat, Oct 22, 2022 at 8:34 PM
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mays Dean Search <maysdeansearch@tamu.edu>,

I think ▮▮▮▮▮ is right. We should not be treating this candidate differently from the others. With all the others we had a vote on whether to interview them or not after careful deliberation. Giving this camdidate special treatment by grantimg an interview without these steps is highly improper and could possibly expose us to legal liability.
[Quoted text hidden]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                    Sun, Oct 23, 2022 at 12:29 PM
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mays Dean Search <maysdeansearch@tamu.edu>,

Dear search committee colleagues:

I fully agree with Adam. We cannot let this candidate go straight to the airport interviews. If we let this pass, this opens the door to other candidates being added without consultation because it sets a precedent. Who knows - candidates may be invited to a campus interview without our input because candidates can be added without committee input.

If we do not use the same process for every person, we open ourselves up to legal action by others who were discussed and rejected for airport interviews. Plus it violates our own due process, which we should not engage in, even apart from legal issues.

There is no reason to deviate from the process that was put in place. We could end up with a failed search because we don't stick to the process. We cannot afford that. Mays has been in a holding pattern for far too long.

We want Mays to be exemplary - sticking to an agreed-upon process is part of that.

Fellow committee members: please speak up.

Best wishes,



– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

**MAYS BUSINESS SCHOOL** | **ONE** School • Vision • Spirit

---

**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Saturday, October 22, 2022 9:34:23 PM
**To:** ██████████████████████████████

Mays Dean Search <maysdeansearch@tamu.edu>;

**Subject:** Re: External Airport "Finalist" Added

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                Sun, Oct 23, 2022 at 12:39 PM
To: ██████████████████████████████

Mays Dean Search <maysdeansearch@tamu.edu>,

So far, I heard some positive comments from a few and negative comments from ████, ██, Adam, and █████. ██
████████

████████████ on Monday, can you please send a qualtrics survey out to folks to determine if ██████ should be granted an airport interview.

Thank you,
Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**

12/29/22, 10:36 AM                                    Texas A&M University Mail - External Audit "Finalist" Added

Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.

On Oct 23, 2022, at 12:29 PM, ███████████████████████ wrote:

[Quoted text hidden]



Sun, Oct 23, 2022 at 1:02 PM
To: ███████████████████

Mays Dean Search <maysdeansearch@tamu.edu>,

Dear all,

I was going to wait until we met again as a group to offer my thoughts on this particular situation. However, here is what I think.

I agree with those who have stressed the importance of following the same process for all candidates. We absolutely should do that with no exceptions. Further, had the individual candidate prompting this current online conversation been in the pool we have already considered, it is highly unlikely he would have been selected for the next phase of " airport" interviews. This candidate does not have the qualifications of those who have been selected for this next phase that we will interview this week.

███

[Quoted text hidden]

Adam Kolasinski <akolasinski@tamu.edu>                            Sun, Oct 23, 2022 at 1:06 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>

For the record, ███ is in the ███ department, not ██████.

But I do not think a Qualtrics survey is sufficient to give him an interview. We need to discuss this candidate before we vote, just like we did the others.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]



[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

Sun, Oct 23, 2022 at 1:12 PM

To:

Mays Dean Search <maysdeansearch@tamu.edu>,

Thanks for offering your support, ███.

For the record: The Adam C. Sinn Department of Finance prides itself in shared governance, fairness, and consistency. I always thought that adhering to and standing up for those principles was something to be proud of…

The only thing we ask for is consistency: please let us discuss this candidate (and others that have applied after we last met??) during a zoom/in person meeting. We have to do that to avoid problems later on. (A Qualtrics poll is inconsistent - We learn from each other when discussing individuals since we are not experts in each other's fields.)

Respectfully,



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**MAYS BUSINESS SCHOOL** | **ONE** School • Vision • Spirit

**From:**

**Sent:** Sunday, October 23, 2022 2:02:35 PM
**To:**

Mays Dean Search <maysdeansearch@tamu.edu>;

**Subject:** RE: External Airport "Finalist" Added

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                    Sun, Oct 23, 2022 at 1:20 PM
To: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>
████████████████████████████████████████

Thank you, Adam.

I try to be blind to departments for the most part, it seems as though a group is forming within our group. I am trying to make sure we are representing our roles but working together and following the process. I know this was a late add, but the window had not closed yet and I am trying to honor recommendations by A&M leaders, too.

