UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Richard Lowery**, on behalf of himself and others similarly situated, | CIVIL ACTION NO. 4:22-cv-3091 |
| Plaintiff, | |
| v. | JUDGE CHARLES ESKRIDGE |
| **Texas A&M University System**, et al., | |
| Defendants. | |

### PLAINTIFF'S NOTICE TO THE COURT

On Friday, July 21, 2023, defendant Katherine Banks resigned as president of Texas A&M University. According to media reports, her resignation was triggered by the university's efforts to hire Kathleen McElroy to lead the university's journalism program. *See* Exhibits 1–2. McElroy is an ardent proponent of DEI who opposes meritocracy and supports racial discrimination against whites and Asians to achieve demographic balancing on university faculties.

McElroy was chosen for this job in June of 2023 despite a recently enacted Texas law (SB 17) that bans DEI at public universities and requires colorblind and sex-neutral hiring practices. McElroy's hiring was announced with great fanfare at an on-campus ceremony replete with balloons and attended by José Luis Bermúdez, the then-Interim Dean of the College of Arts and Sciences. *See* Exhibit 3. But the bonhomie quickly unraveled after McElroy's past statements on racial preferences came to light. On June 15, 2023, two days after the announcement of McElroy's hiring, the Texas Scorecard reported, among other things that:

- McElroy was part of the Council for Racial and Ethnic Equity and Diversity (CREED) during her time at UT-Austin, an organization that advocates for racial discrimination in favor of "underrepresented" minorities in hiring decisions and against whites and Asians.

- McElroy wrote an Op-Ed for The Daily Texan that supported diversity measures and tracking faculty demographics to make the university more welcoming to those who are not "cisgender straight White men."

- McElroy wrote that "every faculty member and staff member of color is an ad hoc Diversity, Equity and Inclusion officer at UT because our numbers are so small. I have been attending seminars and reading articles about attracting faculty of color because we all have to identify, hire and nurture faculty of color as we have done for privileged groups."

*See* Exhibit 4. After these statements were disclosed, McElroy told the media that she and the university agreed to a five-year contract position without tenure, which would obviate the need for approval from the university's board of regents, rather than the tenured position that McElroy and the university had originally envisioned. McElroy also said the university shifted its stance again after this and offered a mere one-year contract with at-will employment. McElroy rejected that offer and decided to return to UT-Austin. McElroy also told the press that José Luis Bermúdez, the then-Interim Dean of the College of Arts and Sciences, said to her that the university's shifting offers and the internal resistance to her hiring were motivated by animus toward blacks and the New York Times rather than opposition to McElroy's DEI agenda. She quoted Bermúdez as saying: "You're a Black woman who was at The New York Times and, to these folks, that's like working for Pravda." *See* Exhibit 5.

Bermúdez was forced to resign over this debacle, and Banks followed him out the door a few days later. Some faculty members are also calling for the head of defendant N.K. Anand, the Vice President for Faculty Affairs. On Friday, July 21,

2023, one of the faculty senators e-mailed the faculty senate and wrote: "Unfortu-
nately, the purging is not over. N.K. has no defense for his most recent and many
other earlier offenses, and his resignation must also come forth or be demanded to
allow us to be in a position for rebuilding." Then on Sunday, July 23, 2023, Duncan
M. Walker, the Associate Dean for Graduate Programs, College of Engineering,
sprang to Anand's defense and e-mailed the following missive to the faculty senate:

> Prof. NK Anand and I have worked closely together in a variety of roles
> over decades. He has always demonstrated integrity and character. He
> always follows university policies and procedures, even when it would
> be easier to take a shortcut. He and I do not always agree, but we know
> each other well enough to speak frankly about our disagreements and
> understand each other's reasoning.
>
> NK has always placed a high value on developing a faculty that is rep-
> resentative of Texas. I have seen him reject a slate of on-campus inter-
> view candidates because he felt that the search committee had not
> done a good enough job building a representative pool of candidates,
> and they needed to go back and do a better job. And he has worked
> hard to help departments land candidates to help us achieve that rep-
> resentation. . . .
>
> This situation is a fiasco, and we want to get to the bottom of it, but
> after 38 years at Texas A&M and all his experiences with tough situa-
> tions, NK did not suddenly throw out all of his principles.

