**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD LOWERY, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| TEXAS A&M UNIVERSITY; M. KATHERINE BANKS, in her official capacity as President of Texas A&M University; ALAN SAMS, in his official capacity as Interim Provost and Vice President for Academic Affairs for Texas A&M University; ANNIE S. MCGOWAN, in her official capacity as Vice President and Associate Provost for Diversity at Texas A&M University; and N.K. ANAND, in his official capacity as Vice President for Faculty Affairs at Texas A&M University, | § § § § § § § § § § § § § § § | Civil Action No. 4:22-cv-3091 |
| Defendants. | § § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

PAUL D. TRAHAN
RYAN E. MELTZER
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

M. CARTER CROW
LAYNE E. KRUSE
JESIKA SILVA BLANCO
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

## **INTRODUCTION**

After two rounds of motion-to-dismiss briefing, a hearing on the viability of Plaintiff's First Amended Complaint, and two rounds of supplemental briefing on justiciability in the wake of a new Texas law that aligns perfectly with Plaintiff's "demand for relief," Plaintiff now moves for leave to file a Second Amended Complaint. The allegations in his new pleading, he claims, are intended to "show[] that an Article III case or controversy continues to exist despite the enactment of Senate Bill 17 and the Supreme Court's recently announced ruling in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*." Mot. at 1 (Dkt. 37).

Setting aside the threshold question of why Plaintiff seeks to amend with allegations bearing on mootness, a doctrine that generally implicates *post-filing* events, the proposed Second Amended Complaint cures none of the defects identified in Defendants' already extensive briefing. It does nothing to demonstrate, let alone prove, Plaintiff's standing to press his sweeping claims, and it relies entirely on innuendo and events *predating* the passage of Senate Bill 17. Worse, the only allegation not previously addressed in the parties' briefing relates to the activities of a dean-search committee in October 2022—two months *before* Plaintiff filed his First Amended Complaint.

At bottom, Plaintiff's motion is no more than an "untimely 'tactical maneuver'" to constrain the Court's review under Rule 12(b)(1) and bolster the record for appeal by asking that any ruling be applied to this new pleading. *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 584 (5th Cir. 2020). Plaintiff does not even attempt to conceal his motivation: He asks the Court "to construe the pending motion to dismiss the first amended complaint as a

motion to dismiss the second amended complaint, and to construe the response and reply briefs as responses and replies to that newly construed filing," Mot. at 2 (citations omitted), and he cites his proposed Second Amended Complaint in one of his recent "Notice[s] to the Court" and asserts that "[t]hose allegations must be assumed true even in the absence of evidence," Dkt. 39 at 5 n.3. In other words, now that Defendants' motion to dismiss is ripe for decision, and the Court is poised to resolve Defendants' factual challenge to subject-matter jurisdiction, Plaintiff wants to rewrite the record with stale and immaterial allegations in a new pleading. The Court should reject this gambit and deny Plaintiff's motion.

## <u>LEGAL STANDARDS</u>

Rule 15 directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Though that's a generous standard, 'leave to amend can be properly denied where there is a valid justification.'" *Robertson*, 976 F.3d at 584. Valid justifications include undue delay, bad faith or dilatory motive, repeated failure to cure previous amendments, undue prejudice, and futility. *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1034 (5th Cir. 2023). "The existence of one of these factors is sufficient to deny leave." *Id.* The court "also may consider 'whether the facts underlying the amended complaint were known to the party when the original complaint was filed.'" *Robertson*, 976 F.3d at 584. Ultimately, "the decision whether to grant leave to amend is within the sound discretion of the district court." *Pierce v. Aircraft Fin. Corp. LLC*, 512 F. Supp. 3d 753, 770 (S.D. Tex. 2021) (Eskridge, J.).

## **ARGUMENT**

Plaintiff's motion and his proposed amended complaint flout these principles. At the outset, Plaintiff's stated grounds for amendment are specious at best. Plaintiff ties his supposed need to amend to the enactment of Senate Bill 17 and the release of the Supreme Court's decision in *Students for Fair Admissions*, averring that he "did not have an opportunity to allege facts relevant to the effects of" these events "when he filed his first amended complaint last December." Mot. at 1. But he never even attempts to explain why it is necessary to add factual allegations to his complaint concerning such post-filing developments. Nor can he, as a matter of common sense or black-letter law. "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). Where the specter of mootness arises from post-filing events, the pleadings logically have no role in the analysis, and Plaintiff has pointed to no authority suggesting otherwise.

Moreover, as Plaintiff recognizes, *Students for Fair Admissions* is limited to the student-admissions context. *See generally Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141 (2023); *accord* Dkt. 37-1 ¶ 49 (alleging that the decision "largely prohibits universities that receive federal funds from using discriminatory racial preferences in student admissions"). It says nothing about employment practices or even about university operations more generally. Justice does not require leave to amend to address an intervening decision that has no relevance to the issues in the action. *See Robertson*, 976 F.3d at 584.

