# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 15, 2023
Lyle W. Cayce
Clerk

No. 22-40059

TIMOTHY JACKSON,

                         *Plaintiff—Appellee*,

versus

LAURA WRIGHT; MILTON B. LEE; MELISA DENIS; MARY DENNY; DANIEL FEEHAN; ET AL.,

                         *Defendants—Appellants*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CV-33

Before ELROD, HO, and OLDHAM, *Circuit Judges*.
ANDREW S. OLDHAM, *Circuit Judge*:

    Timothy Jackson, a professor at the University of North Texas, sued eight members of the UNT Board of Regents in their official capacities for First Amendment retaliation. The Board defendants moved to dismiss under Rule 12(b)(1). The district court denied their motion to dismiss. We affirm.

I.

    UNT's Board is composed of nine members who are appointed by the Texas Governor and confirmed by the Texas Senate. The Board serves as the

Case 4:21-cv-00033 Document 46-1 Filed 09/15/23 Page 2 of 12
Case: 22-40059 Document: 89-1 Page: 2 Date Filed: 09/15/2023

No. 22-40059

governing body for UNT. And the Board has delegated to each constituent institution the obligation to "publish policies and procedures specifically related to faculty hiring, promotion, tenure, evaluation, leave, compensation, governance, discipline, a faculty grievance process, and such other policies and procedures required by these Regents Rules." THE UNIV. OF N. TEX. SYS. BD. OF REGENTS RULES, Rule 6.201 (2007), https://www.untsystem.edu/boardregents/documents/rr/rr_06.200_policy_manual.pdf (last visited Sept. 15, 2023) [hereinafter "UNT REGENTS RULES"].

Jackson is a music theory professor at UNT and a leading expert on the Austrian music theorist Heinrich Schenker. He is also the director of the Center for Schenkerian Studies and the founder of the *Journal of Schenkerian Studies*. The Journal is funded by UNT and published by the UNT Press.

In July 2020, the Journal hosted a symposium. Professor Jackson published an article defending Schenker against charges of racism by Phillip Ewell, a black professor from a different college. A few days after the Journal published its symposium issue, several UNT graduate students circulated a statement condemning Jackson, criticizing the Journal for "platforming" Jackson's "racist sentiments," and lamenting that Jackson's "past and present" "actions" "are particularly racist and unacceptable." ROA.298–99. A Multiple UNT faculty members signed a statement that endorsed the graduate students' letter and stated that certain articles in the symposium were "replete with racial stereotyping and tropes." ROA.300–31.

John Richmond, the Dean of the College of Music, announced that the College of Music would be launching a "formal investigation into the conception and production of" the Journal's symposium issue. ROA.336. UNT Provost Jennifer Cowley appointed an ad hoc panel of five faculty members who currently served or had served as scholarly journal editors.

2

Case 22-40059    Document 46-89-1    Page: 3    Date Filed: 09/15/2023
Case 4:21-cv-00033    Document 46    Filed in TXSD on 09/15/2023    Page 3 of 12

No. 22-40059

After interviewing eleven individuals (including Jackson and others involved in the editorial process), the panel produced a report. The report concluded that the Journal did not observe "the standards of best practice in scholarly publication" in producing the symposium issue and made recommendations that the Journal should implement. ROA.293. Specifically, the panel found a power disparity between the Journal's editor (typically a graduate student) and the editorial advisor (Jackson). The panel also concluded that the Journal had not followed clear procedures for the symposium and erred by not inviting Ewell to respond.

When she received the panel's report, Provost Cowley sent Jackson a letter instructing him to "develop of a plan to address the recommendations" and submit that plan to Chairman Benjamin Brand, the Chair of the Music Department, and Dean Richmond for approval. She gave Jackson a deadline to submit his plan. ROA.359. One week prior to the deadline, Chairman Brand met with Jackson. Chairman Brand informed Jackson that he could not "support a plan according to which [Jackson] would remain involved in the day-to-day operations of the journal." ROA.361. According to Jackson's account of the conversation:

> Dr. Benjamin Brand (Professor Jackson's department chair) informed Professor Jackson that he would be removed from the Journal and that the university would eliminate resources previously provided to the Journal and Center for Schenkerian Studies. ROA.30.