We don't have another scheduled meeting before airport interviews start Tuesday so hence the request for a qualtrics survey.

Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.

> On Oct 23, 2022, at 1:07 PM, Adam Kolasinski <akolasinski@tamu.edu> wrote:

[Quoted text hidden]

---

████████████████████████████████████                    Sun, Oct 23, 2022 at 1:32 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>, "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>

Our department is different from the other departments in that we have MANY formal processes in place. The other departments have few. We are big on following processes.

I did NOT talk with Adam about a Qualtrics poll not being sufficient, but I find it unsurprising that we both made a similar comment…

The search process had a rocky start and we were finally in "calm waters." Why rock the boat now and deviate in a significant way from our agreed-upon process?

It may seem like a small deviation to you, but it has potentially huge implications.

In addition, I used to be ███████████████████████████████████████████
████████████████████████

Best wishes,

████████

████████████████████████████████████████████
███████████████████████████████████

███████████████████████████████████████

████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MAYS BUSINESS SCHOOL** | **ONE** School • Vision • Spirit

_____

**From:** Suermann, Patrick C <psuermann@arch.tamu.edu>
**Sent:** Sunday, October 23, 2022 2:20:50 PM
**To:** Kolasinski, Adam C <akolasinski@mays.tamu.edu>

███████████████████████████████████████

[Quoted text hidden]


[Quoted text hidden]


**Adam Kolasinski** <akolasinski@tamu.edu>                    Sun, Oct 23, 2022 at 1:34 PM
To: ███████████████████████████████████████████████████████████████

             Mays Dean Search <maysdeansearch@tamu.edu>, ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████


Patrick,

The need to hear different perspectives is precisely why we need to have a group discussion before voting on a candidate. If you insist on considering this candidate, we can take 15 minutes after our scheduled interview on Tuesday to have a dicussion and to vote.

Best,
Adam

[Quoted text hidden]


██████████████████████████████████                    Sun, Oct 23, 2022 at 4:41 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: ████████████████████████████████████████████    Mays Dean
Search <maysdeansearch@tamu.edu>, ██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████


Pat,

Have the positive comments you referred to below been shared with you privately?.... Because there are none in this email chain. If some committee members see something positive about this applicant, then that can come out in a committee discussion, which is precisely why we have such discussions. And committee members who have made positive comments deserve to hear the opinions of others before deciding.

I feel it necessary to be blunt -- Your unilateral decision to include the candidate, your casual dismissal of concerns from committee members about not following process, and your unilateral decision to try to resolve this by a Qualtrics survey closely parallels the earlier mistake when you refused to have a committee meeting to discuss whether we should have an external search and then rushed through a vote by Qualtrics.

Was it not obvious to you that that earlier mistake created significant concerns about transparency and the process? If it was not obvious to you, I am telling you now that there were significant concerns about the way you handled that. Perhaps you don't see a problem operating that way, but I would assume all of us would prefer operating in a clean transparent way that does not involve changes to the process made unilaterally by the committee chair.

There have been far too many missteps in this process dating back to the very beginning when the search committee was being formed. I truly hope that we can get back on track and not have any more deviations from the process. If we want to consider the new applicant, we should have a meeting to discuss him.

███████

On Sun, Oct 23, 2022, 12:39 PM Suermann, Patrick C <psuermann@arch.tamu.edu> wrote:
[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                           Sun, Oct 23, 2022 at 5:19 PM
To: ████████████████████████████████████
                                                                      Mays Dean
Search <maysdeansearch@tamu.edu>, ████████████████████



Thank you, ██████ and team. Yes, the positive comments were private. Thanks also for the historical recap.

The process has been a long journey because of the many people who care about Mays getting the best leader. There are a lot of people we are representing and listening to and I do my best to keep our business insulated in the team or private when people want it to be private, as these matters are secure to protect people's professional lives.

I was faced with a challenge when asked to consider ██████ after our marathon meeting. Since an airport interview is a chance for all of us to vote on him proceeding or not is a collective way to gather opinions, I went with that option. What's more transparent than being able to ask him questions as a group?

Recent mass emails also helped the committee see the trend of the same people who are the most vocal who continue to call for transparency, yet also sending emails to ensure they are able to frame their preferred narrative at each step of the process.