Exhibit 6 (emphasis added). This e-mail is astounding in many regards. First, the e-
mail acknowledges that defendant Anand "has always placed a high value on devel-
oping a faculty that is representative of Texas," and offers this as a reason for Anand
to *keep* his current job. Dean Walker expects the faculty senate to respond favorably
to Anand's efforts to achieve proportional racial representation on the Texas A&M

faculty, even though the soon-to-take-effect SB 17 (as well as extant federal law) prohibits consideration of race and sex in hiring decisions and requires faculty hiring to be based solely on academic merit.

Second, Dean Walker's e-mail admits that Anand has personally rejected *entire slates* of on-campus interview candidates—not because of anything related to merit, but because Anand deemed the candidates insufficiently diverse. This, too, is offered as a reason for Anand to keep his job rather than lose it. There is not even an inkling in Walker's e-mail that Anand's actions were unlawful, or that discriminatory hiring practices of this sort are about to become unlawful come January 1, 2024. Lowery is entitled to take discovery on these practices and find out whether Anand (and others at Texas A&M) plan to continue or discontinue these patently illegal actions. Dean Walker's e-mail does not evince any expectation that the situation will change when SB 17 takes effect, nor does it reflect any desire on the part of the faculty senate to comply with SB 17 or with federal anti-discrimination law.

Third, Walker's e-mail lauds Anand as an individual who "always follows university policies and procedures," which indicates that university "policies" and "procedures" allow or even encourage Anand (and possibly other university administrators) to reject to entire slates of interview candidates based solely on their demographic characteristics. It certainly shows that there is no university policy *against* this behavior; otherwise Walker's praise for Anand's efforts at "developing a faculty that is representative of Texas" would contradict his description of Anand as one who "always follows university policies and procedures."

Fourth, Walker's e-mail confirms what Lowery has alleged in his current and proposed pleadings: That race and sex preferences "infect every aspect of faculty

hiring at Texas A&M University,"[1] and that Texas A&M University "has no intention of complying with SB 17 or *Students for Fair Admissions*."[2] Those allegations must be assumed true even in the absence of evidence,[3] but it never hurts to buttress allegations in a pleading with evidence that justifies the need for discovery. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

Finally, this case cannot be dismissed as moot when the university's leadership remains in limbo and it is impossible to know whether the incoming regime intends to comply with SB 17. The next president could be even more supportive of DEI than Banks, and it is still to be determined whether Anand will keep his job and who (if anyone) will replace him. Chancellor Sharp has named an acting President (Mark A. Welsh III, the Dean of the Bush School of Government and Public Service), and a presidential search committee will eventually recommend Banks's successor. *See* Exhibit 7. But it is not unusual for presidential search committees to last an entire calendar year, and it is unlikely that an acting President will have the clout or the wherewithal to dismantle the DEI apparatus and root out the culture or race and sex preferences that permeates Texas A&M University. Dean Walker had no compunctions boasting about N.K. Anand's racially discriminatory meddling in faculty-hiring decisions—even a month after SB 17 was signed into law.

## CONCLUSION

The motion to dismiss for lack of justiciability should be denied.

---

1. *See* First Amended Complaint, ECF No. 19, at ¶ 22.
2. *See* Proposed Second Amended Complaint, ECF No. 37-2, at ¶ 58.
3. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019).

Respectfully submitted.

/s/ Jonathan F. Mitchell

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

JONATHAN F. MITCHELL
*Attorney in Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff and
the Proposed Class*

Dated: July 23, 2023

## CERTIFICATE OF SERVICE

I certify that on July 23, 2023, I served this document through CM/ECF upon:

M. Carter Crow
Layne E. Kruse
Paul Trahan
Ryan Meltzer
Jesika Silva Blanco
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
carter.crow@nortonrosefulbright.com
layne.kruse@nortonrosefulbright.com
paul.trahan@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com
jesika.blanco@nortonrosefulbright.com

*Counsel for Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff and the Proposed Class*