In any event, Plaintiff's proposed new allegations all ultimately concern events that occurred long before Senate Bill 17 and *Students for Fair Admissions*—and, in the case of the only allegation not addressed in the parties' supplemental briefing, even before Plaintiff made his first amendment. As explained at length in Defendants' Supplemental Response Brief on Justiciability, Plaintiff's allegations concerning TAMU's 2020–2025 Strategic Plan, Dr. McGowan's cherry-picked remarks at a February 2023 Faculty Senate meeting, the February 2023 article in *The American Mind* on the supposed use of DEI statements in faculty hiring, and the extension of a faculty position to Kathleen McElroy are all temporally disconnected from the mootness analysis and utterly fail to overcome the presumption of good faith accorded to TAMU's administrators as state officials. *See* Dkt. 36 at 4–5.

The same is true of Plaintiff's new allegation concerning the conduct of a dean-search committee at TAMU. Dkt. 37-1 ¶ 57; Dkt. 37-8. The events at issue occurred in October 2022—*two months before* Plaintiff filed his First Amended Complaint and *seven months before* the enactment of Senate Bill 17 and the release of *Students for Fair Admissions*—and culminated in the hiring of *a white male candidate*. *See New Dean of Mays Business School Named at Texas A&M University*, Texas A&M Today, https://today.tamu.edu/2022/12/13/new-dean-of-mays-business-school-named-at-texas-am-university (Dec. 13, 2022) (Ex. 1). The supporting declaration by Plaintiff's source, Professor Adam Kolasinski, moreover, is rife with hearsay and speculation, rests on heavily (and selectively) redacted correspondence, and supplies no facts at all concerning the current state of affairs at TAMU in light of Senate Bill 17—let alone Plaintiff's standing, as a deliberate non-applicant, to press claims of employment discrimination at the

- 4 -

university. *See* Dkt. 37-8 ¶¶ 4–19, Exs. A–B. And the fact that all of this information was available to Plaintiff well before he filed his First Amended Complaint militates strongly against granting leave to amend. *See Robertson*, 976 F.3d at 584.[1]

Plaintiff's successive "Notice[s] to the Court" are equally unavailing. Dkt. 39, 40, 41. Those filings present no facts probative of justiciability, again relying entirely on innuendo, hearsay, and carefully redacted correspondence being fed to Plaintiff by a source at TAMU who is not a party to this case and who has chosen not to appear before this Court.[2] If anything, the filings underscore the rapidly changing landscape at the university

---

[1] To the extent that Plaintiff's amendments are calculated to invoke the proposition that "standing is determined as of the time that the *operative* complaint was filed," *Satanic Temple, Inc. v. Young*, --- F. Supp. 3d ----, 2023 WL 4317185, at *4 (S.D. Tex. 2023) (Eskridge, J.) (emphasis in original), his effort fails. Not only is this rule logically confined to facial attacks on subject-matter jurisdiction, but, as explained above, Plaintiff's new allegations all relate to past events. They supply no excuse for Plaintiff's *continued* refusal to apply to TAMU.

[2] Despite the redaction of certain emails, the record leaves little doubt that Professor Kolasinski is—and always has been—responsible for supplying Plaintiff with the information and the internal TAMU documents referenced in his pleadings. Plaintiff's Complaint, filed nearly a year ago, attached two exhibits: (1) a copy of the initial memorandum announcing the ACES Plus Fellowship and (2) a redacted email from "a faculty member at Texas A&M's business school" seeking written confirmation of a rumor concerning faculty hiring at Mays Business School. *See* Dkt. 1 ¶ 14; Dkt. 1-1, 1-2. Next, Plaintiff's First Amended Complaint, filed on December 23, 2022—nine days after Mays named its new dean—quoted an October 17, 2022 Faculty Senate meeting at which Professor Kolasinski (a faculty senator) criticized ACES Plus on the very grounds alleged in Plaintiff's complaint and remarked that "[the] program . . . is subject to litigation." Dkt. 19 ¶¶ 24–28. Then, following the hearing on Defendants' motion to dismiss, Plaintiff submitted three declarations from Professor Kolasinski, Dkt. 37-8, 38-2, 41-2, in addition to a selective excerpt of a February 14, 2023 Faculty Senate meeting, Dkt. 34 at 4, and a redacted email thread among the faculty senators, Dkt. 39-6. All of Plaintiff's "new" information, it follows, was readily available to Plaintiff well before he *first* amended his complaint—from a source who apparently wants to litigate his own grievances by proxy— and Plaintiff is strategically bringing it forward now in an effort to stave off dismissal.

that renders Plaintiff's claims unripe and renders judicial intervention especially inappropriate. They also are irrelevant to the core justiciability issue presented in Defendants' motion to dismiss—Plaintiff's lack of standing.