Jackson timely submitted his plan. In the plan, he made several recommendations on how the Journal could be improved and agreed with the panel that the Journal editor should be a "full time, tenured faculty member whether at UNT or at an outside institution." ROA.537. After Jackson submitted his plan, Provost Cowley, in consultation with Dean Richmond and Chairman Brand, charged the department with launching a national

3

search for a new editor-in-chief for the Journal who is a full-time tenured faculty member. That editor would then determine the membership of the editorial board (including Jackson's possible role in it) and policies for future publications.

Jackson sued the Board defendants, among others, alleging a First Amendment retaliation claim under 42 U.S.C. § 1983. As against the Board defendants, Jackson sought only injunctive and declaratory relief. The Board defendants moved to dismiss based on sovereign immunity, lack of standing, and failure to state a claim. The district court concluded that it needed evidence of Jackson's status with the Journal before it could rule. At an evidentiary hearing, in October 2021, Jackson stated that the Journal has been "essentially on ice" since 2020 and has not published since the symposium issue. ROA.945. He testified that he was "removed from the journal completely" and has had "nothing further to do with the [J]ournal" since the panel's report. ROA.948. Dean Richmond (who also testified) agreed that the Journal was "on pause" but claimed this was only until a new editor-in-chief could be found. ROA.997–99.

The district court denied the defendants' motions to dismiss. The Board defendants immediately appealed the denial of sovereign immunity under the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) (collateral order doctrine allows immediate appellate review of order denying sovereign immunity). They also appealed the denial of dismissal for lack of standing. *See Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018) (appellate court has pendant appellate jurisdiction over other parts of the appeal that are "inextricably intertwined" with part of appeal authorized by the collateral order doctrine).

We review the district court's standing and sovereign immunity rulings *de novo*. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

4

II.

We first (A) conclude sovereign immunity does not bar Jackson's First Amendment claim. Then we (B) conclude Jackson has standing to bring his First Amendment claim against the Board defendants.

A.

"Sovereign immunity bars private suits against nonconsenting states in federal court." *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam). The doctrine also bars "suits against state actors in their official capacities that are effectively suits against a state." *Ibid.* As we have explained:

> The Supreme Court, however, carved out an exception to state sovereign immunity in *Ex parte Young*, 209 U.S. 123, 159–60 (1908), permitting suits against state actors whose conduct violates federal law. The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally, and therefore, when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit.

*Ibid.* (quotation omitted).

*Ex parte Young* created a narrow doorway through the sovereign immunity defense. To turn the key on the *Ex parte Young* door, a plaintiff must sue the right defendants and ask for the right remedy. Here, Jackson has done both.

First, the right defendants. Under *Ex parte Young*, the officers who are sued must have "some connection with the enforcement" of the challenged law or policy. *Ex parte Young*, 209 U.S. at 157. But how much of a connection is needed? As this Court has repeatedly observed, "our circuit has struggled

5

to define this 'connection' requirement." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022); *Tex. All. for Retired Ams. v. Scott* ("*TARA*"), 28 F.4th 669, 672 (5th Cir. 2022) (same observation); *Tex. Democratic Party v. Abbott* ("*TDP*"), 978 F.3d 168, 179 (5th Cir. 2020) (noting that the Fifth Circuit has not "spoken with conviction about all the relevant details of the 'connection' requirement"). Even so, "some guideposts have emerged." *TARA*, 28 F.4th at 672. Two are relevant here.

*Guidepost 1*. All that is required is a mere "scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin*, 943 F.3d at 1002; *cf. Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021) ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to *any* enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoin him from exercising." (emphasis added)). Here, the Board defendants have the required "scintilla of enforcement" due to their governing authority over UNT. *See supra* UNT REGENTS RULES (the Board defendants have the ultimate "governance" authority at UNT). The Board defendants nowhere deny that their governing authority satisfies the "scintilla of enforcement" standard; in fact, they never even acknowledge that standard in their opening brief.