We will do without a qualtrics survey, ██████ can be interviewed and we can press ahead as we track towards the actual finalists. He can make it or not, but the process will have worked and our many constituencies will have been heard.

Have a good day of rest, everyone, and we'll begin again in earnest tomorrow and I look forward to the first airport interview Tuesday morning.

Thanks, team.

Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - -

**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.


On Oct 23, 2022, at 2:41 PM, ████████████████████████ wrote:


[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>                   Sun, Oct 23, 2022 at 5:34 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: ████████████████████████████████████████████████
████████████████ Mays Dean Search <maysdeansearch@tamu.edu>,
██████████████████████████████████████
████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████

Patrick,

I am absolutely dumbfounded. Why are you so resistant to holding a meeting to decide on whether to interview this new candidate? That is all anyone is asking. How in the world does that present a challenge? How in the world does that unfairly advantage those of us who spoke up now?

What could possibly justify this irregular, unilateral action of yours to grant special treatment a single candidate? Do you appreciate how bad this would look if we were ever sued?

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>                   Sun, Oct 23, 2022 at 8:44 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: ████████████████████████████████████████████ Mays Dean
Search <maysdeansearch@tamu.edu>, ██████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████

Dear Patrick,

Since you appear to insist on going through with your unilateral decision to invite a candidate for a Zoom interview without committee discussion or vote, I must tell you that what you are doing is contrary to our STRIDE training. Namely, we have been trained to treat all candidates equally. We cannot give special treatment to one. We reviewed the qualifications, deliberated, and voted on each of the other three candidates whom we invited for a Zoom interview. To allow another candidate to skip that process before being invited, and instead being unilaterally chosen by the chair, is a flagrant example of special treatment. I am morally opposed to such discriminatory behavior, but I am also concerned about the legal implications. I don't want to have to do this, but if you insist on proceeding with your improper action, I will be forced by System Policy to file a complaint to our civil rights office, and will also file a complaint with the civil rights division of the Department of Justice.

Relatedly, all committee members may not be aware, but Texas A&M is currently a defendant in a class action lawsuit specifically for treating some job applicants differently from others. There is a significant risk that should you proceed with your planned improper actions, all of the communications about this candidate among committee members will be

discovered and publicized as a result of this lawsuit. In addition, all committee members need to be made aware that all Texas A&M employees are obliged to report discriminatory behavior and can be disciplined for a failure to act.

Patrick, following the law here is not difficult. All you have to do is call a 15 minute meeting where we discuss the candidate and vote whether or not to interview him. Why are you so stubbornly resisting such a simple and reasonable request, to merely follow our training and the law?

Your insinuations notwithstanding, it is not just ███████████████████ who are concerned about your planned improper actions. ██████████ is from the ███ Department and thinks the candidate is not qualified. ████████, from ██████████, was also in agreement that we should follow our prior process with no exceptions. Moreover, ██████ and I have not commented on this candidate's qualifications, only ██████ and ████ (from ██████) have. All I want at the moment is for the correct process to be followed and for us to have a reasoned deliberation on him, just like we did for all the other candidates we invited for interviews.

Sincerely yours,
Adam
[Quoted text hidden]
--
_____

Adam C. Kolasinski
Faculty Senator
Ashton Republic Bank Associate Professor
Adam C. Sinn Department of Finance
Texas A&M University
[Quoted text hidden]

---

**Mays Dean Search** <maysdeansearch@tamu.edu>        Mon, Oct 24, 2022 at 9:03 AM
To: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>, "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

Good morning all,

Please plan to stay after our first interview tomorrow to discuss this new applicant.

I would also like to remind this committee that their charge is to ***work together*** to find the best next dean of Mays Business School. Many of the emails sent over the weekend are concerning and do not reflect the spirit of respect and comradery that should be shown ***by all*** committee members and ***to all*** committee members. This behavior will be detrimental to our search process.

Please reach out to me directly at maysdeansearch@tamu.edu with any additional comments or concerns.