While Plaintiff's "Notices" merit no weight, Defendants expressly object to the filings—both the fact of their filing without leave and their plainly inadmissible contents—and ask that they be stricken from the record. The Court's procedures *twice* instruct parties, "Don't file a surreply absent advance permission." L.R. 17(f), 18(c). And neither the Federal Rules of Civil Procedure nor the Local Rules of the Southern District of Texas permit surreplies. *See* Fed. R. Civ. P. 7, 12; S.D. Tex. Loc. Civ. R. 7.4. Plaintiff's three Notices are, in effect, repeat surreplies to Defendants' motion to dismiss (Dkt. 22, 26) and Defendants' supplemental briefing on justiciability (Dkt. 33, 36), and Plaintiff has never sought permission to file them. The papers therefore should be stricken. *See Gezu v. Charter Commc'ns*, 17 F.4th 547, 555–56 (5th Cir. 2021) (affirming district court's grant of motion to strike unauthorized surreply).

Again, while this is emphatically *not* a voluntary cessation case, *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 634 (5th Cir. 2023) (en banc), the law of the Fifth Circuit is clear:

> "[A]llegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case." Essentially, the goal is to determine whether the defendant's actions are "litigation posturing" or whether the controversy is actually extinguished.
>
> . . . .
>
> Government officials "in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." So, "[w]ithout evidence

> to the contrary, we assume that formally announced changes to official
> governmental policy are not mere litigation posturing."

*Yarls v. Bunton*, 905 F.3d 905, 910–11 (5th Cir. 2018) (citations omitted). Defendants have submitted evidence that the Texas A&M University System is actively engaged in a systemwide review of its "processes and procedures" to "achieve compliance with SB 17 by September 1, 2023." Dkt. 33-1; Dkt. 36-2. Defendants also have filed a sworn declaration by a named defendant, Dr. Anand, refuting the core premises of Plaintiff's hypothetical theory of discrimination. *See* Dkt. 26-1 ¶¶ 3–8. This is more than enough to place the case beyond the realm of justiciability, and Plaintiff's new "evidence" does not remotely suggest otherwise. *See U.S. Navy SEALs 1–26 v. Biden*, 72 F.4th 666, 672–75 (5th Cir. 2023). In short, "this case neither invokes the skepticism normally associated with 'defendant-induced mootness' nor raises suspicions of 'litigation posturing.'" *Yarls*, 905 F.3d at 910.

The Court should take Plaintiff at his word: "Mr. Lowery is not amending any of his allegations related to Article III standing, sovereign immunity, or his supposed failure to state a claim on which relief may be granted." Mot. at 2. Because Plaintiff's new allegations fail to overcome mootness and concededly have no bearing on Plaintiff's standing, Defendants' sovereign immunity, or the viability of Plaintiff's claims, the proposed amendments would be futile. *See New Orleans Ass'n of Cemetery Tour Guides & Cos.*, 56 F.4th at 1034–35 (district court properly denied leave to amend as futile where plaintiff sought to add affidavits that "d[id] not address the pleading deficiencies of its federal law claims"); *Pierce*, 512 F. Supp. 3d at 770 (denying leave to amend as futile). Further, because the new allegations are based chiefly on information available to Plaintiff

- 7 -

before he filed his First Amended Complaint, and the timing and circumstances of Plaintiff's motion create an inference of gamesmanship and undue delay, the Court has "valid justification" for denying leave to amend. *See Robertson*, 976 F.3d at 584 (district court did not abuse its discretion in denying leave to amend where plaintiff's motion "was an untimely 'tactical maneuver'" intended to challenge an unfavorable ruling by the magistrate judge, and the proposed amendment was based on information known to plaintiff before filing suit).

## <u>CONCLUSION</u>

The Court should deny Plaintiff's motion for leave to amend and grant Defendants' motion to dismiss. And even if leave to amend is allowed, the motion to dismiss still should be granted. Nothing has changed that would establish standing, nor do the new allegations prevent dismissal for mootness.

Dated: August 2, 2023                                   Respectfully submitted,

                                                        _/s/ M. Carter Crow_
                                                        _____
                                                            M. Carter Crow
                                                            State Bar No.  05156500
                                                            carter.crow@nortonrosefulbright.com
                                                        1301 McKinney, Suite 5100
                                                        Houston, TX  77010-3095
                                                        Telephone:   (713) 651-5151
                                                        Facsimile:    (713) 651-5246

OF COUNSEL                                              Attorney-in-Charge for Defendants Texas
NORTON ROSE FULBRIGHT US LLP                           A&M University, M. Katherine Banks,
Layne E. Kruse                                         Alan Sams, Annie S. McGowan, and N.K.
State Bar No.  11742550                                Anand
layne.kruse@nortonrosefulbright.com
Paul Trahan
State Bar No.  24003075
paul.trahan@nortonrosefulbright.com
Ryan Meltzer
State Bar No.  24092821
ryan.meltzer@nortonrosefulbright.com
Jesika Silva Blanco
State Bar No.  24098428
jesika.blanco@nortonrosefulbright.com

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Rule 18(c) of this Court's Procedures, I hereby certify that, according to Microsoft Word, Defendants' Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint contains 2,299 words, exclusive of the case caption, signature block, and certificates.

*/s/ M. Carter Crow*
M. Carter Crow

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.3, I hereby certify that Defendants' Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint has been served on all parties today, August 2, 2023, via CM/ECF.

*/s/ M. Carter Crow*
M. Carter Crow