*Guidepost 2*. We further know that an official must have more than "the general duty to see that the laws of the state are implemented." *City of Austin*, 943 F.3d at 999–1000 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)); *accord TARA*, 28 F.4th at 672. For example, a state attorney general lacks an *Ex parte Young* enforcement nexus based on his "general duty to enforce the law." *TDP*, 978 F.3d at 181. And a governor's role in promulgating an executive order alone is not sufficient. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020); *see also Haverkamp*, 6 F.4th at

6

670 (a committee's authority to formulate and promulgate a policy also is not sufficient). But those cases are distinguishable. In those cases, the sued state officials had *no* role whatsoever in the alleged constitutional violations—not even a supervisory role over the individuals who were allegedly violating constitutional rights. Contrariwise here, the Board defendants' have direct governing authority over the UNT officials that are allegedly continuing to violate Jackson's First Amendment rights, including authority to countermand the decisions of the subordinate UNT officials. And in addition to their direct supervisory authority over the UNT officials who took the actions at issue, the Board defendants themselves ignored a letter Jackson wrote to the Chair of the Board, notifying them of his removal from the Journal and seeking relief from the Board for the ongoing violation of his First Amendment rights.

The Board defendants' principal counterargument is that Jackson has "not alleged facts demonstrating a connection between the Board defendants and any alleged First Amendment retaliation." Blue Br. 23. But state sovereign immunity is an affirmative defense, and plantiffs are not required to anticipate or plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Rather, it was the Board defendants' obligation to raise the defense. We cannot say at this juncture that Jackson impermissibly sued defendants protected by state sovereign immunity.

Second, the right remedy. Under *Ex parte Young*, a court is permitted to "command[] a state official to do nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). The *Ex parte Young* doctrine "applies only to prospective relief" and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct*, 506 U.S. at 146. Here, Jackson properly requests only prospective relief:

> i. declare that the university and its administrators *are violating* Professor Jackson's rights under the First and Fourteenth Amendments by retaliating against him for his criticism of Phillip Ewell.
>
> ii. enjoin the members of the Board of Regents, along with their employees and subordinates, *from taking* any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell.

ROA.30. Jackson's request for declaratory relief is focused on the legality of the university's current actions, not its past behavior. And Jackson's request for injunctive relief is also prospective given it would restrain the Board defendants from taking future actions that violate Jackson's rights. *See Stewart*, 563 U.S. at 255 ("[W]hen a federal court commands a state official to do nothing more than refrain from violating the law, he is not the State for sovereign-immunity purposes.").

In sum, Jackson has "allege[d] an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Thus, at the motion to dismiss stage, sovereign immunity does not bar Jackson's First Amendment claim against the Board defendants.

B.

Jackson also has standing to bring his First Amendment claim. For Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Board defendants concede that redressability runs with causation, *see* Blue Br. 38 n.15, and we agree on the facts of this case. So we turn first to injury in fact and then to causation.

Case 4:22-cv-30059    Document 46-1    Filed 09/15/23 in TXSD    Page 9 of 12
Case: 22-40059      Document: 89-1     Page: 9     Date Filed: 09/15/2023

No. 22-40059

To establish injury in fact, Jackson must show he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Because Jackson is seeking prospective relief and not damages, he must allege a continuing (*i.e.*, ongoing) or "imminent" future injury to establish standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." (quotation omitted)).

Here, Jackson alleges a continuing injury—that he has been and continues to be banned by UNT from any continuing involvement with the Journal. Jackson "can no longer publish scholarship in the Journal that he considers a trademark of his life's work, and if he took action to publish the work that is currently 'on ice,' he would face negative consequences imposed by UNT officials." ROA.892. Jackson also alleges a future injury. Specifically, he alleges that the chair of his department told him that "the university would eliminate resources previously provided to the Journal and the Center." ROA.30. At the motion to dismiss stage where we must accept all Jackson's allegations as true, he has plainly alleged both a continuing and a future injury sufficient to confer standing for him to seek prospective relief.