Thank you,

**Paige Green, SHRM-SCP** | Human Resources Specialist III

**Continuous Improvement & Service Quality**

Division of Human Resources and Organizational Effectiveness

1255 TAMU │ College Station, TX 77843-1255

employees.tamu.edu

979-847-5895 │ paige1green@tamu.edu

**TEXAS A&M UNIVERSITY | *Purpose Driven. People Focused.***

---

**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Sunday, October 23, 2022 8:45 PM
**To:** Suermann, Patrick C <psuermann@arch.tamu.edu>

[Quoted text hidden]

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>                    Mon, Oct 24, 2022 at 9:47 AM
To: Mays Dean Search <maysdeansearch@tamu.edu>
Cc: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>, "Suermann, Patrick C" <psuermann@arch.tamu.edu>,

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████
██████████████████████

Dear Page,

There is only one person whose emails did not reflect the spirit of cooperation this weekend, and that is our chairman. HE started the kerfuffle by circumventing the collaborative process of the committee by unilaterally deciding to give a favored candidate an interview without committee discussion or vote, the process to which all other interviewees were subjected. The only thing others on the committee did was email their views on the candidate and/or request that we follow the process that we used for all other candidates, namely to hold a meeting and vote on whether to interview him. I only escalated things after our chairman stubbornly refused to grant the simple request of having a fifteen minute discussion and vote on the new candidate, after repeated pleas from five different committee members representing THREE departments.

I stand by my actions and do not apologize for them, and I will do it again if the process is violated again.

I trust that we will not only discuss the new candidate tomorrow, but we will also vote on whether to give him an interview, and that we will follow whatever the majority decides.

Sincerely yours,
Adam

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>              Mon, Oct 24, 2022 at 10:05 AM
To: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>

Cc: Mays Dean Search <maysdeansearch@tamu.edu>,

Thanks, Paige.  I look forward to the discussion.

I appreciate the support the executive searches team continues to provide and from hearing from everyone.

Since we did not have another formal meeting time set up, I had proposed last week a qualtrics survey to get a vote to proceed or not proceed on ████████'s addition. I thought that settled the best way to hear your opinions. I'm still open on that one and I thought we were moving ahead on Friday/Saturday.

Then on Sunday, I received many vocal emails why this was not possible and that people preferred to eliminate him from contention without discussion. (On a a Sunday. ) This also included a one-sided description of how this process has gone. I'll refrain from my more comprehensive evaluation of our committee, despite the critics.

I also received private emails of support and I appreciate those as much as the respectful emails that questioned my actions.  Dissent can be disrespectful and I welcome it. Thanks, professionals.

For the others,  I say "bless your hearts."

Looking forward to moving ahead and finding your best possible Dean — internal or external. I'll ignore the bait for anything else that does not help lead us towards this end goal.

Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.

On Oct 24, 2022, at 7:47 AM, Adam Kolasinski <akolasinski@tamu.edu> wrote:

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>           Mon, Oct 24, 2022 at 10:54 AM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>,

For the record, no one proposed we simply eliminate the new candidate from consideration.

The only thing the five committee members from THREE departments were calling for over the weekend was a meeting to discuss the candidate's qualifications, followed by a vote on whether to interview him. There is nothing disrespectful or unprofessional about insisting that an established process and training guidelines be followed. Nor is there anything disrespectful or unprofessional about expressing candid views about a candidate's qualifications. Nor is there anything disrespectful of unprofessional about pointing out when the committee chairman's actions are violating process and training guidelines.

I would now respectfully ask our chairman to stop making unfounded accusations of unprofessional and disrespectful conduct, a practice that is itself unprofessional and disrespectful.

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                    Mon, Oct 24, 2022 at 11:22 AM
To: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>
Cc: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>,

Thanks, Adam. I won't write anymore and let people decide for themselves.  Thank you, search team.

Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.

On Oct 24, 2022, at 8:54 AM, Adam Kolasinski <akolasinski@tamu.edu> wrote:

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                    Tue, Oct 25, 2022 at 10:11 AM
To: Mays Dean Search <maysdeansearch@tamu.edu>
Cc:

Thanks for a great interview this morning. ███████ was impressive.

I am available to talk further about anything anyone else would like to discuss. More than anything, I appreciate people's professional dissent and support. Both are needed and valued.

I think we are still on track and thanks for your time and leadership in helping the search committee accomplish our charge.

Thanks again,
Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
**www.arch.tamu.edu**
**PLAN>DESIGN>DELIVER>**
Build a better world.