Next, causation. The second standing inquiry is whether these injuries are "fairly traceable" to the Board defendants. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."). The traceability and *Ex parte Young* issues discussed above involve similar questions. *TDP*, 961 F.3d at 401 (noting the "significant overlap between our standing and [*Ex parte*] *Young* analyses" (quotation omitted)). And for the reasons discussed in the preceding section, we conclude the alleged ongoing

9

actions of the UNT officials in removing Jackson from his role with the Journal and promising to eliminate resources previously provided to the Journal are "fairly traceable" to the Board defendants.

The Board defendants argue that Jackson needed to allege specifically that they were personally and directly involved with the Journal or the panel investigation. But all Jackson needs to allege under Article III is that his First Amendment injuries are "fairly traceable" to the Board defendants—not that the Board defendants directly caused his injuries. *See Lexmark*, 572 U.S. at 134 n.6.[*]

AFFIRMED.

---

[*] Given our conclusion that the district court has subject matter jurisdiction over Jackson's First Amendment claim, all agree that the district court also has supplemental jurisdiction over Jackson's defamation claim.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**  
**CLERK**

**TEL. 504-310-7700**  
**600 S. MAESTRI PLACE,**  
**Suite 115**  
**NEW ORLEANS, LA 70130**

September 15, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding: Fifth Circuit Statement on Petitions for Rehearing or Rehearing En Banc

No. 22-40059   Jackson v. Wright
USDC No. 4:21-CV-33

Enclosed is a copy of the court's decision.  The court has entered judgment under **FED. R. APP. P.** 36.  (However, the opinion may yet contain typographical or printing errors which are subject to correction.)

**FED. R. APP. P.** 39 through 41, and **5TH CIR. R.** 35, 39, and 41 govern costs, rehearings, and mandates.  **5TH CIR. R. 35 and 40 require you to attach to your petition for panel rehearing or rehearing en banc an unmarked copy of the court's opinion or order.**  Please read carefully the Internal Operating Procedures (IOP's) following **FED. R. APP. P.** 40 and **5TH CIR. R.** 35 for a discussion of when a rehearing may be appropriate, the legal standards applied and sanctions which may be imposed if you make a nonmeritorious petition for rehearing en banc.

<u>Direct Criminal Appeals</u>.  **5TH CIR. R.** 41 provides that a motion for a stay of mandate under **FED. R. APP. P.** 41 will not be granted simply upon request.  The petition must set forth good cause for a stay or clearly demonstrate that a substantial question will be presented to the Supreme Court.  Otherwise, this court may deny the motion and issue the mandate immediately.

<u>Pro Se Cases</u>.  If you were unsuccessful in the district court and/or on appeal, and are considering filing a petition for <u>certiorari</u> in the United States Supreme Court, you do not need to file a motion for stay of mandate under **FED. R. APP. P.** 41.  The issuance of the mandate does not affect the time, or your right, to file with the Supreme Court.

<u>Court Appointed Counsel</u>.  Court appointed counsel is responsible for filing petition(s) for rehearing(s) (panel and/or en banc) and writ(s) of certiorari to the U.S. Supreme Court, unless relieved of your obligation by court order.  If it is your intention to file a motion to withdraw as counsel, you should notify your client promptly, **and advise them of the time limits for filing for <u>rehearing and certiorari</u>**.  Additionally, you MUST confirm that this information was given to your client, within the body of your motion to withdraw as counsel.

The judgment entered provides that Appellants pay to Appellee the costs on appeal. A bill of cost form is available on the court's website www.ca5.uscourts.gov.

Sincerely,

LYLE W. CAYCE, Clerk

*Christina Rachal*

By:_____
Christina C. Rachal, Deputy Clerk

Enclosure(s)

Mr. Michael Thad Allen
Ms. Beth Ellen Klusmann
Mr. Jonathan F. Mitchell
Ms. Lanora Christine Pettit