On Oct 24, 2022, at 7:03 AM, Mays Dean Search <maysdeansearch@tamu.edu> wrote:

[Quoted text hidden]

███████████████████████                                        Tue, Oct 25, 2022 at 10:33 AM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>
Cc: ████████████████████████████████████

Thank you, Pat. Being my first interview in the current dean search and not knowing anything about this candidate other than what was in his curriculum vitae, I was very pleasantly surprised and impressed by this candidate's responses and accomplishments. I am hoping that the next two candidates are equally or more impressive, making this committee's job even harder!

████

[Quoted text hidden]

**Griffin, Ricky W** <rgriffin@mays.tamu.edu>                        Tue, Oct 25, 2022 at 12:41 PM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>
Cc: ████████████████████████████████████

████████████████████████
████████████████

Dear Pat:

Thank you for the calm and professional demeanor in which you led the meeting, especially the post-interview discussion about ██████.

Ricky

**Ricky W. Griffin**

Interim Dean and Professor of Management

University Distinguished Professor |  Blocker Chair in Business

Department of Management | Mays Business School

Texas A&M University

4221 TAMU 420V | College Station, TX 77843-4221

[Quoted text hidden]

---

████████████████                                          Tue, Oct 25, 2022 at 3:29 PM
To: "Griffin, Ricky W" <rgriffin@mays.tamu.edu>, "Suermann, Patrick C" <psuermann@arch.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>
Cc ████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████

**This Message Is From an External Sender**
This message came from outside your organization.

Agreed.  Really appreciate the respect and professionalism you demonstrate at all times.


Best,


█████


█████████

████████

[Quoted text hidden]

---

████████████████████████        Tue, Oct 25, 2022 at 3:34 PM

To:                 "Griffin, Ricky W" <rgriffin@mays.tamu.edu>, "Suermann, Patrick C"
<psuermann@arch.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>
Cc: ████████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████
███████████████████████████████████████
███████████████████████████

Pat, ditto Ricky and ██████. I appreciated your and other committee members' professionalism in
discussing ██████ today. I must say I was a little disappointed with the email exchange over the weekend.
 Notwithstanding the validity of the content, the tone of the communication, I felt, was coarse. I hope we can
continue being open and disagree, but without being disagreeable.


Till Thursday…


█████

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>        Tue, Oct 25, 2022 at 4:32 PM
To: ████████████████████████████


Respectfully, ██████, I disagree. I would rather not relitigate what happened this weekend, but I cannot allow to go
unanswered what I believe to be an inaccurate statement about Patrick's actions over the weekend, lest he repeat them.

While I very much appreciated the professional manner in which Patrick ran the meeting today, I do not believe his
actions over the weekend were in any way professional or respectful.

For the record, Patrick attempted to to circumvent the committee and unilaterally invite an unqualified candidate to an
interview without subjecting that candidate to the same process we followed for the others. Do I need to remind you that
we unanimously voted him down? If Patrick had been allowed to go forward with his plan, our committee would have
been in violation of university search committee guidelines and would have opened us up to legal liability for favoritism.
Worse, Patrick ignored repeated pleas from ████████████████ and me to simply follow process, stubbornly refusing our
reasonable request that we hold a meeting and vote to decide whether to invite the new candidate. I submit that ignoring
the committee in this way and attempting to impose his unilateral decision is neither respectful nor professional.

Worse, it was not until I sent an email to the group informing Patrick that I would report his actions to the civil rights office that Patrick backed down and granted our simple request of a meeting with discussion and vote. If I had not done so, today's meeting and discussion would not have taken place. I am sorry, but a committee chairman who acts professionally and respectfully does not need to be threatened with being reported to the authorities in order to be convinced to act according to established process and university guidelines.

I stand by every email I sent this weekend. I apologize for none of it. Everything I wrote was substantive, direct and to the point. If someone wants to accuse me or anyone else of acting "coarsely," or having poor tone, when all we were doing was calling for normal process and university guidelines to be followed, then please point out where. Vague and unsubstantiated accusations of poor tone or impropriety are themselves examples of unprofessional and disrespectful conduct. Therefore, unless you have something specific to call out, I ask that everyone stop making unfounded accusations.

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>                                    Tue, Oct 25, 2022 at 4:58 PM
To: ███████████████████
Cc: "Griffin, Ricky W" <rgriffin@mays.tamu.edu>, "Suermann, Patrick C" <psuermann@arch.tamu.edu>, Mays Dean Search <maysdeansearch@tamu.edu>, ███████████████████████

Respectfully, ██████, I disagree. I would rather not relitigate what happened this weekend, but I cannot allow to go unanswered what I believe to be an inaccurate statement about Patrick's actions over the weekend. I think we need to be clear that his conduct was improper.

While I very much appreciated the professional manner in which Patrick ran the meeting today, I do not believe his actions over the weekend were in any way professional or respectful.

For the record, Patrick attempted to circumvent the committee and unilaterally invite an unqualified candidate to an interview without subjecting that candidate to the same process we followed for the others. As we saw, the candidate was unanimously voted down. If Patrick had been allowed to go forward with his plan, our committee would have been in violation of university search committee guidelines and would have opened us up to legal liability for favoritism. Worse, Patrick ignored repeated, respectful pleas from ████████████████ and me to simply follow the process, repeatedly refusing our reasonable request that we hold a meeting and vote to decide whether to invite the new candidate.

For those of you who think there was something wrong with the tone of the emails, the email chain could have ended after ███, the third committee member to speak up on process, requested the process be followed. The email chain only continued because Patrick continued refusing. I submit that ignoring the committee in this way and attempting to impose his unilateral decision is neither respectful nor professional.

Worse, it was not until I sent an email to the group informing Patrick that I would report his actions to the civil rights office that he backed down and granted our simple request of a meeting with a discussion and vote. A committee chairman who acts professionally and respectfully does not need to be threatened with being reported to the authorities in order to be convinced to act according to established process and university guidelines.

I stand by every email I sent this weekend. I apologize for none of it. Everything I wrote was substantive, direct and to the point. If someone wants to accuse me or anyone else of acting "coarsely," or having poor tone, when all we were doing was calling for normal process and university guidelines to be followed, then please point out where. Vague and unsubstantiated accusations or insinuations of poor tone or impropriety are themselves examples of unprofessional and disrespectful conduct.

On Tue, Oct 25, 2022 at 3:29 PM ████████████████████████████ wrote:

[Quoted text hidden]

[Quoted text hidden]

---

████████████████████████                                    Tue, Oct 25, 2022 at 5:31 PM

To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: Mays Dean Search <maysdeansearch@tamu.edu>, ████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

Dear Committee Members,

It is truly unfortunate that the Zoom meeting ended prematurely today when KF exited the session. It seemed that Pat wanted to talk about the issues that arose over the weekend, and I did too.

I am concerned about the functioning of our committee going forward. Resolving the concerns is critical because we still have lots of important work in front of us. I may be wrong, but there seems to be a huge disconnect across committee members in how they think about the role and power of a committee chairperson.

Over my ██ years as a faculty member across ██ different institutions, I have served on (probably) more than 50 committees. Not once in that time has a committee chairperson ever dismissed members' concerns so casually and attempted to exercise power so unilaterally in important decisions. Given that background and experience, my norm and my expectation is that a committee chairperson not behave that way. I know that some members on our committee share that view.

Other committee members may have different norms and expectations of a chairperson. If so, then I think it is important for us to spend some time discussing and coming to an agreement on what the chairperson's role and power will be. If we cannot get on the same page about that, I expect there will be continued friction in the future, to the detriment of our work.

I would like to propose that we plan to spend some time at a future meeting addressing this important issue, so that we avoid friction like we saw this past weekend.

Best,

████

████████████████████████████████████
████████████████████████████
████████████████████████████████

████████████████████████████████
████████████████████

[Quoted text hidden]

---

**Suermann, Patrick C** <psuermann@arch.tamu.edu>                    Tue, Oct 25, 2022 at 6:16 PM
To: ████████████████████████████

Cc: Mays Dean Search <maysdeansearch@tamu.edu>, ▮▮▮▮▮▮▮▮▮▮

I welcome further discussion as long as it helps us get closer to our goal of finding the best future Dean for Mays.

▮▮▮▮▮▮▮▮ can schedule time for me during business hours as I balance serving my own SoA and this search.

I won't respond to weekend barbs anymore so thanks for helping me create a new rule for balance and I hope others can also weigh in on their best practices for professional boundaries vs. responsiveness.

Honored to serve the best interests of A&M.

Best,
Pat

**Patrick C. Suermann, Ph.D., P.E., F. ASCE**
Interim Dean, School of Architecture | Texas A&M University
ph: 979.845.1222 | suermann@tamu.edu
- - - - - - - - - - - - - - - - - - - - - - - - -
**We've moved!  Come see us in the Coke Building next to the YMCA bldg and Simpson Drill Field**
- - - - - - - - - - - - - - - - - - - - - - - - -
**TEXAS A&M UNIVERSITY**
www.arch.tamu.edu
**PLAN>DESIGN>DELIVER>**
Build a better world.

On Oct 25, 2022, at 3:32 PM, Shane Johnson <shaneajohnson@tamu.edu> wrote:

[Quoted text hidden]

---

**Adam Kolasinski** <akolasinski@tamu.edu>                    Wed, Oct 26, 2022 at 7:37 AM
To: "Suermann, Patrick C" <psuermann@arch.tamu.edu>
Cc: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mays Dean Search <maysdeansearch@tamu.edu>, ▮▮▮

Yes, I very much look forward to a discussion about setting ground rules for future committee work. It is necessary to ensure that the many violations of committee processes, SAPs, and university guidelines that we have experienced since this search began do not repeat themselves.

Incidentally, Patrick, what exactly do you mean by "balance" and "best practices for professional boundaries vs. responsiveness?"

[Quoted text hidden]

---

**Griffin, Ricky W** <rgriffin@mays.tamu.edu>                    Wed, Oct 26, 2022 at 8:08 AM
To: "Kolasinski, Adam C" <akolasinski@mays.tamu.edu>, "Suermann, Patrick C" <psuermann@arch.tamu.edu>

# Exhibit B

---------- Forwarded message ---------
From: **Griffin, Ricky W** <rgriffin@mays.tamu.edu>
Date: Tue, Jan 31, 2023 at 2:10 PM
Subject: RE: Your decision
To: Kolasinski, Adam C <akolasinski@mays.tamu.edu>

Adam:

First, I tend/try to assume the best intentions until I learn otherwise. While I may "suspect" something, because I cannot read minds I can't really know someone's true intent. I don't know if whomever suggested we talk to ███ knew his skin color or not. ███ is (as I recall) the ████████████████████████; on face value, then, he might seem to someone to be a credible candidate.

As to your bottom-line point, if a senior official had said "you need to interview this [unqualified] applicant because of his/race/gender, etc. " I would have said not just "no" but "hell no."

Similarly, race/gender aside, if the candidate being pushed was clearly unqualified (i.e., department chair at a community college) I would have also pushed back.

But in this case, the nomination of a person in a leadership role at a major state university by someone unfamiliar with our standards, journals, etc. conveyed no obvious reason (to me, at least) to be uncooperative.

Absent a statement of intent I have no way of knowing the nominator's motivations, so I assumed that their motives are honorable. Even to your final sentence, the issue of it seeming to by "ethically questionable" does not mean that it is.

Ricky

*Ricky W. Griffin*

Interim Dean and Professor of Management

University Distinguished Professor | Blocker Chair in Business

Department of Management | Mays Business School

Texas A&M University

4221 TAMU 420V | College Station, TX 77843-4221

**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Tuesday, January 31, 2023 1:30 PM
**To:** Griffin, Ricky W <rgriffin@mays.tamu.edu>
**Subject:** Re: Your decision

I don't mean to be aggressive and confrontational. I'm just trying to follow your thinking to its logical conclusion.

1) You said that you suspect the senior administrative official wanted us to interview him because he was Black. I did not put those words in your mouth.

2) You said that preferential treatment on the basis of race is unethical. I did not put those words in your mouth, either.

3) Yet you said, not I, that you think we should have interviewed him, anyway, in order to be cooperative.

Let me try to put it in a less confrontational way. Under what circumstances should we push back against requests of higher administration that seem ethically questionable? At what point does the obligation to be "cooperative" end?

On Tue, Jan 31, 2023 at 11:55 AM Griffin, Ricky W <rgriffin@mays.tamu.edu> wrote:

Hi Adam:

As you and I have discussed, my opinion is that the content of your messages sometimes gets lost due to the manner in which you communicate them. Personally, this email exchange illustrates this. We started with what to me was a cordial and collegial discussion. Since my first response, your emails (in my opinion ) have gotten increasingly aggressive and confrontational. This may have not been your intent, but it is the effect. You started by asking me a question, which I tried to answer. In you most recent response, though, you are putting words in my mouth and asking me to agree or disagree with those words.

The world is not black or white, we can never really know someone's motivation, and ethics are often ambiguous.

Ricky

**Ricky W. Griffin**

Interim Dean and Professor of Management

University Distinguished Professor l  Blocker Chair in Business

Department of Management l Mays Business School

Texas A&M University

4221 TAMU 420V l College Station, TX 77843-4221

**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Tuesday, January 31, 2023 11:30 AM
**To:** Griffin, Ricky W <rgriffin@mays.tamu.edu>
**Subject:** Re: Your decision

Okay. So you think we should cooperate with upper administration requests, even when we have reasonable suspicion the requests are unethically or illegally motivated. Do I have it right now?

On Tue, Jan 31, 2023 at 10:48 AM Griffin, Ricky W <rgriffin@mays.tamu.edu> wrote:

My view is that we should work together to the extent possible. To me, this is cooperating as opposed to deference.

Sent from my iPhone

On Jan 31, 2023, at 10:08 AM, Adam Kolasinski <akolasinski@tamu.edu> wrote:

Yes, your email surely does clarify things. It appears that you believe that, out of deference to authority, we should have gone along with a request from senior administration that you have reasonable suspicion was driven by unethical, and possibly illegal, motives. Or did I misinterpret something?

On Tue, Jan 31, 2023 at 6:08 AM Griffin, Ricky W <rgriffin@mays.tamu.edu> wrote:

Good Morning Adam:

I think I was unclear when you and I were discussing ██████████ last week. My belief is that some high-ranking university official suggested to Pat that we talk to ████. The reason for this might or might not have been that ███ is Black, although I suspect it was. Pat, in turn, was responding to this request, and it is that with which I am in agreement. I do not believe that anyone should receive preferential treatment due to skin color, ethnicity, gender, etc. Perhaps this is splitting hairs , but my thinking was/is that we should have talked to ████ not because he is Black but because a senior official asked us to do so.

I hope this clarifies things, but if not I'm more than willing to follow-up.

Regards,

Ricky

**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Monday, January 30, 2023 9:18 PM
**To:** Griffin, Ricky W <rgriffin@mays.tamu.edu>
**Subject:** Re: Your decision

Dear Ricky,

Thanks for letting me know your thinking. I will sleep on it and let you know tomorrow how I plan to proceed, if at all.

If you don't mind indulging me, I am curious about one thing unrelated to how we move forward. As you admitted in our conversation last Thursday, Patrick Suermann wanted to give ██████████████, a manifestly unqualified candidate, an interview just because he is Black, and you seemed to suggest that you thought it would be an ethical thing to do. I am curious to know why you think that, because I just can't see how it can be justified. As I see it, at best, we would have needlessly gotten his hopes up and wasted his time by interviewing him, only to inevitably disappoint him. At worst, we would be engaging in patronizing tokenism. Personally, I would be insulted if I ever found out someone gave me an interview, not because of my qualifications, but because I'm a Polish American, or because my grandfather was an Auschwitz survivor, or because I might have some Jewish ancestry (I have reason to believe, but have not confirmed, that one pair of my maternal great grandparents were Jews).  Since I would not want to be given,based on my ethnic background, an interview for a job I had no hope of getting due to lack of qualifications, to apply the golden rule, I would never do it to anyone else.

Do you see it differently? If so, I'd really like to know why. I am not trying to get into a debate or anything. I just want to understand the thought process by which one could justify this sort of thing as ethical. Moral philosophy is a side interest of mine.


Sincerely yours,

Adam



On Mon, Jan 30, 2023 at 6:16 PM Griffin, Ricky W <rgriffin@mays.tamu.edu> wrote:

Hi Adam:


I have given your request considerable thought. I believe the best course of action is to let this issue rest, and so that is what I am going to do.


Regards,

Ricky


**From:** Adam Kolasinski <akolasinski@tamu.edu>
**Sent:** Monday, January 30, 2023 4:56 PM
**To:** Griffin, Ricky W <rgriffin@mays.tamu.edu>
**Subject:** Your decision


HI Ricky,


I was wondering, have you given any further thought to my request?


Thanks,

Adam